# Exhibit C

1   KEITH A. JACOBY, Bar No. 150233
    kjacoby@littler.com
2   LITTLER MENDELSON, P.C.
    2049 Century Park East, 5th Floor
3   Los Angeles, CA  90067.3107
    Telephone:    310.553.0308
4   Fax No.:      310.553.5583

5   MICHELLE B. HEVERLY, Bar No. 178660
    meverly@littler.com
6   KARIN M. COGBILL, Bar No. 244606
    kcogbill@littler.com
7   LITTLER MENDELSON, P.C.
    50 W. San Fernando, 15th Floor
8   San Jose, CA 95113.2303
    Telephone:    408.998.4150
9   Fax No.:      408.288.5686

10  MIREYA A.R. LLAURADO, Bar No. 194882
    mallaurado@fedex.com
11  FEDEX FREIGHT, INC.
    3425 Victor Street
12  Santa Clara, CA  95054
    Telephone: 408.654.3186
13  Facsimile: 408.654.3297

14  Attorneys for Defendant
    FEDEX FREIGHT, INC.
15

16                  UNITED STATES DISTRICT COURT

17                EASTERN DISTRICT OF CALIFORNIA

18

19
    ROY D. TAYLOR, on behalf of himself          Case No.
20  and all others similarly situated,
                                                 **DECLARATION OF KATYNA NAYLOR
21                  Plaintiff,                    IN SUPPORT OF DEFENDANT'S NOTICE
                                                 OF REMOVAL TO FEDERAL COURT**
22  v.

23  FEDEX FREIGHT, INC., an Arkansas
    Corporation; and DOES 1 through 10,
24  inclusive,

25                  Defendants.

26

27

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

NAYLOR DECLARATION ISO
DEFENDANT'S NOTICE OF REMOVAL TO
FEDERAL COURT

07/19/2013  3:07PM (GMT+00:00)

1    I, KATYNA NAYLOR, hereby declare as follows:

2        1.    I am employed as a Field - Human Resources Manager with FedEx Freight, Inc.

3    ("FedEx Freight"). I have held this position since on or about April 1, 2011. I commenced my

4    employment with FedEx Freight on or about January 30, 2011, as HR Advisor. I make this

5    Declaration in support of Defendant's Notice of Removal to Federal Court. Except where otherwise

6    indicated, all of the information set forth herein is based on my personal knowledge and records of

7    FedEx Freight kept in the ordinary course of business, and if called and sworn as a witness, I could

8    and would competently testify thereto.

9        2.    I previously was employed by FedEx National LTL, Inc. ("National") and became

10   employed by FedEx Freight on or about January 30, 2011, when National merged into FedEx

11   Freight. Between January 30 and March 31, 2011, my responsibilities were limited to four states,

12   excluding California. From April 1, 2011 to May 31, 2013, my responsibilities pertained to 17

13   states, including Northern California. My responsibilities included supervising seven HR Advisors

14   and one HR Generalist within FedEx Freight's Northwest and Midwest Regions, which included

15   Northern California, general oversight of the HR function, and monitoring the consistency of HR

16   practices with other regions, including the implementation and administration of policies and

17   practices with regard to employee timekeeping and compensation. As of June 1, 2013, my

18   responsibilities include supervising six HR Advisors within FedEx Freight's Northwest Region

19   which includes all California locations.

20       3.    FedEx Freight pays its non-exempt employees in California on a weekly basis,

21   resulting in 52 pay periods per year. This practice has been consistent throughout my tenure at

22   FedEx Freight.

23       4.    In my capacity as Field – Human Resources Manager at FedEx Freight, I had and

24   have access to programs that FedEx Freight uses to prepare and maintain data and information in the

25   regular course of business regarding its employees including, PeopleSoft. PeopleSoft is a database

26   program FedEx Freight uses to maintain certain data regarding its employees, including Road and

27   City Drivers.

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

NAYLOR DECLARATION ISO
DEFENDANT'S NOTICE OF REMOVAL TO          2.
FEDERAL COURT

1      5.    It is the practice at FedEx Freight for members of Freight's Human Resources

2  Department to input into PeopleSoft, in the ordinary course of business, employee information,

3  including, date of hire, job title, and assigned work location at or shortly after one's date of hire.

4  From time to time, this information is updated by Human Resources representatives in the ordinary

5  course of business, for instance, when an employee's employment is separated.  FedEx Freight

6  maintains such personnel information in PeopleSoft in the ordinary course of business.

7      6.    I have reviewed reports generated from the personnel data inputted and maintained in

8  PeopleSoft in FedEx Freight's ordinary course of business concerning Road and City Drivers

9  employed in California by FedEx Freight.  I am also familiar with the payroll data maintained by

10  FedEx Freight for Road and City Drivers employed in California by FedEx Freight.  Based on my

11  review of these records, FedEx Freight employed 2,095 individuals in non-exempt, hourly driving

12  positions in California between June 13, 2009 and June 13, 2013.  Of this total, approximately 745

13  of the individuals worked as Road Drivers (driving longer distances, typically between FedEx

14  Service Centers or to exchange trailers with other Road Drivers, also referred to as "line haul"

15  drivers), and approximately 1350 worked as City Drivers (making multiple stops at customer

16  locations in a smaller geographic area in order to pick up and deliver).

17      7.    Based on my review of the records, FedEx Freight employed approximately 1,933

18  Road and City Drivers in California from June 13, 2012 to June 13, 2013.  Of this total, 609 of the

19  individuals worked as Road drivers and 1324 worked as City drivers.

20      8.    During the period of June 13, 2009 to June 13, 2013, Road Drivers worked a

21  cumulative total of approximately 98,900 workweeks, and City Drivers worked a cumulative total of

22  approximately 207,400 workweeks for a class wide total of approximately 306,300 workweeks.

23      9.    FedEx Freight's records demonstrate that from June 13, 2012 to June 13, 2013, FedEx

24  Freight employed 1,933 individuals as drivers in California.  Of this total, 1,758 were continuously

25  employed by FedEx Freight from June 13, 2012 to June 13, 2013.  This number breaks down to 541

26  Road Drivers and 1,217 City Drivers continuously employed by FedEx Freight in the one year prior

27  to June 13, 2013.

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

NAYLOR DECLARATION ISO
DEFENDANT'S NOTICE OF REMOVAL TO            3.
FEDERAL COURT

07/19/2013   3:07PM  (GMT+00:00)

10.   Further, according to the aforementioned records, 180 of the 1,392 aforementioned individuals employed by Freight since July 24, 2009, ceased employment with Freight since August 6, 2009.

11.   In reviewing data maintained by FedEx Freight in the regular course of business, I was able to ascertain that between June 13, 2010 and June 13, 2013, 418 drivers ceased employment with FedEx Freight. Of this total, 215 of the former employees were City Drivers and 203 were Road Drivers.

12.   I have reviewed the wage scales and applicable hourly rates paid to City and Road Drivers in California.   City drivers are compensated on an hourly basis.   (Road drivers are compensated differently.  They are paid a mileage rate that incorporates all miles driven and other tasks (such as Department of Transportation inspections), plus an hourly rate for time spent performing other non-driving tasks. The hourly rate paid to both Road and City Drivers since June 13, 2009 to the present has ranged from approximately $18.59 per hour to $25.63 per hour.

13.   Additionally, I have reviewed the personnel records for Plaintiff Roy Taylor ("Plaintiff"), which have been prepared and maintained by FedEx Freight in the ordinary course of business.  According to those records, Plaintiff has worked, and is currently working for FedEx Freight as a Road Driver.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 19th day of July, 2013, at Sacramento, California. .

KATYNA NAYLOR

Firmwide:121877414.1 057116.1015

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

NAYLOR DECLARATION ISO
DEFENDANT'S NOTICE OF REMOVAL TO          4.
FEDERAL COURT

# Exhibit D

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROY D. TAYLOR, on behalf of
himself and all others similarly
situated,

          Plaintiffs,      )

   vs.                        Case No.
                           1:13--CV-01137-LJO-
FEDEX FREIGHT, INC., an Arkansas   BAM
corporation; and DOES 1 through
10, inclusive,

          Defendants.     )

CERTIFIED COPY

DEPOSITION OF:  <u>JEFFREY SCROGGINS</u>

TAKEN ON:       APRIL 2, 2014



## STRONG COURT REPORTING

Certified Shorthand Reporters

18688 San Felipe Street • Fountain Valley, CA 92708
Phone 714.593.4042 • Fax 714.968.0808
StrongCourtReporting@msn.com

REPORTED BY:                              FILE NO:

Linda A. Strong, CSR No. 4426       14106

1    drivers?

2        A    Are you asking me are they?

3        Q    Yes.

4        A    I don't know.

5        Q    You do not know.

6             Are you familiar with Lesson 13?

7        A    I am.

8        MR. JACOBY:  What Bates number are we looking at?

9        MR. POLINER:  For purposes of the example we're

10   looking at Bates 2609 through 2622.  But I'm not going

11   to necessarily go over it right now.  So you don't have

12   to rush to get it out.

13       Q    So do you not know if the manual, the driver

14   manual is provided or available?

15       A    It is available.  It's available online.  The

16   question I believe was asked are they given a manual.

17       Q    So it's available online?

18       A    Yes, it is.

19       Q    And I think you indicated that there is two

20   events that a line haul driver can get paid an hourly

21   rate.  How is that hourly rate determined?  Again is

22   that based upon the seniority?

23       A    The driver's hourly rate of pay is part of a

24   tiered pay structure.

25       Q    Now the mileage pay, that is based upon how

                                                       17

many miles a driver drives?

A    It's based on a trip.  Each trip has a set mileage for it.

Q    And that trip when you say it's based upon miles from driving from Point A to Point B?

A    The trip is based upon a software used between Point A and Point B.

Q    And that software determines the number of miles?

A    Yes.

Q    So if somebody drives, the line haul driver drives one mile based upon the software, they're going to be paid a per mile rate of one mile versus if the software indicates somebody drives 300 miles, they'll be paid 300 miles?

A    It's a predetermined route between Point A and Point B.

Q    So, for example, if it's the dispatch -- is there a dispatch in Los Angeles?

A    Is there a dispatch?

Q    Where somebody would be dispatched out of L.A.

A    We have centers in Los Angeles. ·

Q    So if the dispatch started in Los Angeles and was to travel to Sacramento, the software would · determine the number of miles?

1    A    Yes.  And the route.

2    Q    And by the route, you're saying the specific

3    route to follow, that the driver should follow?

4    A    Yes.

5    Q    And that person is paid a per mile rate?

6    A    The driver if he's dispatched Los Angeles to

7    Sacramento, there is a predetermined amount that the

8    driver will receive.

9    Q    Correct.  And that's based upon a per mile

10   rate?

11   A    Based upon the mileage between the service

12   centers --

13   Q    Correct.

14   A    -- per trip.

15   Q    And that's on a per mile rate.  So if it's 300

16   miles, it will be determined on a per mile rate versus

17   if it's 200 miles it will be a per mile rate?  For

18   example, 63 cents per mile?

19   A    I guess ask the question again so I understand

20   it.

21   Q    Sure.  When you determine the amount of

22   compensation, it's on a per mile rate?

23   A    The trip is based upon the mileage, the trip

24   pay is.

25   Q    Correct.  And it's based upon a per mile?  For

                                                      19

1   example, if it's 300 miles, is that going to be based

2   upon, for example, 63 cents a mile?

3       A   It would depend upon the driver, where he fits

4   into the tier payment.

5       Q   And that tier payment is on a --

6       A   The trip would be paid or the payment would be

7   set up on the distance of the trip.

8       Q   Correct.  Based upon each mile.  So each mile

9   is going to have a certain amount of compensation

10  correlated to the pay; correct?

11      A   Yes.

12      Q   It's one mile, two miles, three miles?

13      A   It's based upon the distance on the

14  predetermined route, the trip pay is.

15      Q   And how is the per mile amount determined?

16      A   Based upon the driver, where he fits within

17  this pay tier.

18      Q   Give me an example of a pay tier.

19      A   I don't have the road driver's pay structure.

20  It would depend.  We have a geographical pay difference.

21  And then I believe there's three levels.

22      Q   Give me an example.

23      A   Well, the example of a road driver entry level

24  will make the entry level pay.  I don't have the

25  examples.  I don't know what those numbers are.  But

                                                    20

1 there will be associated everybody within that Level 1

2 will receive the same amount per mile rate and per hour

3 rate.

4     Q    So it's a per mile rate for Level 1, a

5 different per mile rate for Level 2 and a different per

6 mile rate for Level 3?

7     A    They would all be increased.

8     Q    Okay. Is that correct, there are different per

9 mile rates for each of the three levels?

10     A    For each tier.

11     Q    Now the mileage pay, that includes -- I'm going

12 to go through a list of items. That includes rest break

13 time; is that correct?

14     A    Yes.

15     Q    That includes pre-trip inspection time; is that

16 correct?

17     A    It would include everything associated with the

18 trip.

19     Q    I'm going to go through specifics.

20     Does it include pre-trip inspection time?

21     A    Yes.

22     Q    Does it include placarding of loads?

23     A    Yes.

24     Q    Does it include weighing units on site?

25     A    On site it would.

21

1    Q    Does it include DOT safety inspections?

2    A    Routine.

3    Q    Does it include post-trip vehicle inspections?

4    A    That would be included.

5    Q    Does it include all trip-related paperwork and

6    documents?

7    A    Yes.

8    Q    Does it include limited delay intervals?

9    A    Trip mile pay does include that.

10    Q    Are there circumstances, if any, that a line

11    haul driver can be separately compensated other than

12    what they receive for mileage pay for pre-trip

13    inspections?

14    A    Not that I'm aware of.

15    Q    How about for rest breaks?

16    A    While they're dispatched?  They're different.

17    I mean, well, it would depend.

18    Q    Let me go back because I want to make it clear.

19    You indicated to me a list of items that were included

20    in the mileage pay.  We just went over an example was

21    rest break time, pre-trip inspection time, post-trip

22    inspection time, placarding of loads, weighing units on

23    site, DOT safety inspections, and trip-related

24    paperwork.  I want to know if there are circumstances if

25    a line haul driver can be separately compensated for

22

1    those tasks other than what they're receiving for their
2    mileage pay.
3        A    Not that I'm aware of.
4        Q    Has FedEx determined what amount of mileage
5    pay, if any, is for pre-trip inspection time?
6        A    Not that I am aware of.
7        Q    How about for rest break time?
8        A    Per mile?
9        Q    Yes.
10       A    Not that I'm aware of.
11       Q    How about for placarding of loads?
12       A    Again not that I'm aware of.
13       Q    How about for weighing units on site?
14       A    Not on site, no.  Not that I'm aware of.
15       Q    How about for DOT safety inspections?
16       A    Not that I'm aware of.
17       Q    How about for post-trip vehicle inspections?
18       A    Not that I'm aware of.
19       Q    How about for all trip-related paperwork and
20   documents?
21       A    Not that I'm aware of.
22       Q    How about for limited delay intervals?
23       A    Not that I'm aware of.
24       Q    Why are drivers, meaning line haul drivers, not
25   compensated via either fixed pay or hourly pay for such

                                                        23

1     things as pre-trip inspections or post-trip inspections?

2     A     They are compensated. It's inclusive of that

3     trip. And all associated with that trip is inclusive in

4     their mileage. That would be part of the normal trip.

5     So it's inclusive within the trip mileage pay.

6     Q     I understand that. Is there a reasoning or a

7     rationale that drivers aren't compensated via fixed pay

8     or hourly pay for such things as pre-trip and post-trip

9     inspection versus as you put it including it in their

10     mileage pay?

11     A     Well, those would be inclusive of a normal

12     trip.

13     Q     So is your answer things that are inclusive of

14     a normal trip would go into mileage paid?

15     A     Piece rate.

16     Q     And that would be included in their mileage

17     pay?

18     A     Yes.

19     Q     And I think you said things that are associated

20     with a normal trip. Is that what you said would go into

21     mileage pay?

22     A     Yes.

23     Q     So how is fueling, which is a fixed pay

24     compensation, determined not to be part of a normal

25     trip?

24

1      A    Well, based on circumstances where a driver

2    would not fuel.  In many instances a driver may not

3    fuel.  So when the event that a driver does fuel, then

4    the compensation is at a fixed pay event.

5      Q    So your definition of normal it sounds like is

6    it would happen on each and every instance associated

7    with the trip versus where it may not happen each and

8    every instance with a trip.

9      A    Not necessarily.

10     Q    What's your definition of normal as it relates

11   to why things are being included with respect to mileage

12   pay?

13     A    Those things that are typical of a line haul

14   trip.

15     Q    Typical of a line haul trip.  So fueling is not

16   typical of a line haul trip?

17     A    It could be.  In the event that it is, then the

18   driver receives the compensation for a fixed pay task.

19     Q    I understand that there is circumstances and

20   situations where they may receive fixed pay, such things

21   as a single drop or single hook at origin and

22   destination.  Correct?

23     A    Yes.

24     Q    Drop and hook events with break; correct?

25     A    Yes.

                                                          25

1     a rest break and then back in from the rest break?

2          A    They should be notating or they should be

3     indicating that within their handheld.

4          Q    And would that also be noted on the DOT log,

5     would there be a special notation that would indicate

6     rest break?

7          A    The DOT log is performed or is the time shown

8     in increments of 15 minutes.  So it's less than seven,

9     then it wouldn't be flagged.  It wouldn't be required.

10         Q    Are you familiar with the procedures to fill

11    out a DOT log?

12         A    I'm not.

13         Q    Now when a line haul driver documents -- well,

14    how is it documented when they do a route per mile if

15    it's a mileage pay?  How is that documented?

16         A    I'm unsure of what you're asking.  Our trips

17    are based on, as we discussed in the past or at the

18    beginning of this, from Point A to Point B there is a

19    designated route.  The mileage has already been set for

20    that route, a preestablished route.

21              When a driver leaves Point A he becomes

22    dispatched.  When he arrives at Point B he's arrived.

23    So it's that Point A to Point B dispatch is captured,

24    and the mileage is already in that portion of the leg.

25         Q    And how is it documented that he's leaving

# Exhibit E

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROY D. TAYLOR, on behalf of
himself and all others similarly
situated,

              Plaintiffs,

   vs.

FEDEX FREIGHT, INC., an Arkansas
corporation; and DOES 1 through
10, inclusive,

              Defendants.

Case No.
1:13--CV-01137-LJO-
BAM

CERTIFIED COPY

DEPOSITION OF:  <u>KATYNA NAYLOR</u>

TAKEN ON:      APRIL 2, 2014



STRONG COURT REPORTING
Certified Shorthand Reporters

18688 San Felipe Street • Fountain Valley, CA 92708
Phone 714.593.4042 • Fax 714.968.0808
StrongCourtReporting@msn.com

REPORTED BY:

Linda A. Strong, CSR No. 4426

FILE NO:

14106

1   like to come in and pick it up or if they want us to
2   mail it to them.
3       Q    When you mail it to them is it mailed FedEx?
4       A    Yes.
5       Q    So again there is a tracking number?
6       A    Yes.
7       Q    Are you familiar with the termination of Roy
8   Taylor?
9       A    I'm familiar with it, yes.
10      Q    Are you familiar -- do you recall what day,
11  date he was terminated?
12      A    I know it was on a Friday.  Approximately I
13  believe two weeks ago.  If I had a calendar I could tell
14  you the exact date.  I know it was on a Friday.
15      Q    I'll show you my phone which has a calendar.
16      A    I believe it was the 21st.
17      Q    That's of March?
18      A    Yes.
19      Q    And was he presented with his final pay on
20  March 21, if you know?
21      A    His final pay was available for him on
22  March 21st.
23      Q    Let me go back.  How was he terminated?
24  Meaning in person or by phone?
25      A    What was reported to me was it was done by

                                                          16

1    Q    Are you familiar with the driver's manual?

2    A    Yes.

3    Q    That's a policy and procedure document?

4    A    Yes.

5    Q    And do you know how that is provided, if at

6    all, to line haul drivers?

7    A    It's available to them on the intranet from any

8    of the computers located within a service center

9    including the computer in the break room or the

10   computers in the training room.  And there is also often

11   a printed copy that may be available as well.

12   Q    And the printed copy, is that at the dispatch

13   centers?

14   A    The service centers.

15   Q    The service centers.  Can the intranet be

16   accessed from home?

17   A    No.  It's an internal access only.

18   Q    Can you give an estimate of the current number

19   of FedEx line haul drivers that are employed by FedEx

20   Freight?

21   MR. JACOBY:  In California?

22   MR. POLINER:  Yes.

23   THE WITNESS:  I wouldn't want to be incorrect.

24   BY MR. POLINER:

25   Q    We don't want you to be incorrect either.

20

1    Let's go over some numbers that you gave in
2 your declaration.  Let's look at Paragraph 6.  It's
3 about Line 12, Paragraph 6.  Do you see that?
4    A    Yes.
5    Q    Approximately 745 of these individuals worked
6 as road drivers driving long distance typically between
7 FedEx service centers or to exchange trailers with other
8 road drivers also referred to as line haul drivers and
9 approximately 1,350 worked as city drivers.  And that's
10 for the period that appears to be from June 13, 2009, to
11 June 13, 2013.  Does that look accurate?
12    A    Yes, it does.
13    Q    And where did you get that information?
14    A    That number was provided to me by legal
15 counsel.
16    Q    And Paragraph 7 says based upon my review of
17 the records FedEx Freight employed approximately 1,933
18 road drivers and city drivers in California from
19 June 13, 2012, to June 13, 2013.  Of this total 609 of
20 the individuals worked as road drivers and 1,324 worked
21 as city drivers.  Do you believe that to be accurate?
22    A    Yes.
23    Q    And it says you reviewed the records.  What
24 records did you review?
25    A    It was a spreadsheet.

21

1    Q    And do you recall where this information was
2   obtained from the spreadsheet?  Like Peoplesoft or --
3    A    I can assume where it was gathered from.  It
4   was provided to me by legal counsel.  I can only assume
5   it came from Peoplesoft.
6    Q    Okay.  So you don't know, but your educated
7   guess would be Peoplesoft?
8    A    Would be my educated guess.
9    Q    And just so we're clear, the road drivers are
10  also referred to as the line haul drivers?
11   A    Yes.
12   Q    And they're paid and have been paid mileage
13  pay; correct?
14   A    That's one part of their compensation.
15   Q    Correct.  They have the ability to earn other
16  parts of the compensation by doing other tasks which
17  we've learned earlier today which may be an hourly pay
18  for an hourly function or fixed pay for what has been
19  classified as fixed pay events?
20   A    Yes.
21   Q    Are you familiar with the FedEx meal period and
22  rest period policies?
23   A    Yes.
24   Q    Do you know what documents document the meal
25  period and rest period policies that are made available

22

1    Q    Do you agree with that statement?

2    A    Yes.

3    Q    And where do they acknowledge that they're

4    provided with an opportunity to take a meal and rest

5    break?

6         MR. JACOBY:   Vague as to time.

7              You can answer.

8    BY MR. POLINER:

9    Q    If it differed over time from 2009 to the

10   present, let me know.

11   A    Prior to the driver handhelds, they would

12   acknowledge it at the end of their shift on the driver

13   kiosks that were located at the service centers.

14   Q    Describe to me what you mean by driver kiosk.

15   A    It's a computer station.

16   Q    Where they swipe in and out?

17   A    They wouldn't swipe.  They would log in.  They

18   would get their dispatch instructions, trailer numbers,

19   print their paperwork.  And then at the end of their day

20   they would arrive themselves and indicate that they had

21   taken their meal and rest breaks.  And if I recall, they

22   would enter the time of their meal break.

23   Q    Now they would enter on the kiosk the time in

24   and out?

25   A    Of their meal break if I recall.

# Exhibit F

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROY D. TAYLOR, on behalf of
himself and all others similarly
situated,

        Plaintiffs,

   vs.

FEDEX FREIGHT, INC., an Arkansas
corporation; and DOES 1 through
10, inclusive,

        Defendants.

Case No.
1:13--CV-01137-LJO-BAM

CERTIFIED COPY

DEPOSITION OF: JON BARRETT

TAKEN ON: MAY 13, 2014



STRONG COURT REPORTING

Certified Shorthand Reporters

18688 San Felipe Street • Fountain Valley, CA 92708
Phone 714.593.4042 • Fax 714.968.0808
StrongCourtReporting@msn.com

REPORTED BY:

FILE NO:

Linda A. Strong, CSR No. 4426

14171

1   to clarify, I'm dealing with line haul drivers in

2   California.

3       A    That's correct.

4       Q    Are you familiar with any -- let me ask you

5   this.  Pre and post-trip inspections, is there any

6   documents to record the time it takes to do such?

7       A    Their federal log should reflect their pre and

8   post-trip.

9       Q    But would it be specified pre and post-trip

10  inspections but would it be nondrive time?

11      A    It would be logged on the federal grid as on

12  duty not driving.  But they would need to flag showing

13  not only pre and post-trip but maybe a drop or a hook.

14  So it should be noted on the log.

15      Q    So it would literally say pre and post-trip

16  inspection?

17      A    It should, yes.

18      Q    And based upon your experience, how long does a

19  pre and post-trip inspection take?

20      MR. JACOBY:  Each?

21      MR. POLINER:  I want to break that down.  Thank you,

22  counsel.

23      Q    How long roughly would a pre-trip inspection

24  take?

25      A    Pre-trip inspection should take, a thorough

                                                          16

pre-trip inspection should take anywhere from eight to ten minutes.

Q    And how long should a post-trip inspection take?

A    About the same amount of time.

Q    Are you aware of any FedEx documentation that would describe what should take place during a pre and/or post-trip inspection?

A    I believe there is a form out there that it kind of is a diagram that shows what should be checked. And then also on your DVIR there is some items listed that you need to check to ensure there is no defects with that equipment.

Q    And describe for me the procedure for a pre-trip inspection.

A    The driver would first begin by going to the front of the truck and looking for possible signs of damage, cracks in the windshield, leaks under the truck that could be antifreeze or oil.  And then they'll begin to work down the right-hand side.  Check mirror, check the window.  Some will go on down or some will climb in the cab of the truck and start checking the inside of the truck.  On their way up into the truck they will check their fire extinguisher to make sure it is fully charged.  Once they get in the cab there are a number of

17

1     A     It is.

2     MR. POLINER:  It's Bates 1847.  And we will mark it

3 as Plaintiff's 2.

4          (A copy of the aforementioned document was

5          marked Plaintiff's Exhibit 9 for identification

6          by the Certified Shorthand Reporter, and is

7          attached hereto.)

8 BY MR. POLINER:

9     Q     It shows Steps 1 through 26.  Do you see that?

10     A     I do.

11     Q     And it shows what appears to be a picture of a

12 tractor and a trailer.  Do you see that?

13     A     Actually a tractor and two trailers, correct.

14     MR. JACOBY:  Can we stop for a second?  I think in

15 federal court you're supposed to number exhibits

16 consecutively.  Do you know what number you used last

17 time?  Do you happen to know?

18     MR. POLINER:  Back on the record.

19          We are going to renumber the Notice of

20 Deposition as Plaintiff's 8.  And Bates D1847 is

21 Plaintiff's 9.

22     Q     So you see the Steps 1 through 26?

23     A     Yes.

24     Q     And do you believe that those steps are

25 pre-trip inspection steps that should be performed with

20

```
1     respect to a pre-trip inspection?
2          MR. JACOBY:  Objection.  Vague, compound.
3          THE WITNESS:  I do.
4     BY MR. POLINER:
5          Q    This was prepared by FedEx Freight?
6          A    It was.
7          Q    And it's a guide as to what line haul drivers
8     should perform with respect to pre-trip inspections?
9          A    That's correct.
10         Q    Are the same 26 steps to be applied with
11    respect to post-trip inspections?
12         MR. JACOBY:  Asked and answered.
13         MR. POLINER:  Actually it wasn't.  I said these 26
14    steps.
15         Q    But in any event, go ahead.
16         A    I would say with the exception of Step 1,
17    Step 2 and Step 3, yes.
18         Q    And have you ever done a pre-trip inspection?
19         A    I have.
20         Q    And have you done a post-trip inspection?
21         A    I have.
22         Q    And when was the last time?
23         A    Last year.
24         Q    What was the reasoning?
25         A    We have what we call a Chairman's Challenge in
```

1    Q    How about the year before, how many did you

2    conduct?

3    A    About the same.

4    Q    How about the year before?

5    A    Probably none.

6    Q    So how about 2010?

7    A    I don't recall.

8    Q    You don't recall or is the answer none?

9    A    I don't recall.

10    Q    Did you have any reason to conduct pre and

11    post-trip inspections as part of your job in 2010?

12    A    It depends on what I did at the Chairman's

13    Challenge.

14    Q    So is that the one place where you would be

15    doing these?

16    A    With the exception of prior to that in 2001,

17    yes.

18    Q    Were you ever a line haul driver?

19    A    I was.

20    Q    When?

21    A    From 1988 until 2001.

22    Q    And when you came up with the estimate of eight

23    to ten minutes for a pre-trip and eight to ten minutes

24    for a post-trip inspection, what was that based upon?

25    A    That's based on seeing drivers do that day in

                                                    23

1   and day out as they have to perform that numerous times

2   a day.

3         And, for instance, at the state competition,

4   truck driving championship and the nationals, that's the

5   timeframe that they give those employees to do that.

6   And they get it done either in that time or less and

7   find all the defects and do a very thorough pre-trip.

8         Q    What's the purpose of this championship, this

9   state and national championship?

10        A    Sure.  The truck driving championship is

11  basically safety based where drivers will compete in

12  their state in nine different classes, classification of

13  equipment.  And they have to do a written test.  It's

14  facts for drivers.  It's how many bridges in the United

15  States are deemed unsafe.  It's a number of statistical

16  information.  They have to know laws.  And then they do

17  a driving, drive a course, and they're timed for that.

18  And there are certain points for each problem.  And then

19  they also have to do a pre and post-trip -- excuse me.

20  I'm sorry.  A pre-trip inspection within a certain

21  amount of time.  And they compete against numerous other

22  companies.  And then at that point if they win first

23  place in their state, then they will go on to the

24  national truck driving championship which is the first

25  place winner of each class in each state.  So basically

24

1  they get very good at what they're looking for and know
2  exactly what to look for.  Therefore, it's not
3  unreasonable at all that someone can do a pre-trip
4  inspection within an eight to ten-minute timeframe.

5      Q    You say line haul drivers, they perform
6  numerous pre and post-trip inspections a day?

7      A    Yes.

8      Q    And why is that?

9      A    Well, they have to pre-trip their equipment
10 when they first get it before their line haul run
11 begins.  If they're going to a hub or they're going to a
12 relay point where they're switching trailers, they have
13 to do a post and pre-trip on the new trailers that they
14 get.  And then if they have any VIA's, in other words,
15 on your way home you go to another location, they get
16 new equipment.  They would have to do an additional
17 post-trip and pre-trip.  And then a post-trip once they
18 return.

19     Q    So if I look at a logbook, you believe if
20 several pre-trips have been done, it will note the word
21 pre-trip each time?

22     A    It should, yes.

23     Q    And the same with post-trip?

24     A    Yes.  And lots of times that's abbreviated by
25 DVIR or VIR, Vehicle Inspection Report.

26

1      A      Yes.

2      Q      Is there circumstances that are unrelated to

3  the movement of hazardous materials where there would be

4  a placarding of a load?

5      A      Repeat that if you would, please.

6      Q      Probably not.  But I'll try.

7           You seem to indicate or imply that placarding

8  of load only takes place where there is hazardous

9  materials.  I'm trying to learn if there is any other

10  circumstance other than the movement of hazardous

11  materials where a placarding of a load would take place.

12     A      No.

13     Q      How long does it take to actually do the

14  physical task of placarding a load?

15     A      It would depend on the type of placards you

16  happen to apply.  But an estimate would be three to five

17  minutes.

18     Q      Where do you place the placard?

19     A      The placards are required to go on the front

20  rear and both sides of the equipment of the trailer that

21  has the hazardous material on it.  And we have flip

22  placards there.  So it's a matter of undoing the holders

23  and flipping to the right placard and putting them back

24  on.

25           Go head.  I'm sorry.

33

1    Q    And where do you get them?  Where do the

2    driver's get the placards?

3    A    For line haul drivers, they should already be

4    placarded once the line haul driver gets his paperwork.

5    Q    So the line haul driver is not doing the

6    placarding?

7    A    Part of the pre-trip inspection is to ensure

8    placarding is correct.  So that's part of the pre-trip

9    inspection.

10    Q    So that physical task would take place during

11    the pre-trip inspection?

12    A    That is correct.  And so the placards should

13    already be showing either no placard is required or

14    placard is required.  Our policy is that whoever closes

15    that load flips the placards.

16    Q    So are you saying that a driver would already

17    know, meaning a line haul driver would already know by

18    looking at some document that it needs to be placarded?

19    A    That's correct.

20    Q    Now when you gave the time estimate of eight to

21    ten minutes for a pre-trip and eight to ten minutes for

22    a post-trip, did that include the three to five minutes

23    for when you placard or is there additional three to

24    five minutes for those circumstances that need

25    placarding?

34

1      A      That is if they have to go back inside to get

2   the placards.  If they're not placarded at that time and

3   they were incorrect, either for them to go back inside

4   and get someone to flip the placards for them.  But if

5   they know that the paperwork on the placard shows, for

6   instance, flammable, as they start their pre-trip, then

7   they will do that as they go along or they'll stop their

8   pre-trip and go inside and get someone to say I either

9   need placards for my trailer or they need to be flipped.

10     Q      So I'm trying to understand your testimony.  It

11  sounds like you're saying, and I don't want to put words

12  in your mouth, but I do want to paraphrase what you're

13  saying, circumstances where a placard is required, where

14  the actual driver had to go get the physical placard, it

15  may take an additional three to five minutes of time in

16  addition to the eight to ten minutes of time, but there

17  are also circumstances where the placard may be in their

18  physical possession right then and there where it just

19  requires the physical putting on of the placard?

20     A      Correct.

21     Q      Where it wouldn't take additional time?

22     A      That's correct.

23     Q      Okay.  Now how about the removal and returning

24  of the placard, does that take place when the trip is

25  completed?

1      A    No.  Because once a driver, line haul driver

2    comes in and parks his equipment or puts it to the door,

3    they're through with that trailer so they would not be

4    responsible for removing the placards once they're

5    through on their post-trip.  So they would not be

6    required to do that, no.

7      Q    Are you familiar with weighing units on site?

8      A    I am.

9      Q    Let me go back to the placarding of loads.  Are

10   you familiar with any policy or procedure that would set

11   forth how and what to do with respect to the placarding

12   of loads?

13     A    Yes.

14     Q    And where would that be?

15     A    I believe it's in the driver manual under

16   hazardous material.  And there is a portion in there

17   that talks about who is responsible for placarding that

18   load.

19     Q    Do you know what lesson that is?

20     A    I do not.  Not right offhand.  I'm sorry.

21     Q    But it's you believe part of the hazardous

22   material section of the manual?

23     A    Yes.

24     Q    Let's go back now to weighing units on site.

25   Are you familiar with that?

                                                          36

1    A    No, I haven't.  However, I was involved when we

2   were determining whether we needed to continue to use

3   our pre-pass.  It's very expensive.  And at that point

4   there was a study done on how often those are used.  In

5   other words, is the scale house closed, you still have

6   to pay the price of use that pre-pass if it goes off.

7   And we determined how often they are actually going into

8   a scale house, and it was very minimal.

9    Q    And what did that study show as far as how

10  often California line haul drivers are going into a

11  weigh station house?

12   A    I don't recall.

13   Q    Are you familiar with the term routine

14  maintenance inspection?

15   A    Yes.

16   Q    And routine maintenance inspection, that's

17  included in mileage pay; correct?

18   A    Well, when I think of routine maintenance

19  inspection, it's done by fleet maintenance.

20        I'm sorry.  Are you speaking about routine

21  maintenance being conducted by line haul?

22   Q    Well, that's an assumption that I would ask

23  you.  Because I could show you what the policy says.

24  And it talks under line haul drivers compensation, it

25  seems to imply that routine maintenance inspections by

45

1    line haul drivers is included as part of fixed pay.
2    Would you agree with that?
3        MR. JACOBY:  Objection.  Vague.
4        THE WITNESS:  Part of fixed pay, I would not agree
5    with that.
6    BY MR. POLINER:
7        Q    I misspoke.  Part of mileage pay.
8        A    I would agree with that, yes.
9        Q    Now what constitutes routine maintenance
10   inspections --
11       A    That would be --
12       Q    -- for line haul drivers in California?
13       A    Sorry.  That would be related to the pre and
14   post-trip inspections.
15       Q    So other than pre and post-trip inspections,
16   you're not aware of any tasks that would relate to
17   routine maintenance inspections?
18       A    No.
19       MR. JACOBY:  Could we take a break, a quick break?
20       MR. POLINER:  Sure.
21          (SHORT RECESS.)
22       MR. POLINER:  Back on the record.
23       Q    I'm not sure exactly where I left off.  Did I
24   leave off of en route vehicle inspection?  Are you
25   familiar with what that is?

46

1  something wrong, it has the word after routine

2  maintenance inspection. Do you see that?

3      A    I do.

4      Q    It has en route vehicle inspections. That's

5  what I'm talking about.

6      A    Yes. It is included in the mileage pay.

7      Q    Okay. And what is en route vehicle inspections

8  which are included in mileage pay?

9      A    If you stop someplace, for instance, if you use

10 the restroom or you take your meal break, then you want

11 to glance over your equipment to make sure no one pulled

12 the pin on your fifth wheel, for instance, make sure you

13 don't have flat tires. Just a quick overview of the

14 equipment to make sure that all is functioning properly

15 as you're going down the road and actually driving. A

16 routine inspection would be checking your mirrors every

17 five to eight seconds to make sure you don't have pieces

18 of tire coming out or smoke or something.

19     Q    Let's talk about non-drive time en route

20 vehicle inspection.

21     A    Okay.

22     Q    And you said that is when you're out of your

23 vehicle and you're looking at such things as pulled

24 pins?

25     A    Pulled fifth wheel pin.

48

```
 1    Q    Anything else?

 2    A    Tires.

 3    Q    Anything else?

 4    A    Lights.

 5    Q    Anything else?

 6    A    That's all.

 7    Q    And how often does that take place outside of

 8    any type of pre or post-trip inspection?

 9    A    It should be done every time you stop.

10    Q    Do you have an estimate of how many times a

11    driver in California, a line haul driver stops on

12    average?

13    A    Well, he's got his meal period that he has to

14    take.  So that would be one.  And then my answer would

15    be at least one.

16    Q    And roughly how long does that take?

17    A    You can do that as you walk back to your

18    equipment.  So it's really not over and above the normal

19    walking back to your equipment.  If you are coming out

20    of a restaurant or a restroom, you could certainly look

21    down the left side of your equipment and come up the

22    right side and get in your truck and leave.

23    Q    A minutes?  Two minutes?

24    A    A minute.

25    Q    And is there any type of documentation done
```

                                                                    49

1     A    Not to my knowledge.

2     Q    And how long based upon your experience does a

3  routine DOT safety inspection takes place?

4     A    The same.  About a minute.  It would be the

5  same as your routine maintenance inspection.

6     Q    And is this something that takes place at least

7  once a trip?

8     A    Yes.  When they stop for the break.

9     Q    Are you combining an en route vehicle

10  inspection and a routine DOT safety inspection as the

11  same thing?

12     A    I am.

13     Q    Okay.  And then the next under the trip mileage

14  pay part of the Driver Manual Lesson 13 is all

15  trip-related paper work and documents.  Are you familiar

16  with that?

17     A    I am.

18     Q    What type of completing of trip-related

19  paperwork and documents is required by FedEx as it

20  relates to trip and mileage pay?

21     A    That would be their log, federal log and their

22  DVIR.

23     Q    And is that done once a day?  Multiple times a

24  day?

25     A    The DVIR would be each time that they change

51

1  equipment. The log would be turned in once the log is
2  complete.
3     Q   So is that once a day?
4     A   Yes.
5     Q   So they may write in it multiple times a day in
6  the log as they see fit, but it may be just turned in
7  once a day?
8     A   Not as they see fit. As regulation requires.
9     Q   And throughout a single day how long would you
10  estimate it takes a driver to fill in his log?
11     A   Well, if he's logging per regulation, it's
12  going to take about 30 seconds.
13     Q   Okay. So throughout the entire day from when
14  he begins to ends the entire time of actually physically
15  opening the log and writing in the log, you estimate to
16  be 30 seconds a day?
17     A   I estimate it to be depending on 30 seconds to
18  make the entry in the log for each entry he makes.
19     Q   Oh, for each entry?
20     A   That's correct.
21     Q   How many entries are made typically?
22     MR. JACOBY: Vague.
23  BY MR. POLINER:
24     Q   You can give me an estimate.
25     A   Three.

52

1  because the court reporter unfortunately as fabulous as

2  she is, it's hard.

3         It talks about hazardous material paperwork.

4  Is that to be completed by California line haul drivers?

5     A    No.

6     MR. POLINER:  We'll mark this as Plaintiff's 11.

7         (A copy of the aforementioned document was

8     marked Plaintiff's Exhibit 11 for

9     identification by the Certified Shorthand

10    Reporter, and is attached hereto.)

11  BY MR. POLINER:

12    Q    Let's take a look at the next series of

13  documents which 3703 through 3712.  This appears to be a

14  selection produced by defendant of DVIRs.  Would you

15  agree?

16    A    Yes.  But I only see Bates 3703 through 3710,

17  not 12.

18    MR. JACOBY:  I have 11 and 12.

19    MR. POLINER:  That's fine.

20    Q    This is the DVIR that drivers are required to

21  fill out?

22    A    Yes.

23    Q    And this is on a daily basis?

24    A    Yes.

25    Q    And the purpose of the DVIR is to do what?

59

1     A     The DVIR is a documentation that equipment is

2     roadworthy and it's required by Department of

3     Transportation.

4        Q     And this relates to a pre and post-trip

5     inspection?

6        A     It does.

7        Q     And this is a document that you say takes

8     roughly how long to complete?

9        A     30 seconds.

10       Q     Okay.  And is the first 3703, it looks like a

11    blank.  Is that an exemplar?

12       A     Yes.

13       Q     Of one that's currently used by FedEx Freight?

14       A     Yes.

15       Q     Now let's look at 3704.  So you're supposed to

16    put the date; correct?

17       A     Yes.

18       Q     And your unit number; correct?

19       A     Yes.

20       Q     And the location; correct?

21       A     Correct.

22       Q     And your driver number; correct?

23       A     Correct.

24       Q     And your trailer number; correct?

25       A     Correct.

1        A    No.

2        Q    Well, look at 3706.  That appears to be

3   included in that one.  Is there a reason?

4        A    Because it must be a city driver.

5        Q    You mean city driver is included but line haul

6   drivers don't?

7        A    That's correct.  Because city drivers are paid

8   by the hour.

9        Q    Okay.  So for city driver would it show a start

10  time and an end time for the pre-trip?

11       A    It should, yes.

12       Q    So look at 3706.  Do we see a start time?

13       A    We do not.  We show a finish time.  Yes.

14  Pre-trip inspection finish time, and then the finish

15  time.  We don't see the start time.

16       Q    Why do I have two finish times, 15:03 and the

17  18:55 on 3706?

18       A    It has to do with keeping track of their hours

19  on what their time is.  And that would be the time that

20  they finished inspecting their equipment each time they

21  finish it.  So it gives them an idea of when they got to

22  the location and what time they finish their post-trip.

23       Q    Now if a driver was to put in his start time,

24  where would he put his pre-trip start time?  Is there a

25  location?

63

1    A    City drivers don't have start times.

2    Q    Regardless if it's city or non-city.  I'm

3    trying to figure out if this document has a start time

4    for pre-trip inspection.

5    A    It does not.

6    Q    Because I see pre-trip inspection finish time.

7    I see odometer, I see lunch time, and I see pre-trip

8    inspection finish time.  But I don't see --

9    MR. JACOBY:  Post-trip.

10   MR. POLINER:  Oh, post-trip.  Thank you.  Yeah.

11   Q    But I don't see a start time for either the pre

12   or the post-trip inspection.  Is that correct?

13   A    That's correct.

14   Q    And you're saying it should be if I were to

15   look at a log, the log would show a pre-trip start time

16   and end time and it should be noted on the log?

17   A    For line haul only.

18   Q    Yes.

19   A    Yes.  But keep in mind that --

20   MR. JACOBY:  Go ahead.

21   THE WITNESS:  Keep in mind that a log is 15-minute

22   intervals.  So they're going to round to the nearest 15

23   minutes.  In other words, if it's seven-and-a-half

24   minutes, they're not going to show anything.  They're

25   just going to maybe show a flag.  If it's over

64

STRONG COURT REPORTING

# Exhibit G

## Filed Under Seal

# Exhibit H

1   KEITH A. JACOBY, Bar No. 150233
    kjacoby@littler.com
2   LITTLER MENDELSON, P.C.
    2049 Century Park East, 5th Floor
3   Los Angeles, CA 90067.3107
    Telephone:    310.553.0308
4   Fax No.:      310.553.5583

5   MICHELLE B. HEVERLY, Bar No. 178660
    meverly@littler.com
6   SOPHIA BEHNIA, Bar No. 289318
    sbehnia@littler.com
7   LITTLER MENDELSON, P.C.
    650 California Street, 20th Floor
8   San Francisco, CA 94108.2693
    Telephone:    415.433.1940
9   Fax No.:      415.399.8490

10  KARIN M. COGBILL, Bar No. 244606
    kcogbill@littler.com
11  LITTLER MENDELSON, P.C.
    50 W. San Fernando Street, 15th Floor
12  San Jose, CA 95113.2303
    Telephone:    408.998.4150
13  Fax No.:      408.288.5686

14  MIREYA A.R. LLAURADO, Bar No. 194882
    mallaurado@fedex.com
15  FEDEX FREIGHT, INC.
    3425 Victor Street
16  Santa Clara, CA 95054
    Telephone: 408.654.3186
17  Facsimile: 408.654.3297

18  Attorneys for Defendant
    FEDEX FREIGHT, INC.
19
                        UNITED STATES DISTRICT COURT
20
                        EASTERN DISTRICT OF CALIFORNIA
21

22  ROY D. TAYLOR, on behalf of himself        Case No. 1:13-cv-01137-LJO-BAM
    and all others similarly situated,
23                                             **DEFENDANT FEDEX FREIGHT, INC.'S**
                    Plaintiff,                 **RESPONSE TO PLAINTIFF'S**
24                                             **INTERROGATORIES, SET ONE**
    v.
25
    FEDEX FREIGHT, INC., an Arkansas
26  Corporation; and DOES 1 through 10,
    inclusive,
27
                    Defendants.
28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

PROPOUNDING PARTY:    Plaintiff, ROY D. TAYLOR

RESPONDING PARTY:    Defendant, FEDEX FREIGHT, INC.

SET NO.:    ONE

Pursuant to Federal Rules of Civil Procedure, Rule 33, Defendant FEDEX FREIGHT, INC. ("Defendant") by and through their undersigned counsel, hereby serve their responses to Plaintiff ROY D. TAYLOR's Interrogatories, Set One, as follows:

## GENERAL OBJECTIONS

1.    Defendant objects to Plaintiff's Interrogatories to the extent that they are vague or ambiguous.

2.    Defendant objects to Plaintiff's Interrogatories to the extent that they are overly broad, either as to the time period over which information is requested or as to the scope of information requested, particularly in light of the fact that many putative class members previously released all claims against Defendant.

3.    Defendant objects to Plaintiff's Interrogatories to the extent that they seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.    Defendant objects to Plaintiff's Interrogatories to the extent that they seek information that would be unduly burdensome to compile or produce.

5.    Defendant objects to Plaintiff's Interrogatories to the extent that they seek information that does not exist in the form or manner in which Plaintiff has requested it.

6.    Defendant objects to Plaintiff's Interrogatories to the extent that they seek information that is protected from disclosure by the attorney-client privilege or the work-product doctrine.

7.    Defendant objects to Plaintiff's Interrogatories to the extent that they seek information that is already in Plaintiff's possession or under his control or that may be equally available to Plaintiff.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

CASE NO.  1:13-CV-01137-LJO-BAM
DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S INTERROGATORIES, SET ONE

1          8.     Defendant objects to Plaintiff's Interrogatories to the extent that they seek

2   information that is confidential to an individual, besides Plaintiff, or the disclosure of which would

3   infringe upon the privacy rights of an individual, besides Plaintiff.

4   **RESPONSE TO INTERRAGATORIES**

5   **INTERROGATORY NO. 1:**

6         IDENTIFY all DRIVERS.

7   **RESPONSE TO INTERROGATORY NO. 1:**

8         Defendant objects that this interrogatory is overbroad as to time in so far as by using

9   the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by

10  Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the

11  discovery of admissible evidence. Defendant further objects that the interrogatory on the grounds

12  that it seeks private and confidential information concerning third party individuals.

13        Without waiving the foregoing objections, Defendant states that it will meet and

14  confer with Plaintiff's counsel regarding the appropriate scope and parameters of a class list.

15  **INTERROGATORY NO. 2:**

16        State the number of DRIVERS.

17  **RESPONSE TO INTERROGATORY NO. 2:**

18        Defendant objects that this interrogatory is overbroad as to time in so far as by using

19  the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by

20  Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the

21  discovery of admissible evidence.

22        Without waiving the foregoing objections, Defendant states that it is working to

23  compile this information and will provided an amended responses regarding the number of

24  individuals employed as line haul drivers in California during the relevant time period.

25  **INTERROGATORY NO. 3:**

26        State the last date PLAINTIFF worked for YOU.

27  **RESPONSE TO INTERROGATORY NO. 3:**

28        Defendant objects to this interrogatory as nonsensical because Plaintiff is currently

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

1   employed by Defendant.

2   **INTERROGATORY NO. 4:**

3         State the date YOU provided PLAINTIFF with wages following the last day

4   PLAINTIFF worked for YOU.

5   **RESPONSE TO INTERROGATORY NO. 4:**

6         Defendant objects to this interrogatory as nonsensical because Plaintiff is currently

7   employed by Defendant.

8   **INTERROGATORY NO. 5:**

9         Describe the compensation plan for the payment of wages to PLAINTIFF for his pre

10   and post-trip inspection of YOUR trucks.

11   **RESPONSE TO INTERROGATORY NO. 5:**

12         Defendant objects to this interrogatory on the ground that it is vague and ambiguous

13   with respect to the terms "compensation plan," "payment," "wages," "pre and post-trip inspections,"

14   and "trucks," which are not defined. Defendant objects to this interrogatory on the grounds that it

15   seeks private, confidential and/or proprietary information. Defendant further objects on the basis

16   that and to the extent that the interrogatory seeks information protected by the attorney-client

17   privilege and attorney work-product doctrine. Defendant further objects that the interrogatory is

18   overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of

19   admissible evidence.

20         Subject to and without waiving the foregoing objections, Defendant responds as

21   follows: Defendant's Line Haul Driver Manual contains policies responsive to this interrogatory.

22   Defendant will produce relevant excerpts from its Line Haul Driver Manual applicable to drivers

23   during the relevant time period.

24   **INTERROGATORY NO. 6:**

25         State YOUR policy, procedure and practice for paying PLAINTIFF wages, other than

26   piece rate compensation, for the time PLAINTIFF spent conducting pre and post-trip inspections of

27   YOUR trucks.

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

CASE NO. 1:13-CV-01137-LJO-BAM

DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S INTERROGATORIES, SET ONE

1 **RESPONSE TO INTERROGATORY NO. 6:**

2            Defendant objects to this interrogatory on the ground that it is vague and ambiguous

3 with respect to the terms "wages," "piece rate compensation," "time spent," "pre and post-trip

4 inspections," and "trucks," which are not defined. Defendant objects to this interrogatory on the

5 grounds that it seeks private, confidential and/or proprietary information. Defendant further objects

6 that the interrogatory is overbroad as to time, and therefore, is not reasonably calculated to lead to

7 the discovery of admissible evidence.

8            Subject to and without waiving the foregoing objections, Defendant responds as

9 follows: Defendant's Line Haul Driver Manual contains policies responsive to this interrogatory.

10 Defendant will produce relevant excerpts from its Line Haul Driver Manual applicable to drivers

11 during the relevant time period.

12 **INTERROGATORY NO. 7:**

13            Describe YOUR compensation plan for the payment of wages to PLAINTIFF for the

14 time he spent driving to and from hotels YOU designated PLAINTIFF to stay and the dispatch

15 center where trailers were hauled.

16 **RESPONSE TO INTERROGATORY NO. 7:**

17            Defendant objects to this interrogatory on the ground that it is vague and ambiguous

18 with respect to the terms "compensation plan," "wages," "time spent," "driving," "hotels," dispatch

19 center," "trailers," and "hauled," which are not defined. Defendant objects to this interrogatory on

20 the grounds that it seeks private, confidential and/or proprietary information. Defendant further

21 objects on the basis that and to the extent that the interrogatory seeks information protected by the

22 attorney-client privilege and attorney work-product doctrine. Defendant further objects that the

23 interrogatory is overbroad as to time, and therefore, is not reasonably calculated to lead to the

24 discovery of admissible evidence.

25            Subject to and without waiving the foregoing objections, Defendant responds as

26 follows: Defendant's Line Haul Driver Manual contains policies responsive to this interrogatory.

27 Defendant will produce relevant excerpts from its Line Haul Driver Manual applicable to drivers in

28 California during the relevant time period.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

CASE NO. 1:13-CV-01137-LJO-BAM

DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S INTERROGATORIES, SET ONE

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

1    **INTERROGATORY NO. 8:**

2         State YOUR policy, procedure, and practice for paying PLAINTIFF wages for the

3    time he spent driving to and from hotels YOU designated PLAINTIFF to stay and the dispatch

4    center where trailers were hauled.

5    **RESPONSE TO INTERROGATORY NO. 8:**

6         Defendant objects to this interrogatory on the ground that it is vague and ambiguous

7    with respect to the terms "wages," "time spent," "driving," "hotels," dispatch center," "trailers," and

8    "hauled," which are not defined. Defendant objects to this interrogatory on the grounds that it seeks

9    private, confidential and/or proprietary information. Defendant further objects that the interrogatory

10   is overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of

11   admissible evidence.

12        Subject to and without waiving the foregoing objections, Defendant responds as

13   follows: Defendant's Line Haul Driver Manual contains policies responsive to this interrogatory.

14   Defendant will produce relevant excerpts from its Line Haul Driver Manual applicable to drivers in

15   California during the relevant time period.

16   **INTERROGATORY NO. 9:**

17        Describe YOUR compensation plan for the payment of wages to DRIVERS for their

18   pre and post-trip inspections of YOUR trucks.

19   **RESPONSE TO INTERROGATORY NO. 9:**

20        Defendant objects to this interrogatory on the ground that it is vague and ambiguous

21   with respect to the terms "compensation plan," "payment," "wages," "pre and post-trip inspections,"

22   and "trucks," which are not defined. Defendant objects to this interrogatory on the grounds that it

23   seeks private, confidential and/or proprietary information. Defendant further objects on the basis

24   that and to the extent that the interrogatory seeks information protected by the attorney-client

25   privilege and attorney work-product doctrine. Defendant further objects that the interrogatory is

26   overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of

27   admissible evidence.

28        Subject to and without waiving the foregoing objections, Defendant responds as

follows: Defendant's Line Haul Driver Manual contains policies responsive to this interrogatory. Defendant will produce relevant excerpts from its Line Haul Driver Manual applicable to drivers in California during the relevant time period.

**INTERROGATORY NO. 10:**

State YOUR policy, procedure, and practice for paying wages to DRIVERS, other than piece rate compensation, for the time DRIVERS spent conducting pre and post-trip inspections of YOUR trucks.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendant objects to this interrogatory on the ground that it is vague and ambiguous with respect to the terms "wages," "piece rate compensation," "time spent," "pre and post-trip inspections," and "trucks," which are not defined. Defendant objects to this interrogatory on the grounds that it seeks private, confidential and/or proprietary information. Defendant further objects that the interrogatory is overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant's Line Haul Driver Manual contains policies responsive to this interrogatory. Defendant will produce relevant excerpts from its Line Haul Driver Manual applicable to drivers in California during the relevant time period.

**INTERROGATORY NO. 11:**

Describe YOUR compensation plan for the payment of wages to DRIVERS [sic] for the time they spent driving to and from hotels YOU designated DRIVERS to stay and the dispatch center where trailers were hauled.

**RESPONSE TO INTERROGATORY NO. 11:**

Defendant objects to this interrogatory on the ground that it is vague and ambiguous with respect to the terms "compensation plan," "payment," "wages," "time spent," "driving," "hotels," dispatch center," "trailers," and "hauled," which are not defined. Defendant objects to this interrogatory on the grounds that it seeks private, confidential and/or proprietary information. Defendant further objects on the basis that and to the extent that the interrogatory seeks information

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1 protected by the attorney-client privilege and attorney work-product doctrine. Defendant further

2 objects that the interrogatory is overbroad as to time, and therefore, is not reasonably calculated to

3 lead to the discovery of admissible evidence.

4         Subject to and without waiving the foregoing objections, Defendant responds as

5 follows: Defendant's Line Haul Driver Manual contains policies responsive to this interrogatory.

6 Defendant will produce relevant excerpts from its Line Haul Driver Manual applicable to drivers in

7 California during the relevant time period.

8 **INTERROGATORY NO. 12:**

9         State YOUR policy, procedure, and practice for paying DRIVERS wages for the time

10 DRIVERS spent driving to and from hotels YOU designated DRIVERS to stay and the dispatch

11 center where trailers were hauled.

12 **RESPONSE TO INTERROGATORY NO. 12:**

13         Defendant objects to this interrogatory on the ground that it is vague and ambiguous

14 with respect to the terms "wages," "time spent," "driving," "hotels," dispatch center," "trailers," and

15 "hauled," which are not defined. Defendant objects to this interrogatory on the grounds that it seeks

16 private, confidential and/or proprietary information. Defendant further objects that the interrogatory

17 is overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of

18 admissible evidence.

19         Subject to and without waiving the foregoing objections, Defendant responds as

20 follows: Defendant's Line Haul Driver Manual contains policies responsive to this interrogatory.

21 Defendant will produce relevant excerpts from its Line Haul Driver Manual applicable to drivers in

22 California during the relevant time period.

23 **INTERROGATORY NO. 13:**

24         State YOUR policy, procedure, and practice for documenting time spent by

25 DRIVERS for their pre and post-trip inspections of YOUR trucks.

26 **RESPONSE TO INTERROGATORY NO. 13:**

27         Defendant objects to this interrogatory on the ground that it is vague and ambiguous

28 with respect to the terms "documenting," "time spent," "pre and post-trip inspections," and "trucks,"

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
.os Angeles, CA 90067.3107
310.553.0308

1 which are not defined. Defendant objects to this interrogatory on the grounds that it seeks private,

2 confidential and/or proprietary information. Defendant further objects that the interrogatory is

3 overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of

4 admissible evidence.

5         Subject to and without waiving the foregoing objections, Defendant responds as

6 follows: Defendant's Line Haul Driver Manual and Department of Transportation Log Book

7 Instructions contain policies responsive to this interrogatory. Defendant will produce its Department

8 of Transportation Log Book and relevant excerpts from its Line Haul Driver Manual applicable to

9 drivers in California during the relevant time period.

10 **INTERROGATORY NO. 14:**

11         State YOUR policy, procedure, and practice for documenting the time spent by

12 DRIVERS for the time DRIVERS spent driving to and from hotels YOU designated DRIVERS to

13 stay and the dispatch center where trailers were hauled.

14 **RESPONSE TO INTERROGATORY NO. 14:**

15         Defendant objects to this interrogatory on the ground that it is vague and ambiguous

16 with respect to the terms "documenting," "time spent," "driving," "hotels," dispatch center,"

17 "trailers," and "hauled," which are not defined. Defendant objects to this interrogatory on the

18 grounds that it seeks private, confidential and/or proprietary information. Defendant further objects

19 that the interrogatory is overbroad as to time, and therefore, is not reasonably calculated to lead to

20 the discovery of admissible evidence.

21         Subject to and without waiving the foregoing objections, Defendant responds as

22 follows: Defendant's Line Haul Driver Manual and Employee Handbook contain policies responsive

23 to this interrogatory. Defendant will produce relevant excerpts from its Line Haul Driver Manual and

24 Employee Handbook applicable to drivers in California during the relevant time period.

25 **INTERROGATORY NO. 15:**

26         State YOUR policy, procedure and practice for providing DRIVERS with duty-free

27 meal periods.

28

CASE NO. 1:13-CV-01137-LJO-BAM

DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S INTERROGATORIES, SET ONE

**RESPONSE TO INTERROGATORY NO. 15:**

Defendant objects to this interrogatory on the ground that it is vague and ambiguous with respect to the terms "providing" and "duty-free meal periods," which are not defined. Defendant objects to this interrogatory on the grounds that it seeks private, confidential and/or proprietary information. Defendant further objects that the interrogatory is overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Relevant excerpts from Defendant's Line Haul Driver Manual and Employee Handbook contain policies responsive to this interrogatory. Defendant will produce relevant excerpts from its Line Haul Driver Manual and Employee Handbook applicable to drivers in California during the relevant time period.

**INTERROGATORY NO. 16:**

State YOUR policy, procedure, and practice for documenting duty-free meal periods taken by DRIVERS.

**RESPONSE TO INTERROGATORY NO. 16:**

Defendant objects to this interrogatory on the ground that it is vague and ambiguous with respect to the terms "documenting" and "duty-free meal periods," which are not defined. Defendant objects to this interrogatory on the grounds that it seeks private, confidential and/or proprietary information. Defendant further objects that the interrogatory is overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant's Line Haul Driver Manual and Employee Handbook contain policies responsive to this interrogatory. Defendant will produce relevant excerpts from its Line Haul Driver Manual and Employee Handbook applicable to drivers in California during the relevant time period.

**INTERROGATORY NO. 17:**

State YOUR policy, procedure, and practice for paying wages to DRIVERS, other than piece rate compensation, if DRIVERS are not provided with duty-free meal periods by YOU.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
os Angeles, CA 90067.3107
310.553.0308

CASE NO. 1:13-CV-01137-LJO-BAM
DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S INTERROGATORIES, SET ONE

**RESPONSE TO INTERROGATORY NO. 17:**

Defendant objects to this interrogatory on the ground that it is vague and ambiguous with respect to the terms "wages," "piece rate compensation," and "duty-free meal periods," which are not defined. Defendant objects to this interrogatory on the grounds that it seeks private, confidential and/or proprietary information. Defendant further objects that the interrogatory is overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant will produce responsive, non-privileged documents, if they exist, applicable line-haul drivers in California during the relevant time period.

**INTERROGATORY NO. 18:**

State YOUR policy, procedure, and practice for providing DRIVERS with duty-free rest periods.

**RESPONSE TO INTERROGATORY NO. 18:**

Defendant objects to this interrogatory on the ground that it is vague and ambiguous with respect to the term "duty-free rest period," which is not defined. Defendant objects to this interrogatory on the grounds that it seeks private, confidential and/or proprietary information. Defendant further objects that the interrogatory is overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant's Line Haul Driver Manual and Employee Handbook contain policies responsive to this interrogatory. Defendant will produce relevant excerpts from its Line Haul Driver Manual and Employee Handbook applicable to drivers in California during the relevant time period.

**INTERROGATORY NO. 19:**

State YOUR policy, procedure, and practice for paying wages to DRIVERS, other than piece rate compensation, if DRIVERS are not provided with duty-free rest periods by YOU.

**RESPONSE TO INTERROGATORY NO. 19:**

Defendant objects to this interrogatory on the ground that it is vague and ambiguous

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

with respect to the terms "wages," "piece rate compensation," and "duty-free rest periods," which are not defined. Defendant objects to this interrogatory on the grounds that it seeks private, confidential and/or proprietary information. Defendant further objects that the interrogatory is overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant will produce responsive, non-privileged documents, if they exist, applicable line-haul drivers in California during the relevant time period.

**INTERROGATORY NO. 20:**

State YOUR policy, procedure and practice for paying final wages to DRIVERS upon termination of DRIVERS' employment with YOU.

**RESPONSE TO INTERROGATORY NO. 20:**

Defendant objects to this interrogatory on the ground that it is vague and ambiguous with respect to the term "final wages," which is not defined. Defendant objects to this interrogatory as overbroad in scope and not reasonably calculated to lead to the discovery of admissible evidence since Plaintiff lacks standing to prosecute a claim related to the payment of final wages upon termination. Defendant objects to this interrogatory on the grounds that it seeks private, confidential and/or proprietary information.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant understands "final wages" to refer to the last paycheck a driver receives when his or her employment with Defendant is terminated. Defendant follows all applicable state and federal laws with regarding to paying final wages to its drivers upon termination of their employment with Defendant.

**INTERROGATORY NO. 21:**

State YOUR policy, procedure, and practice for documenting YOUR payment of final wages to DRIVERS upon termination of DRIVERS' employment with YOU.

**RESPONSE TO INTERROGATORY NO. 21:**

Defendant objects to this interrogatory on the ground that it is vague and ambiguous

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

with respect to the term "final wages," which is not defined. Defendant objects to this interrogatory as overbroad in scope and not reasonably calculated to lead to the discovery of admissible evidence since Plaintiff lacks standing to prosecute a claim related to the payment of final wages upon termination. Defendant objects to this interrogatory on the grounds that it seeks private, confidential and/or proprietary information.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant understands "final wages" to refer to the last paycheck a driver receives when his or her employment with Defendant is terminated. Based on this understanding, "final wages" are documented in the relevant driver's payroll records.

**INTERROGATORY NO. 22:**

State all facts that support each of YOUR affirmatives [sic] defenses.

**RESPONSE TO INTERROGATORY NO. 22:**

Defendant objects to this interrogatory as each of the affirmative defenses raise legal defenses. Thus, requiring Defendant to respond calls for a legal conclusion and requests information protected by the attorney/client privilege and work-product doctrine. Moreover, with respect to all of Defendant's affirmative defenses, discovery is continuing in this matter and Defendant's investigation of Plaintiff's allegations is ongoing; therefore it is impossible for Defendant to be aware of all possible witnesses or documents as of the time of this response. Defendant further objects to the interrogatory to the extent it calls for the production of information protected by the attorney-client privilege and/or attorney work product doctrine.

**INTERROGATORY NO. 23:**

For each of YOUR response to a Request for Admission served with these interrogatories that is not an unqualified admission, state all facts that support YOUR response.

**RESPONSE TO INTERROGATORY NO. 23:**

Defendant objects to this interrogatory on the grounds that it includes discrete subparts, which after responding with respect to the first three Requests for Admission, exceeds the limit of 25 interrogatories as permitted by FRCP 33.

Request For Admission No. 2 [*Admit that you did not pay wages to Plaintiff, other*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1  *than the piece rate compensation, for the time Plaintiff spent conducting pre and post-trip*

2  *inspections of your trucks]*

3      Defendant objects to this interrogatory on the ground that the underlying Request for

4  Admission is vague and ambiguous with respect to the terms "wages," "time spent," "piece rate

5  compensation," "pre and post-trip inspections," and "trucks" which are not defined. Defendant

6  further objects that the underlying Request for Admission is overbroad as to time, and therefore, is

7  not reasonably calculated to lead to the discovery of admissible evidence.

8      Without waiving the foregoing objections, Defendant responds that Plaintiff's

9  compensation structure provides that he may receive wages during his pre and post-trip inspections,

10  including at times delay pay, or other wages related to mechanical issues with the tractor that he may

11  discover during inspection.

12      <u>Request For Admission #3</u>  *[Admit that you did not pay wages to Plaintiff for the time*

13  *he spent driving to hotels you designated Plaintiff to stay and the dispatch center where trailers were*

14  *hauled]*

15      Defendant objects to this interrogatory on the ground that the underlying Request for

16  Admission is vague and ambiguous with respect to the terms "wages," "time spent," "hotels," "stay,"

17  and "dispatch center" which are not defined. Defendant further objects that the underlying Request

18  for Admission is overbroad as to time, and therefore, is not reasonably calculated to lead to the

19  discovery of admissible evidence.

20      Without waiving the foregoing objections, Defendant responds that Plaintiff's

21  compensation structure provides that he may receive wages for time spent waiting for transportation

22  to a designated hotel. Defendant admits that Plaintiff is off-the-clock once the actual travel to the

23  hotel begins, and for any travel back to the dispatch center.

24      <u>Request For Admission #4</u>  *[Admit that for each day PLAINTIFF worked for YOU as*

25  *a DRIVER, YOU did not provide PLAINTIFF with a paid, duty-free, uninterrupted rest period of at*

26  *least 10 minutes for every four hours of work, or major fraction thereof.]*

27      Defendant objects to this interrogatory on the ground that the underlying Request for

28  Admission is vague and ambiguous with respect to the terms "provide," "duty-free,"

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

"uninterrupted," "rest period," and "work" which are not defined. Defendant further objects that the underlying Request for Admission is overbroad as to time in so far as by using the phrase "DRIVER", Plaintiff seeks information for claims already released and/or settled by Plaintiff, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving the foregoing objections, Defendant responds that consistent with its policy and practice, Defendant authorized and permitted Plaintiff to take rest breaks in accordance with California law.

Defendant objects to the remainder of this interrogatory on the grounds that it includes discrete subparts, which exceed the limit of 25 interrogatories as permitted by FRCP 33.

**INTERROGATORY NO. 24:**

For each of YOUR response to a Request for Admission served with these interrogatories that is not an unqualified admission, state the names of all witnesses who ha[ve] knowledge of the facts that supports YOUR response.

**RESPONSE TO INTERROGATORY NO. 24:**

Defendant objects to this interrogatory on the grounds that it includes discrete subparts, which exceed the limit of 25 interrogatories as permitted by FRCP 33.

Dated: January 13, 2014

By: _____
MICHELLE B. HEVERLY
SOPHIA BEHNIA
LITTLER MENDELSON, P.C.
Attorneys for Defendant
FEDEX FREIGHT, INC.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

CASE NO. 1:13-CV-01137-LJO-BAM
DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S INTERROGATORIES, SET ONE

1                        <u>VERIFICATION</u>

2            I, Katyna Naylor, declare:

3            I am the Field – Human Resources Manager with FedEx Freight, Inc., and in that

4    capacity, I am authorized to make this verification on behalf of FedEx Freight, Inc.

5            I have read the foregoing DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO

6    PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE and am familiar with the contents

7    thereof.  Based upon information either known or provided to me, and based upon such information

8    as is available to FedEx Freight, Inc., I am informed and believe and on that ground allege that the

9    matters stated in it are true and accurate.

10           I declare under penalty of perjury under the laws of the State of California that the

11   foregoing is true and correct.

12           Executed at _Sacramento_ , California on this _13_ day of January, 2014.

13

14                              _Katyna Naylor_
                                      Katyna Naylor

15
Firmwide:124738259.2 057116.1015
16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

CASE NO.  1:13-CV-01137-LJO-BAM

DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S INTERROGATORIES, SET ONE

# Exhibit I

KEITH A. JACOBY, Bar No. 150233
kjacoby@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107
Telephone: 310.553.0308
Fax No.: 310.553.5583

MICHELLE B. HEVERLY, Bar No. 178660
meverly@littler.com
SOPHIA BEHNIA, Bar No. 289318
sbehnia@littler.com
LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
San Francisco, CA 94108.2693
Telephone: 415.433.1940
Fax No.: 415.399.8490

KARIN M. COGBILL, Bar No. 244606
kcogbill@littler.com
LITTLER MENDELSON, P.C.
50 W. San Fernando Street, 15th Floor
San Jose, CA 95113.2303
Telephone: 408.998.4150
Fax No.: 408.288.5686

MIREYA A.R. LLAURADO, Bar No. 194882
mallaurado@fedex.com
FEDEX FREIGHT, INC.
3425 Victor Street
Santa Clara, CA 95054
Telephone: 408.654.3186
Facsimile: 408.654.3297

Attorneys for Defendant
FEDEX FREIGHT, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY D. TAYLOR, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>FEDEX FREIGHT, INC., an Arkansas Corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 1:13-cv-01137-LJO-BAM<br><br>**DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS, SET ONE** |

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant FEDEX FREIGHT, INC. ("Defendant") responds to Plaintiff ROY D. TAYLOR's ("Plaintiff") Request for Admissions, Set One as follows:

## PRELIMINARY STATEMENT

Defendant has not completed its investigation relating to this action, has not completed discovery in this action, and has not completed preparation for trial. The following responses are based on Defendant's knowledge, information and belief at this time, and Defendant reserves the right to amend or supplement its responses, including objections, or to provide any further evidence in response to Plaintiffs' Request for Admissions at any time.

## GENERAL OBJECTIONS

1.     Defendant objects to each and every admission to the extent it seeks to discover information protected by the work product doctrine or attorney-client privilege.

2.     Defendant objects to each and every admission to the extent that it seeks information that is neither relevant to the matters at issue in this case nor reasonably calculated to lead to the discovery of admissible evidence.

3.     Defendant objects to each and every admission to the extent it seeks to impose obligations beyond the requirements of the Federal Rules of Civil Procedure.

4.     Defendant reserves the right to rely upon additional information uncovered in its continuing investigation of this matter, and to supplement its discovery responses accordingly.

5.     Defendant denies each and every request for admission, except to the extent otherwise provided for herein.

## RESPONSES TO REQUEST FOR ADMISSIONS

### REQUEST FOR ADMISSION NO. 1:

Admit that PLAINTIFF was employed by YOU as a DRIVER at some time between June 13, 2009 and the present.

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Defendant objects to this request on the ground that it is vague and ambiguous with

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

2     CASE NO. 1:13-CV-01137-LJO-BAM
DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S
REQUEST FOR ADMISSIONS, SET ONE

respect to the term "some time" which is not defined.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Admitted.

**REQUEST FOR ADMISSION NO. 2:**

Admit that YOU did not pay wages to PLAINTIFF, other than the piece rate compensation, for the time PLAINTIFF spent conducting pre and post-trip inspections of YOUR trucks.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Defendant objects to this request on the ground that it is vague and ambiguous with respect to the terms "wages," "time spent," "piece rate compensation," "pre and post-trip inspections," and "trucks" which are not defined. Defendant objects that the request is overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU did not pay wages to PLAINTIFF for the time he spent driving to and from hotels YOU designated PLAINTIFF to stay and the dispatch center where trailers were hauled.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Defendant objects to this request on the ground that it is vague and ambiguous with respect to the terms "wages," "time spent," "hotels," "stay," and "dispatch center" which are not defined. Defendant objects that the request is overbroad as to time, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 4:**

Admit that for each day PLAINTIFF worked for YOU as a DRIVER, YOU did not provide PLAINTIFF with a paid, duty-free, uninterrupted rest period of at least 10 minutes for every

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1    four hours of work, or major fraction thereof.

2    **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

3        Defendant objects to this request on the ground that it is vague with respect to the

4 terms "provide," "duty-free," "uninterrupted," "rest period," and "work" which are not defined.

5 Defendant objects that the request is overbroad as to time in so far as by using the phrase

6 "DRIVER", Plaintiff seeks information for claims already released and/or settled by Plaintiff, and

7 therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

8        Subject to and without waiving the foregoing objections, Defendant responds as

9 follows: Denied.

10    **REQUEST FOR ADMISSION NO. 5:**

11        Admit that YOU did not provide PLAINTIFF with a duty-free meal period of at least

12 30 minutes prior to the end of the 5th hour of work each day PLAINTIFF worked for YOU as a

13 DRIVER.

14    **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

15        Defendant objects to this request on the ground that it is vague with respect to the

16 terms "provide," "duty-free," "uninterrupted," "meal period," and "work" which are not defined.

17 Defendant objects that the request is overbroad as to time in so far as by using the phrase

18 "DRIVER", Plaintiff seeks information for claims already released and/or settled by Plaintiff, and

19 therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

20        Subject to and without waiving the foregoing objections, Defendant responds as

21 follows: Denied.

22    **REQUEST FOR ADMISSION NO. 6:**

23        Admit that YOU did not pay wages to DRIVERS, separate and apart from piece rate

24 compensation, for the time DRIVERS spent conducting pre and post-trip inspections of YOUR

25 trucks.

26    **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

27        Defendant objects to this request on the ground that it is vague with respect to the

28 terms "wages," "piece rate compensation," "time spent," "pre and post-trip inspections," and

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

4    CASE NO. 1:13-CV-01137-LJO-BAM
DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S
REQUEST FOR ADMISSIONS, SET ONE

"trucks" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 7:**

Admit that YOU did not pay wages to DRIVERS, for the time DRIVERS spent driving to and from hotels YOU designated DRIVERS to stay and the dispatch center where trailers were hauled.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Defendant objects to this request on the ground that it is vague and ambiguous with respect to the terms "wages," "time spent," "hotels," "stay," "dispatch center," and "trailers" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 8:**

Admit that YOU did not provide DRIVERS with duty-free meal periods of at least 30 minutes prior to the end of DRIVERS' 5th hour of work.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Defendant objects to this request on the ground that it is vague with respect to the terms "duty-free," "meal periods," and "work" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

CASE NO. 1:13-CV-01137-LJO-BAM
DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S
REQUEST FOR ADMISSIONS, SET ONE

1       Subject to and without waiving the foregoing objections, Defendant responds as

2  follows: Denied.

3  **REQUEST FOR ADMISSION NO. 9**:

4       Admit that YOUR compensation system for DRIVERS did not compensate

5  DRIVERS separately for any missed meal periods.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 9**:

7       Defendant objects to this request on the ground that it is vague with respect to the

8  terms "compensation system," "compensate," and "missed meal periods" which are not defined.

9  Defendant objects that the request is overbroad as to time in so far as by using the phrase

10  "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff

11  and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of

12  admissible evidence.

13       Subject to and without waiving the foregoing objections, Defendant responds as

14  follows: Denied.

15  **REQUEST FOR ADMISSION NO. 10**:

16       Admit that YOUR compensation system for DRIVERS did not provide a means by

17  which DRIVERS could verify whether DRIVERS were paid for missed meal periods.

18  **RESPONSE TO REQUEST FOR ADMISSION NO. 10**:

19       Defendant objects to this request on the ground that it is vague with respect to the

20  terms "compensation system," "provide," "verify," "paid," and "missed meal periods" which are not

21  defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase

22  "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff

23  and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of

24  admissible evidence.

25       Subject to and without waiving the foregoing objections, Defendant responds as

26  follows: Denied.

27  **REQUEST FOR ADMISSION NO. 11**:

28       Admit that for each day DRIVERS worked for YOU, YOU did not provide

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
.es Angeles, CA 90067.3107
310.553.0308

DRIVERS with a paid, duty-free, uninterrupted rest period of at least 10 minutes for every four hours of work, or major fraction thereof.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11**:

Defendant objects to this request on the ground that it is vague with respect to the terms "paid," "duty-free," "rest period," and "work" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 12**:

Admit that YOUR compensation system for DRIVERS did not compensate DRIVERS separately for missed rest periods.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12**:

Defendant objects to this request on the ground that it is vague with respect to the terms "compensation system," "compensate," and "missed rest periods" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 13**:

Admit that YOUR compensation system for DRIVERS did not provide a means by which DRIVERS could verify whether DRIVERS were paid for missed rest periods.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13**:

Defendant objects to this request on the ground that it is vague and ambiguous with respect to the terms "compensation system," "provide," "verify," "paid," and "missed rest periods"

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

CASE NO. 1:13-CV-01137-LJO-BAM
DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S
REQUEST FOR ADMISSIONS, SET ONE

which are not defined.  Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 14:**

Admit that YOU can IDENTIFY DRIVERS.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Defendant objects to this request on the ground that it is vague and ambiguous with respect to the term "can" which is not defined.  Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Admitted.

**REQUEST FOR ADMISSION NO. 15:**

Admit YOU employed over 100 DRIVERS.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Defendant objects to this request on the ground that it is vague and ambiguous with respect to the terms "employed" and "over" which are not defined.  Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Admitted.

**REQUEST FOR ADMISSION NO. 16:**

Admit that the compensation YOU pay DRIVERS for rest break time is included in

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

DRIVERS' trip/mileage pay.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Defendant objects to this request on the ground that it is vague and ambiguous with respect to the terms "compensation," "rest break time," "included" and "trip/mileage pay" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Admitted.

**REQUEST FOR ADMISSION NO. 17:**

Admit that other than trip pay, YOU do not pay DRIVERS for rest break premiums.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Defendant objects to this request on the ground that it is vague and ambiguous with respect to the terms "trip pay," "pay," and "rest break premiums" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 18:**

Admit that the compensation YOU pay DRIVERS for pre-trip vehicle inspections is included in DRIVERS' trip/mileage pay.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Defendant objects to this request on the ground that it is vague with respect to the terms "compensation," "pay," "pre-trip vehicle inspections," and "trip/mileage pay" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

CASE NO. 1:13-CV-01137-LJO-BAM
DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S
REQUEST FOR ADMISSIONS, SET ONE

1  and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of
2  admissible evidence.

3         Subject to and without waiving the foregoing objections, Defendant responds as
4  follows: Denied.

5  **REQUEST FOR ADMISSION NO. 19**:

6         Admit that other than trip pay, YOU do not pay DRIVERS for the time they spent on
7  pre-trip vehicle inspections.

8  **RESPONSE TO REQUEST FOR ADMISSION NO. 19**:

9         Defendant objects to this request on the ground that it is vague with respect to the
10 terms "trip pay," "pay," "time spent" and "pre-trip vehicle inspections" which are not defined.
11 Defendant objects that the request is overbroad as to time in so far as by using the phrase
12 "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff
13 and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of
14 admissible evidence.

15        Subject to and without waiving the foregoing objections, Defendant responds as
16 follows: Denied.

17 **REQUEST FOR ADMISSION NO. 20**:

18        Admit that the compensation YOU pay DRIVERS for routine maintenance
19 inspections is included in DRIVERS' trip/mileage pay.

20 **RESPONSE TO REQUEST FOR ADMISSION NO. 20**:

21        Defendant objects to this request on the ground that it is vague with respect to the
22 terms "compensation," "pay," and "routine maintenance inspections" which are not defined.
23 Defendant objects that the request is overbroad as to time in so far as by using the phrase
24 "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff
25 and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of
26 admissible evidence.

27        Subject to and without waiving the foregoing objections, Defendant responds as
28 follows: Denied.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

10     CASE NO. 1:13-CV-01137-LJO-BAM
DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S
REQUEST FOR ADMISSIONS, SET ONE

1    **REQUEST FOR ADMISSION NO. 21:**

2           Admit that other than trip pay, YOU do not pay DRIVERS for the time they spent on

3    routine maintenance inspections.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

5           Defendant objects to this request on the ground that it is vague with respect to the

6    terms "trip pay," "pay," "time spent," and "routine maintenance inspections" which are not defined.

7    Defendant objects that the request is overbroad as to time in so far as by using the phrase

8    "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff

9    and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of

10   admissible evidence.

11          Subject to and without waiving the foregoing objections, Defendant responds as

12   follows: Denied.

13   **REQUEST FOR ADMISSION NO. 22:**

14          Admit that the compensation YOU pay DRIVERS for en route vehicle inspections is

15   included in DRIVERS' trip/mileage pay.

16   **RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

17          Defendant objects to this request on the ground that it is vague with respect to the

18   terms "compensation," "pay," "time spent" and "routine maintenance inspections" which are not

19   defined.

20          Subject to and without waiving the foregoing objections, Defendant responds as

21   follows: Denied.

22   **REQUEST FOR ADMISSION NO. 23:**

23          Admit that other than trip pay, YOU do not pay DRIVERS for the time they spent on

24   en route vehicle inspections.

25   **RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

26          Defendant objects to this request on the ground that it is vague with respect to the

27   terms "trip pay," "pay," "time spent," and "en route vehicle inspections" which are not defined.

28   Defendant objects that the request is overbroad as to time in so far as by using the phrase

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

CASE NO. 1:13-CV-01137-LJO-BAM
DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S
REQUEST FOR ADMISSIONS, SET ONE

"DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 24**:

Admit that the compensation YOU pay DRIVERS for routine DOT safety inspections is included in DRIVERS' trip/mileage pay.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24**:

Defendant objects to this request on the ground that it is vague with respect to the terms "compensation," "pay," "routine DOT safety inspections," and "trip/mileage pay" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 25**:

Admit that other than trip pay, YOU do not pay DRIVERS for the time they spent on routine DOT safety inspections.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25**:

Defendant objects to this request on the ground that it is vague with respect to the terms "trip pay," "pay," "time spent," and "routine DOT safety inspections" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1  follows: Denied.

2  <u>**REQUEST FOR ADMISSION NO. 26**</u>:

3         Admit that the compensation YOU pay DRIVERS for post-trip vehicle inspections is

4  included in DRIVERS' trip/mileage pay.

5  <u>**RESPONSE TO REQUEST FOR ADMISSION NO. 26**</u>:

6         Defendant objects to this request on the ground that it is vague with respect to the

7  terms "compensation," "pay," "post-trip vehicle inspections," and "trip/mileage pay" which are not

8  defined.  Defendant objects that the request is overbroad as to time in so far as by using the phrase

9  "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff

10  and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of

11  admissible evidence.

12         Subject to and without waiving the foregoing objections, Defendant responds as

13  follows: Denied.

14  <u>**REQUEST FOR ADMISSION NO. 27**</u>:

15         Admit that other than trip pay, YOU do not pay DRIVERS for the time they spent on

16  post-trip vehicle inspections.

17  <u>**RESPONSE TO REQUEST FOR ADMISSION NO. 27**</u>:

18         Defendant objects to this request on the ground that it is vague with respect to the

19  terms "trip pay," "pay," "time spent," and "post-trip vehicle inspections" which are not defined.

20  Defendant objects that the request is overbroad as to time in so far as by using the phrase

21  "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff

22  and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of

23  admissible evidence.

24         Subject to and without waiving the foregoing objections, Defendant responds as

25  follows: Denied.

26  <u>**REQUEST FOR ADMISSION NO. 28**</u>:

27         Admit that the compensation YOU pay DRIVERS for all trip related paperwork and

28  documents is included in DRIVERS' trip/mileage pay.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
..os Angeles, CA 50067.3107
310.553.0308

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Defendant objects to this request on the ground that it is vague with respect to the terms "compensation," "pay," "trip related paperwork and documents," included," and "trip/mileage pay" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 29:**

Admit that other than trip pay, YOU do not pay DRIVERS for the time they spent on all trip related paperwork and documents.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Defendant objects to this request on the ground that it is vague with respect to the terms "trip pay," "pay," "time spent," and "trip related paperwork and documents" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 30:**

Admit that the compensation YOU pay DRIVERS for limited delay intervals that are associated with a trip (i.e., show up to scheduled depart time included at origin or one 30 minute interval at a turn, meet or via point), is included in DRIVERS' trip/mileage pay.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Defendant objects to this request on the ground that it is vague with respect to the terms "compensation," "limited delay intervals" "turn, meet or via point," "trip/mileage pay" which

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 31:**

Admit that other than trip pay, YOU do not pay DRIVERS for the time they spent on limited delay intervals that are associated with a trip (i.e., show up to a scheduled depart time included at origin or one 30 minute interval at a turn, meet or via point).

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Defendant objects to this request on the ground that it is vague with respect to the terms "trip pay," "pay," "time spent," "limited delay intervals" and "turn, meet or via point" which are not defined. Defendant objects that the request is overbroad as to time in so far as by using the phrase "DRIVERS", Plaintiff seeks information for claims already released and/or settled by Plaintiff and/or putative class members, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Denied.

Dated: January 13, 2014

By: _____
MICHELLE B. HEVERLY
SOPHIA BEHNIA
LITTLER MENDELSON, P.C.
Attorneys for Defendant
FEDEX FREIGHT, INC.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>VERIFICATION</u>

I, Katyna Naylor, declare:

I am the Field ~ Human Resources Manager with FedEx Freight, Inc., and in that capacity, I am authorized to make this verification on behalf of FedEx Freight, Inc.

I have read the foregoing DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S REQUESTS FOR ADMISSION, SET ONE and am familiar with the contents thereof. Based upon information either known or provided to me, and based upon such information as is available to FedEx Freight, Inc., I am informed and believe and on that ground allege that the matters stated in it are true and accurate.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at *Sacramento*, California on this *13* day of January, 2014.

_Katyna Naylor_
Katyna Naylor

Firmwide:124689282.2 057116.1015

CASE NO. 1:13-CV-01137-LJO-BAM
DEFENDANT FEDEX FREIGHT, INC.'S RESPONSE TO PLAINTIFF'S
REQUEST FOR ADMISSIONS, SET ONE

LITTLER MENDELSON, P.C.
2048 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

01/13/2014   11:19PM  (GMT+00:00)