1

2

3

4

5

6              UNITED STATES DISTRICT COURT

7          FOR THE EASTERN DISTRICT OF CALIFORNIA

8   ROY D. TAYLOR, ON BEHALF OF          Case No.: No. 13-cv-1137-LJO-BAM
    HIMSELF AND ALL OTHERS SIMILARLY
9   SITUATED,                            **FINDINGS AND RECOMMENDATIONS
                                         ON PLAINTIFF'S MOTION FOR CLASS
10              Plaintiff,               CERTIFICATION**

11
         vs.
12
13  FEDEX FREIGHT, INC., an Arkansas
    Corporation; and DOES 1 through 10, inclusive.
14
15              Defendants.

16

17

18                      **I.      INTRODUCTION**

19         In this action for violations of the California Labor Code, Plaintiff Roy D. Taylor

20  ("Plaintiff or Taylor") moves for class certification pursuant to Fed. R. Civ. P. 23(a) and

21  23(b)(3).   (Doc. 17).   Taylor, a former truck driver for Defendant Fedex Freight, Inc.

22  ("Defendant" or "Fedex") moves to certify a class of current and former line-haul drivers based

23  on FedEx's alleged failure to pay adequate wages. (Doc. 17). The Court heard oral arguments

24  on May 1, 2015.  (Doc. 33).  Counsel R. Duane Westrup appeared in person for Plaintiff Roy

25  Taylor.  Counsel Keith Jacoby, Sophia Behnia, and Mireya Llaurado appeared in person for

26  Defendant FedEx Freight, Inc.  Having carefully considered the parties' submissions, oral

27  arguments, and the entire record in this case, the Court recommends Plaintiff's Motion for Class

28  Certification be GRANTED.

                                         1

## II.     BACKGROUND

**A.     Factual and Procedural Background**

FedEx, a leading transportation company, generally employs truck drivers, known as "line-haul drivers" to transport freight nationwide through a network of service centers. *See* Declaration of Jeffrey Scroggins ("Scroggins Decl."), Attach. 5 at ¶ 3, (Doc. 24-5). Plaintiff Roy Taylor was formerly employed by FedEx as a line-haul driver to transport tractor trailers to and from FedEx's service centers throughout the State of California and surrounding states. In Plaintiff's complaint, he alleges that during his employment, FedEx violated a number of California labor laws including failure to pay minimum wage, provide rest breaks, and provide accurate and timely wage statements.

Plaintiff initially filed this action, individually and on behalf of all others similarly situated, in the Kings County Superior Court. (Plaintiff's Complaint "Compl.", Doc. 1, Attach. 1). FedEx removed the case to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) on July 19, 2013. (Doc. 1). Plaintiff's class action complaint alleges that FedEx: (1) failed to pay wages in violation of Labor Code §§510, 1194(a), 1174 and 1197 (minimum wage); (2) failed to provide meal and rest periods in violation of Labor Code §§226.7 and 512 (meal and rest periods);[1] (3) failed to timely pay wages in violation of Labor Code §§203-204 (waiting time penalties); (4) failed to provide accurate itemized statements in violation of Labor Code §226 (accurate wage statement); (5) violated Business and Professions Code §17200 *et seq*. with unlawful, unfair, and fraudulent business practices; and (6) violated Labor Code §2698 *et seq*. (PAGA). Compl. at pg. 20, Ex 1. The Court now considers Plaintiff's Motion for Class Certification.[2]

---

[1]      At oral argument, Plaintiff conceded that he no longer moves to certify a meal period claim.

[2]      Both Plaintiff and Defendant request that the Court take judicial notice of numerous documents and attached exhibits in connection with the briefing on the motion for class certification. (Request For Judicial Notice in Support of Motion ("R.F.J.N."), Doc. 17 at Exhs. 7-8); (Request For Judicial Notice in Support of Opposition, Doc. 24 at Exhs. 6-10; (Request For Judicial Notice in Support of Reply, Doc. 27 at Exhs. 2-4). Plaintiff asks the Court to take judicial notice of certain documents and judicial opinions filed publicly in other proceedings. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of documents filed in other courts). Defendant asks the Court to take judicial notice of judicial opinions and legislative and statutory documents that are publicly available on government websites. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information on a publicly available government website). The Court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Courts also may take judicial notice of their own records," *citing United States v. Author Services*, 804 F.2d 1520, 1523 (9th Cir. 1986)). Accordingly, the Court GRANTS the parties' unopposed requests for judicial notice.

**B.      Proposed Classes**

Plaintiff moves to certify the following classes:

All persons who worked for Defendant as line-haul drivers from January 28, 2012 through the date of trial.

**Labor Code § 203 Subclass (Waiting-Time Penalties Sub-Class):**

All Class Members who have left their employment with Defendant from January 28, 2012, through the date of trial.

(Doc. 17 at 2).

**C.      The FedEx Compensation System**

Generally, FedEx combines three modes of pay to compensate its line-haul drivers consisting of: 1) mileage-based piece-rate compensation ("mileage pay"),[3] 2) fixed rate compensation, and 3) hourly compensation.  FedEx pays line-haul drivers a combination of "mileage pay," fixed rate compensation, and hourly pay depending on the type of work performed by the driver. The basic task performed by line-haul drivers is the completion of a trip—transporting freight from point to point.  (Scroggins Decl. ¶ 10).  Plaintiff alleges line-haul drivers' mileage pay is then based upon a pre-set mileage determination as calculated based on the number of miles in a trip.  FedEx also pays drivers a fixed rate of compensation for certain work performed related to a trip, such as loading and unloading freight or fueling a tractor. (Scroggins Decl. ¶ 14).  Line-haul drivers may also receive hourly compensation for certain activities performed during or after any given trip or for delays that prevent the line-haul driver from earning mileage pay or fixed rate pay.

**1.      Fedex's Mileage Pay Policy**

Plaintiff's complaint primarily challenges FedEx's mileage pay system.  FedEx's mileage pay is based upon the completion of predetermined mileages between service centers as calculated by a computer software program. (Deposition of Jeffrey Scroggins "Scroggins Depo.," 17:25-21:10, 49:13-24, Doc. 17-5, Ex. D).  To do this, FedEx's computer software program calculates the distance between the service centers for each trip. The amount each driver receives per mile is based on his or her pay tier. (Scroggins Depo., 17:25-21:10, 49:13-

---

[3] FedEx also refers to mileage pay as "trip pay." For consistency, the Court will refer to this method of payment as mileage pay.

24).  Plaintiff alleges, and FedEx does not dispute, that during the course of every mileage based trip, line-haul drivers must perform certain non-driving activities ("NDA") including rest breaks, pre-and-post-trip inspections, Department of Transportation ("DOT") safety inspections, placarding, and all trip-related paperwork in order to complete a trip. Plaintiff cites documentary evidence (written policy and corporate testimony) that FedEx's mileage pay policy is intended to compensate everything associated with a mileage trip including all NDA's. FedEx Road Driver Manual, Ex. A, Doc. 24. Plaintiff argues that because drivers are compensated solely based upon the mileage they drive, the mileage-based compensation system does not separately account for non-driving activities performed during the course of a trip including: (1) pre-and-post-trip inspections, (2) rest breaks; (3) trip related paperwork/placarding; and (4) limited delay intervals as required by California law. The Court explains a line-haul driver's non-driving activities in more detail as follows:

<u>Pre-and-Post-Trip Inspections of the Vehicle</u>

During every mileage based trip, line-haul drivers must review a Safety Defects Checklist of the Vehicle Inspection book.  (Doc. 17 at 15).  Drivers must then detail any visible damage to the equipment and check the previous write up report to see if any previous defects were authorized.  If the driver finds defects that have not been authorized, the driver may be required to perform follow-up with appropriate management to determine the status of the defect. Line-haul drivers must also complete a post-trip report indicating that all critical items have been reviewed. Plaintiff cites FedEx estimations that it takes line-haul drivers approximately twenty minutes to perform pre-and-post trip inspections per mileage trip. (Deposition of Jon Barrett, ("Barrett Depo."), 16:4-17:13, 20:18-21:17, 23:22-24:7, 26:19-25, 45:22-46:18, 48:4-49:15, 63:12-22, 64:14-17, Doc. 17-5, Exh. F).

<u>Rest Breaks</u>

FedEx policy states: "all employees are entitled to one 15-minute paid break per 4 hours worked or major fraction thereof." (Declaration of Katyna Naylor ("Naylor Decl.") ¶ 5; Doc. 24-4, Exh. A). Plaintiff alleges that while rest breaks are included in the drivers' mileage pay, they are not separately compensated. FedEx agrees that its rest breaks are not separately compensated, but instead argues that short rest breaks should not be separately compensated.

4

FedEx further explains that its policy outlines when and where desired breaks should be taken, and specifically instructs employees not to perform any work during a rest break. *Id.* FedEx policy also provides that when an employee is unable to take a legally compliant desired rest break, the Company will pay a one hour premium (called a "California Premium" or "CAP"). *Id.*

Trip Related Paperwork and Placarding

Before a mileage based trip may commence, drivers must insure that the trailer has the appropriate placards to alert others to the type of material transported.  (Declaration of Jon Barrett, ("Barrett Decl."), at ¶ 6, Doc. 24-3).  Drivers must also complete DOT logs and records of time worked which indicate whether the equipment is roadworthy.  These logs are submitted daily and additionally whenever a driver changes equipment.  (Barrett Depo. 51:13-52:18, 59-12-60:31).

Limited Delay Time Intervals

Plaintiff also contends that FedEx fails to compensate for delays that stop the forward progress of driving.  Plaintiff alleges that although FedEx uniformly anticipates a 30 minute drive delay, that delay is included in the mileage pay and is not separately compensated.  FedEx, however, provides additional compensation to line-haul drivers at an hourly rate when the drive delay falls outside of the scope of "what is normally expected when one delivers freight."  (Doc. 24 at 8).

**2.    Fixed Pay for Certain Tasks**

In addition to mileage pay, FedEx's compensation plan compensates line-haul drivers separately from, and in addition to, mileage pay for activities that periodically, but do not always, happen with a predictable frequency. (Scroggins Dec. ¶ 14).  Line-haul drivers receive pay at a fixed rate for these tasks that are not associated with mileage, including: fueling, hooking and unhooking the trailer ("hook and drop").  For example, a line-haul driver is paid to fuel his tractor at a fixed rate equal to 15 minutes of the hourly rate of pay, no matter how long the fueling takes. *Id.*  If a driver "drops" a load of freight and "hooks" a new load to the tractor, the driver receives 30 minutes drop and hook pay. When these tasks are separated by activities such as dock work or a meal break, drivers are compensated for a total of 60 minutes of pay.  *Id.*

5

### 3.     Hourly Compensation

Line-haul drivers also receive hourly pay for certain non-mileage or fixed rate activities including dock work and unusual delays. (Scroggins Dec. ¶ 15). If a driver must perform certain non-mileage activities, the driver clocks-in to Kronos, an electronic time keeping system, and receives pay on an hourly basis for that time. *Id.* FedEx also pays line-haul drivers on an hourly basis for other job tasks that prevent them from earning mileage-based pay, such as attending meetings, hostling trailers, completing DOT required medical exams or drug tests, participating in driver education or shuttling freight to the rail yard (known as drayage). (Scroggins Decl. ¶ 15). Further, FedEx also compensates drivers separately by the hour for significant delay time (over 30 minutes) due to road closures, weather, breakdowns or any unforeseen event, line drivers are paid. (Scroggins Decl. ¶ 17).

### D.     Plaintiff's Legal Claims

The crux of Plaintiff's complaint, as well as his Motion for Class certification, challenges FedEx's mileage pay practices under the IWC Wage Order 9-2001 (wage regulations for the transportation industry), and Labor Code §§ 1194, 1197, 226.7 (minimum wage and rest break laws).  These unpaid wage and rest period claims are Plaintiff's first and second claims for relief.  Specifically, Plaintiff alleges that FedEx consistently administers a compensation policy that fails to separately compensate line-haul drivers for certain non-driving activities ("NDA") performed in relation to a mileage trip, including: pre-and post-trip vehicle inspection time, rest breaks, trip related paperwork, placarding, and the first thirty-minutes of wait time over the course of a trip in violation of California law.  Plaintiff explains that FedEx improperly treats this time as being built into the mileage pay piece-rate in violation of IWC Wage Order 9-2001.  Plaintiff argues that these NDA's must always be performed in order to transport freight and therefore they must be paid for separately, outside of the piece-rate. *See* 49 C.F.R. §§ 383.113, 383.135.

In addition to the unpaid wage and rest period claims, Plaintiff has pled claims for waiting time penalties pursuant to Labor Code §§203-204 and failure to provide accurate wage statements pursuant to Labor Code § 226.  (Doc.1, Ex. A at 18-20).  These claims, however, are entirely dependent on Plaintiff's ability to establish an unpaid wage or rest period claims.

Similarly, Plaintiff's claims for unlawful business practices under California Business and Professions Code § 17200 (the "Unfair Competition Law" or "UCL"), and penalties under the California Private Attorney General Act, Labor Code § 2698 *et seq*. are predicated on Plaintiff's ability to establish liability for his unpaid wage and rest period claims. Accordingly, although the Court focuses its Rule 23 analysis on the unpaid wage and rest period claims, the analysis applies with equal force to Plaintiff's remaining claims.

## III.   DISCUSSION

### A.   Legal Standard Under Federal Rule of Civil Procedure 23

Class certification of Plaintiff's claims is governed by Federal Rule of Civil Procedure 23. Whether or not to certify a class is within the discretion of the Court. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL–CIO CLC v. ConocoPhillips Co*., 593 F.3d 802, 807 (9th Cir. 2010).

A class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).   These requirements are "commonly referred to as the numerosity, commonality, typicality, and adequacy requirements." *Norris–Wilson v. Delta–T Group, Inc*., 270 F.R.D. 596, 601 (S.D.Cal. 2010). Plaintiff bears the burden of establishing that all four requirements of Rule 23(a) are met. *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1186 (9th Cir. 2001).

In addition to the requirements imposed by Rule 23(a), Plaintiff bears the burden of demonstrating that the class is maintainable pursuant to Rule 23(b).   *Narouz v. Charter Commc'ns, LLC,* 591 F.3d 1261, 1266 (9th Cir. 2010).   In this case, Plaintiff seeks certification of the Class under Rule 23(b)(3). To certify a class under Rule 23(b)(3), Plaintiff must demonstrate: (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" ("Predominance") and (2) a class action is "superior to other available methods for the fair and efficient adjudication of the controversy" ("Superiority"). Fed. R. Civ. P. 23(b)(3).

Rule 23 is more than a pleading standard.  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes, - - U.S. - -*, 131 S. Ct. 2541 at 2552 (2011) ("*Dukes*") (emphasis in original). "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *General Telephone Co. Of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). When considering a motion for class certification, the Court must conduct a "rigorous analysis" to determine "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes,* 131 S.Ct. at 2551-2; *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 980 (9th Cir. 2011).

### 1.     Rule 23(a) Requirements

#### i.     Numerosity

Rule 23(a)(1) requires the members of a proposed class to be so numerous that joinder of all of the class members would be impracticable. Fed. R. Civ. P. 23(a). "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience in joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir.1964) (quoting *Advertising Specialty Nat. Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir.1956)). Additionally, the exact size of the class need not be known so long as "general knowledge and common sense indicate that it is large." *Perez-Funez v. Dist. Dir.,* 611 F. Supp. 990, 995 (C.D. Cal. 1984).

Defendant does not dispute that Plaintiff has met the numerosity requirement, and the Court finds this requirement is met. While the exact size is unknown, the evidence before the Court demonstrates that there were at least 100 line-haul drivers in California during the class period. FedEx also employed 609 line-haul drivers in California during part of the class period from June 13, 2012 to June 13, 2013.  (Doc. 17 at 15).  Thus, the Court finds that the numerosity requirement is satisfied here.

#### ii.     Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class."  Historically, the requirements of Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact

8

and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).   Indeed, "[e]ven a single [common] question" will satisfy the Rule 23(a)(2) inquiry.  *Dukes,* 131 S.Ct at 2556 (internal citation omitted).

The raising of any common question, however, does not suffice. *See Ellis v. Costco,* 657 F.3d at 981*; Dukes,* 131 S.Ct. at 2551-52 ("[a]ny competently class complaint literally raises common 'questions.'") Rather, class representatives must demonstrate that common points of facts and law will drive or resolve the litigation.  *Dukes,* 131 S. Ct at 2552 ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted). To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S.Ct. at 2551.

Plaintiff contends that FedEx has a uniform compensation policy which does not separately reimburse class members for non-driving activities performed during time worked in violation of the Labor Code and IWC Wage Order 9-2001. Plaintiff argues that the legality of this uniform compensation policy presents common facts and questions of law because the compensation is based on a standardized and uniform policy. Plaintiff argues that the common questions are:

    a.    Whether Plaintiff and the classes were subject to Defendant's uniform compensation plan;

    b.    Whether Plaintiff and the classes were separately compensated for all Non-Driving Activities;

    c.    Whether Defendant's mileage pay plan fails to separately compensate for all time worked including Non-Driving Activities, and whether such failure violates Labor Code §§1194, 1197, 2699, IWC Wage Order 9-2001, and the UCL (Bus. & Prof. Code §§17200 *et. seq.*);

    d.    Whether Defendant's failure to pay all wages owed to line-haul drivers whose employment with Defendant has terminated violates Labor Code §§201-203; and

    e.    Whether Defendant's failure to maintain and provide accurate itemized wage statements and failure to keep accurate payroll records violates Labor Code §§226, 1174.

1   (Doc. 17 at 17). Plaintiff argues these common questions can be evaluated on a class-

2   wide basis.

3        FedEx responds that there are no common questions capable of class-wide resolution.

4   Relying on *Dukes*, FedEx argues that Plaintiff must present more than just "a set of common

5   questions," but must show that there are common answers to issues that will resolve the

6   litigation for the proposed class as a whole. *Dukes*, 131 S.Ct. at 2551; (Doc. 24 at 11).

7   According to FedEx, the dissimilarities among the line-haul drivers prevents "a common

8   contention" that would resolve the entire litigation.  *See Mazza v. Am. Honda Motor Co*., 666

9   F.3d 581, 588 (9th Cir. 2012); (Doc. 24 at 18).

10       While generally, "the fact that an employee challenges a policy common to the class as a

11   whole creates a common question whose answer is apt to drive the resolution of the litigation,"

12   this is not an absolute.  *Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516, 525 (C.D. Cal. 2011).

13   FedEx notes correctly that the Supreme Court articulated in *Dukes* the existence of a common

14   employment or wage policy is not always sufficient to satisfy the commonality requirement. *See*

15   131 S.Ct. at 2557. However, there, the Court held that a company-wide policy that committed

16   discretion over employment decisions to individual store managers did not give rise to common

17   issues of law or fact because plaintiffs had "not identified a common mode of exercising

18   discretion that pervades the entire company." *Id.* at 2554-55. Here, there is no evidence that the

19   mileage based policy at issue in this case was discretionary. To the contrary, FedEx does not

20   dispute the existence of the company-wide policy of mileage pay for non-driving activities.

21   Plaintiff indicates, and FedEx agrees, that FedEx had a uniform policy of paying line-haul

22   drivers for non-driving activities using mileage based compensation, and that policy was applied

23   uniformly.

24       Whether FedEx's mileage pay plan fails to separately compensate for all time worked

25   including NDA, and whether such failure is unlawful under the Labor Code and IWC Wage

26   Order 9-2001, are common questions of law and fact and the answers will drive the resolution of

27   this case. See *Ontiveros v. Zamora*, 2014 U.S. Dist. LEXIS 91964, [2009 WL 425962], at **16-

28   17 (E.D. Cal. July 7, 2014) (finding commonality where Plaintiff was subject to a companywide

    policy of piece-work compensation); *see also, e.g., Stiller v. Costco Wholesale Corp*., 298

F.R.D. 611, 625 (S.D. Cal. Apr. 15, 2014) (holding that whether Costco had a policy of requiring employees to perform unpaid labor after closing, whether that policy was enforced on a company-wide basis, and whether Costco exercised control over employees during that time were common questions); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 627 (S.D. Cal. 2010) *rev'd on other grounds*, 769 F.3d 637 (9th Cir. 2014) (finding commonality when plaintiffs provided evidence that "the relevant policies were common across Defendant's California facilities").

The Court finds that the commonality requirement is satisfied here because Plaintiff challenges uniform policies and systemic practices that apply uniformly to this class of employees. Whether the Defendant's policies and practices comply with California's specific requirements is the type of question that can be answered on a classwide basis. *Dukes*, 131 S. Ct. at 2551; *Dilts*, 267 F.R.D. at 632-33.

### iii. Typicality

In order to meet the typicality requirement, Rule 23(a)(3) requires the claims or defenses of the representative parties be typical of the claims or defenses of the class. The purpose of Rule 23(a)(3) is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992). Claims are "typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* The requirement is satisfied where the named plaintiff has the same or similar injury as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members have been injured by the same course of conduct. *Hanon,* 976 F.2d at 508.

Plaintiff presents a theory that involves FedEx's common practice and policy of denying all class members minimum wage for all hours worked. The named Plaintiff was subject to the policies challenged in the lawsuit, and accordingly, suffered the same injury as a result of the policies. Defendant has not challenged that Plaintiff's claims are typical of the putative class. The Court finds that Plaintiff Taylor has met the typicality requirement.

iv.        **Rule 23(a)(4): Adequacy of Representation**

In opposing class certification, FedEx argues that Taylor harbors a personal grudge against FedEx and his present and former history of litigation renders him an inadequate class representative in violation of the "adequacy" prerequisite of Rule 23(a)(4).   Rule 23(a)(4) provides that the court may certify a class only if "the representative parties will fairly and adequately protect the interests of the class."   This factor requires that (1) the proposed representatives do not have conflicts of interest with the proposed class, and (2) that the representatives and their counsel will vigorously prosecute the action on behalf of the class.[4] *Hanlon,* 159 F.3d at 120.

At his deposition, Taylor testified that he has filed several lawsuits against FedEx and "[he] probably would have filed some more if [he] was still working there."  (Deposition of Roy Taylor ("Taylor Depo.,") at 143:8-13, Doc. 24-1, Exh. A).  FedEx argues that these comments expose Taylor's vested interest in continuing litigation against FedEx, which creates a conflict of interest casting doubt as to whether Taylor will vigorously pursue the interest of the class over his own.  At the hearing, counsel for FedEx further argued that Taylor's currently pending, but unrelated lawsuit, is real-time evidence of Taylor's personal animus against FedEx. *See Hall v. FedEx Freight, Inc.*, 2015 U.S. Dist. LEXIS 16824 [2015 WL 574177] (E.D. Cal. Feb. 10, 2015).   In *Hall*, currently pending on appeal, Roy Taylor and five other named Plaintiffs brought an October 2013 suit against FedEx alleging that the loss of their seniority status with the company was based on fraud and material misrepresentations by FedEx.  *Hall*, 2015 U.S. Dist. LEXIS 16824 at * 1. Citing several cases, FedEx argues that the Court should not find that "a plaintiff motivated by spite, or a grudge, will fairly and adequately protect the interests of the class." *Kamerman v. Ockap Corp.* 112 F.R.D. 195, 197 (S.D.N.Y. 1986); *Parrish v. Nat'l Football League Players Asso'n*, 2008 U.S. Dist. LEXIS 120158 [2008 WL 1925208], *22-26 (N.D. Cal 2008).

---

[4]        FedEx does not challenge the adequacy of Plaintiff's counsel, the law firms of Westrup & Associates and the Labor Law Office, APC. The Court has reviewed the declarations of Plaintiff's counsel and finds that Plaintiff is represented by qualified and competent counsel. Plaintiff's counsel has a wealth of experience in employment class actions.   (Westrup Decl. ¶ 13-15, Doc. 17-3).

1    In *Kamerman*, the court found that the plaintiff, who was the executor of his father's

2    estate, was not qualified to represent the class because his father had borne a grudge against the

3    defendants for at least a decade and had sworn his sons on his deathbed that they would

4    continue the litigation against the defendants. 112 F.R.D. at 197. The court concluded that "it

5    was conceivable that [the plaintiff's] long family history of prosecution of these defendants

6    would override his amenability to negotiating with [the] defendants, although beneficial to the

7    class." *Id.*

8    In *Parrish*, proposed representatives Bernard Paul Parrish and Herbert Anthony

9    Adderley brought breach of fiduciary duty and breach of contract claims against the National

10   Football League Players Association in connection with "group licensing agreements" the

11   Association arranged for retired players to license use of their names, images, and likenesses.

12   *Parrish*, 2008 U.S. Dist. LEXIS 120158 at *8.  Parrish, in his deposition testimony, agreed with

13   the statement that the executive director of the NFLPA, also a defendant, could be compared to

14   "Caesar, Napoleon, Idi Amin, Hitler, Stalin, Milosevic, [and] Saddam." *Id.*  In that same case,

15   Parrish made disparaging comments against African-Americans—particularly disturbing

16   because many of the putative class members that Parrish sought to represent were African-

17   American.   Parrish also announced in writing that he would "never make a deal" with

18   defendants to settle the lawsuit, warning, "I am going to finish this fight no matter how dirty it

19   gets or what it takes or where it goes." *Id.*

20   Defendant's cited cases are distinguishable for several reasons.  First, the extreme level

21   of personal animosity present in *Kamerman* is missing from this case as there is no remotely

22   similar allegation against Taylor here.   *Kamerman*, 112 F.R.D. at 197.   Second, Taylor's

23   deposition comments do not rise to a level sufficient to convince the Court that he is "an unduly

24   antagonistic litigant" against defendant. *Kamerman*, 112 F.R.D. at 197.   Third, his current

25   claims and interests in this litigation are identical to the class and his current and past litigation

26   demonstrates his zealous advocacy on behalf of the class.

27   Further, the Court finds an additional factor which militates against any concern that

28   Plaintiff is improperly motivated by animus towards FedEx.  In a prior suit, Taylor settled a

     factually similar case, the *Taylor I* action.  On June 18, 2007, Plaintiff filed a class action

complaint against FedEx alleging similar unpaid wage claims for certain non-driving activities. (R.F.J.N., Ex. 8).   The court granted Plaintiff's motion for class certification in *Taylor I*, approved Michael Carver as class counsel, and found that Plaintiff Roy D. Taylor was an adequate class representative.   [R.F.J.N., Ex. 8].   Taylor eventually reached a settlement on behalf of the class which released all claims against FedEx through January 27, 2012. (R.F.J.N., Ex. 9). A primary concern in disqualifying the representative in *Kamerman* was the Court's conclusion that "it was conceivable that [the plaintiff's] long family history of prosecution of these defendants would override his amenability to negotiating with [the] defendants, although beneficial to the class."   112 F.R.D. at 197.   That concern is not present in this case.

The *Parrish* case is equally distinguishable. There, the Court noted that Parrish explicitly stated that he would refuse any settlement offer. *Parrish*, 2008 U.S. Dist. LEXIS 120158 at *25. Contrarily, Taylor's prior settlement, approved by the Northern District Court, demonstrates that Taylor lacks a vendetta against Defendant that would make him unwilling to negotiate a reasonable settlement on behalf of the proposed class.  *See also Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1464 (9th Cir. 1995) ("the reason [a district court] consider[s] vindictiveness as a factor in evaluating adequacy of representation is to render ineligible individuals who possess animus that would preclude the possibility of a suitable settlement.").   Plaintiff is an adequate class representative.

### 2.     Rule 23(b)(3) Analysis

Having satisfied the requirements of Rule 23(a), a plaintiff must next demonstrate that the action can be appropriately certified under Rule 23(b)(3).   To do so, Plaintiff must satisfy two requirements: predominance and superiority.

First, the common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 131 S. Ct. at 2556-57; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 624-25 (1997); *Hanlon*, 150 F.3d at 1022. Rule 23(a)(2) can be satisfied by even a single common question, but 23(b)(3) requires convincing proof that the common questions "predominate." *Amchem*, 521 U.S. at 623-24; *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all

1    members of the class in a single adjudication, there is clear justification for handling the dispute

2    on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

3              **i.    Predominance of Common Questions**

4              Plaintiff argues his theory of recovery is based on FedEx's policy and procedures that

5    apply uniformly to all drivers.  He asserts FedEx does not pay its line-haul drivers for NDA

6    because its compensation system, based on miles driven, does not specifically and directly

7    account for specific tasks, including pre-and-post trip inspections, placarding and paperwork,

8    rest periods and limited delay periods.  Plaintiff argues that these issues, common to each driver,

9    predominate class wide, over any perceived individual inquiry.

10             FedEx raises two primary challenges to class certification on predominance grounds: (1)

11   Plaintiff's motion requires a person-by-person inquiry that is not manageable on a class wide

12   basis (individualized inquiry) and (2) Plaintiff fails to offer a method of damage calculations

13   that could be measured on a class wide basis (no viable trial plan).

14             <u>Individualized Inquiry</u>

15             Defendant first argues that determining liability in this case requires an individualized,

16   hour-by-hour, driver-by-driver inquiry to determine whether there is any alleged unpaid time.

17   More specifically, according to FedEx, many fixed rate activities can be performed in less than

18   the fixed time period compensated by FedEx.  Therefore, it is possible that drivers perform non-

19   driving activities while also performing compensated fixed rate activities.  Since line-haul

20   drivers are not required to record events of less than 15 minutes, there is no way to determine

21   how much time drivers spent on non-driving activities and whether those activities were truly

22   paid improperly.  Defendant claims that in many instances the piece-rate pay system challenged

23   by Plaintiff often pays drivers twice as much as an hourly pay plan which suggests that non-

24   driving activities are actually compensated. (Doc. 24 at 28).

25             In response, Plaintiff provides several cases where California authority dictates that an

26   employer violates wage and hour laws by failing to compensate for all work performed where,

27   as here, the employer has a uniform piece-rate compensation plan that does not account for time

28   spent on non-driving activities and no part of this rate may be used as a credit against the

     minimum wage obligation.  Relying on *Cardenas v. McClane FoodServices, Inc.*, Plaintiff

argues that a piece-rate plan must separately and directly compensate for each work related activity that the employer intends to include in the piece-rate, otherwise those activities are not properly compensated. *See Cardenas v. McLane Food Services, Inc.*, 796 F.Supp.2d 1246, 1252 (C.D. Cal. 2011).     Moreover, Plaintiff argues that any individual inquiry related to "overcompensated" time is irrelevant because an averaging of compensation to meet the minimum wage standard still violates the law.  *Id.* at 1252.

In *Cardenas*, the Central District of California considered a "piece-rate" payment system similar to that at issue here. In that case, the defendant paid employee truck drivers based on a formula taking into account miles driven, number of stops, and quantity of product delivered. *Id.* at 1249. The defendant employer did not compensate drivers separately for vehicle inspection time, but contended that compensation for these tasks was built into the mileage rate. *Id.* The court concluded that the failure to compensate for such tasks separately was a violation of the California Labor Code, regardless of whether employees believed they were being compensated for these tasks through a higher rate per mile. *Id.* at 1252-53. Thus, the court granted summary judgment to the plaintiffs, concluding "[i]t is undisputed that [defendant's] pay formula used a calculation consisting of miles, stops, and products-and did not separately compensate for pre- and post-shift duties. Even if [defendant] communicated to its employees that this piece-rate formula was intended to compensate for pre-and-post-shift duties, the fact that it did not separately compensate for those duties violates California law." *Id.* at 1253. The court further found it irrelevant that the piece-rate formula effectively paid employees a substantially higher rate than the minimum wage, concluding that "a piece-rate formula that does not compensate directly for all time worked does not comply with California Labor Code, even if, averaged out, it would pay at least minimum wage for all hours worked." *Id.* at 1252.

Defendant agrees that it does not separately compensate for non-driving activities such as placarding, pre-and-post trip inspections and delay time intervals, but argues that "mileage pay covers all tasks that must be regularly performed in moving freight."  (Doc. 24 at 12). According to FedEx, its mileage pay includes the primary task (driving) and all secondary tasks required for or that facilitate the primary task (inspections, breaks, delay). (Doc. 27 at 27). FedEx explains however that even if its mileage pay failed to separately compensate for more

than just driving, the other methods of compensation like "fixed pay" overcompensates drivers precluding any activity from being compensated below the minimum wage.  (Doc. 24 at 29). FedEx points to examples where drivers are overcompensated for piece-rate work during the time they are paid to perform fixed rate tasks, because of the "generous" amount of time set aside for those tasks (e.g., "full thirty minutes of 'hook' pay," "drop time of 30 minutes," "activity pay equal to 15 minutes" to fuel, etc.).

However, this is exactly the classwide theory that Plaintiff challenges as unlawful under California labor law. As seen in several similar cases, Plaintiff's theory of liability based on FedEx's uniform compensation policy is amenable to class wide treatment.  Courts routinely hold that proof of a defendant's uniform pay policy, similar to the mileage pay formula at issue here, is not plagued by individual inquiry, but is often sufficient to satisfy the predominance requirement. *See Ridgeway v. Wal-Mart Stores, Inc*., 2014 U.S. Dist. LEXIS 126806, 2014 WL 2600326, *6 (N.D. Cal. 2014); *Mendez v. R+L Carriers, Inc.*, 2012 U.S. Dist. LEXIS 165221, 2012 WL 5868973 (N.D. Cal. Nov. 19, 2012).

In *Ridgeway*, a lawsuit filed by Wal-Mart truck drivers who alleged the company violated the California Labor Code and other labor laws by not paying minimum wage for all mandatory duties performed under Wal-Mart's piece-rate plan, the Court rejected Wal-Mart's argument challenging predominance. *Ridgeway*, 2014 U.S. Dist. LEXIS 126806 at *23.   Wal-Mart argued that the employees' minimum wage claims required an hour-by-hour, driver-by-driver, and task-by-task analysis of how each plaintiff spent his workday, and these individual questions would overwhelm any common questions. *Id.* The court disagreed and concluded that Wal-Mart's pay formula raised common questions, and these common questions predominated over individual questions of whether certain drivers received additional discretionary pay after requesting such payments, or whether some drivers completed tasks like paperwork during wait-time or attended to personal phone calls during layovers. Accordingly, the court found that the plaintiffs satisfied the predominance requirement for their minimum wage claims.

Similarly, the court in *Mendez v. R+L Carriers, Inc.*, 2012 U.S. Dist. LEXIS 165221, [2012 WL 5868973] (N.D. Cal. Nov. 19, 2012) reasoned that where defendants' linehaul pay formula applied to all of defendants' drivers in California, plaintiffs' wage-and-hour claims

1    "inherently raise many legal and factual questions common to all putative class members."

2    *Mendez*, 2012 U.S. Dist. LEXIS 165221 at *16. In its analysis of the predominance requirement,

3    the court found that defendants' pay formula, which affected all drivers in the state, raised

4    common questions including whether the formula adequately compensates drivers for non-

5    driving time. *Id.* These common questions included whether the pay formula misrepresents

6    drivers' working hours, whether the formula adequately compensates drivers for non-driving

7    time. The court also noted defendants' legal questions, such as whether California law

8    recognizes the lawfulness of piece-rate compensation for drivers, were relevant to all putative

9    class members. *Id.* Taking these questions together, the court found that "the various common

10   questions that Defendants' pay policies raise will likely predominate over individual questions."

11   2012 U.S. Dist. LEXIS 165221 at *17.

12        These cases are instructive here as Plaintiff's theory of liability also does not require the

13   Court to identify specific hours that were not compensated below minimum wage for each class

14   member. Rather, Plaintiff's theory is that Defendant's mileage pay plan systematically fails to

15   separately compensate employees for non-driving activities. Plaintiff maintains that FedEx's

16   policies are applied to all of its line-haul drivers. And Plaintiff has provided evidence of these

17   policies in Lesson 13 of the FedEx Road Driver manual, as well as the deposition testimony of

18   FedEx's Senior Manager of Transportation, Jeffrey Scroggins. (Declaration of Duane Westrup

19   ("Westrup Decl.") Ex. D, Doc. 17-5). While Defendant argues that it is difficult, if not

20   impossible, to determine whether drivers used compensated time to perform other non-driving

21   activities, this is not Plaintiff's theory of liability. Plaintiff's question is a matter of law, and

22   whether FedEx may use fixed pay as a credit for piece-rate work is an appropriate class question

23   in light of case law. "All hours must be paid at the statutory or agreed rate and no part of this

24   rate may be used as a credit against a minimum wage obligation." *Ontiveros*, 2014 U.S. Dist. at

25   ** 3-4 (citing *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 324).

26        The answers to the following questions predominate and will drive the resolution of

27   Plaintiff's claims: (1) whether drivers can earn compensation for NDA at the piece-rate which

28   only compensates them for distance and not time spent on each NDA; (2) whether the mileage

     pay formula adequately compensates drivers for tasks that are not included in mileage pay; (3)

whether FedEx's mileage pay plan violates California's minimum wage laws; (4) whether FedEx drivers are entitled to payment of at least minimum wages for all hours worked; (5) and whether non-driving activities occurring during time set aside for fixed rate activities satisfies the minimum wage requirement for those tasks.  These are common questions that predominate over individual questions of whether some drivers completed tasks like placarding during wait-time or hook and unhooking time.

Plaintiff's overall question common to the class is whether FedEx's concededly uniform mileage pay method of compensation did not separately and directly compensate for non-driving activities.   As Plaintiff states a class-wide claim under California wage law, common issues regarding liability predominate over any perceived individual issues.

**Viable Trial Plan**

In a related argument, FedEx asserts that Taylor's motion fails to present a viable trial plan because he articulates no method by which damages could be measured on a class wide basis as required by the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013).  (Doc. 24 at 16).  FedEx claims that questions of individual damage calculations will inevitably overwhelm questions common to the class because if Taylor's theory is correct, class members will be owed for varying amounts of time.

A.      **Rest Period Claim**

FedEx first challenges whether Plaintiff has established a sufficient damages model for Plaintiff's rest period claim, arguing that calculating damages for rest periods is particularly problematic and therefore not suitable for class wide treatment. According to FedEx, timecards or other similar data fails to show whether, how, and to what extent line-haul drivers actually took rest breaks in compliance with FedEx's policy.  At the hearing, counsel for FedEx further explained that oftentimes drivers log a meal break or a rest break simply as "break."  The use of this vague label means there is no way to determine if the "break" logged is a meal break or rest break.  FedEx further explains that because its time system captures time in fifteen minute increments, it is impossible to determine whether a break lasted for 7.5 minutes or 22.5 minutes. FedEx argues that because Plaintiff has not presented a workable damages formula to determine

the length of each break, this inquiry would overwhelm the class. *See In re Autozone, Wage and Hour Employment Practices Litig.*, 289 F.R.D. 526, 535 (N.D. Cal. 2012) (in dicta, recognizing that an individualized inquiry that is unassisted by timecards or other data would render a class unmanageable as the court would have to "make endless individualized inquiries about whether and how often putative class members got rest breaks.).

Plaintiff responds that while he should not be penalized for FedEx's failure to keep sufficient records, rest period evidence can be examined through statistical sampling of DOT logs and Kronos time records. *Dilts v. Penske Logistics LLC*, 267 F.R.D. 625, 638 (S.D. Cal. 2010), *rev'd on other grounds*, 769 F.3d 637 (9th Cir. 2014) (the use of statistical sampling when paired with direct evidence is an acceptable method of proof in a class action). After clarifying at the hearing that he does not seek damages for unrecorded rest breaks, Plaintiff explained that his damages model is based on an analysis of computerized records where class members actually recorded a break. If a class member recorded a break, Plaintiff's theory of liability reads that the class member should be compensated for that break separately and outside of the piece-rate.

In *Comcast Corp. v. Behrend*, the Supreme Court held that in order to satisfy the predominance inquiry, plaintiff must present a model that (1) identifies damages that stem from the defendant's alleged wrongdoing and (2) is "susceptible of measurement across the entire class." 133 S.Ct. at 1433-34. Finding that plaintiffs' damages model did not isolate damages resulting from the accepted theory of antitrust impact, the Court reversed the district court's certification of the class. *Id.* at 1431. This Court has further held that damages under *Comcast* "must be capable of determination by tracing damages to the plaintiff's theory of liability. So long as the damages can be determined and attributed to a plaintiff's theory of liability, damage calculations for individual class members do not defeat certification." *Lindell v. Synthes USA*, No. 11-02053, 2014 U.S. Dist. LEXIS 27706, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (reiterating Ninth Circuit precedent, post-*Comcast*, that individual issues that may result in different damage findings do not defeat certification).

20

The calculation problem raised by FedEx is unpersuasive.  The heart of FedEx's primary challenge to Plaintiff's rest period claim surrounds the method of measuring the length of a recorded break.  FedEx argues that, after liability is determined, there is no way for the jury to determine the length of a rest break recorded simply as "break."  According to FedEx, because time is recorded in fifteen minute increments, there is no way to calculate the difference between a 7.5 minute break and a 22.5 minute break. (Doc. 24 at 22).  However, here as in *Lindell*, if FedEx does not reimburse *any* rest breaks outside of mileage pay, it is irrelevant, for liability purposes, how long each recorded break was. If Plaintiff prevails on his theory that FedEx does not separately compensate for rest periods, liability attaches whenever Plaintiff produces a computerized record demonstrating a recorded break.  Once liability is established (recorded rest breaks without separate compensation), it does not matter for class certification purposes whether the break was 7.5 minutes or 22.5 minutes.  Variances such as these concern post-liability damage determinations that do not defeat class certification.  Thus, in line with this Court's ruling in *Lindell*, if class members "prove [FedEx's] liability, all the damages will flow from Plaintiff's theory of liability: [FedEx's] unlawful" mileage pay policy.  *Lindell*, 2014 U.S. Dist. LEXIS 27706, 2014 WL 841738, at *14.  This Court is not persuaded to vary from Ninth Circuit precedent that the presence of individualized damages, by itself, defeats class certification.  See L*eyva*, 716 F.3d at 513-14 ("damages determinations are individual in nearly all wage-and-hour class actions.")

FedEx's supporting case law is equally unpersuasive.  This is not a case where the Court is left to determine when rest breaks were or were not taken by members of the class.  *See In re Taco Bell Wage and Hour Actions*, No. 1:07cv1314 LJO DLB, 2012 U.S. Dist. LEXIS 168219, 2012 WL 5932833, at *10-11 (E.D. Cal. Nov. 27, 2012), *adopted as final order by In re Taco Bell Wage and Hour*, No. CV F 07-1314 LJO DLB, 2013 U.S. Dist. LEXIS 380, 2013 WL 28074, at *1 (E.D. Cal. Jan. 2, 2013) (rest break not suitable for class wide treatment because employees not required to record rest breaks).  Nor is this a case where the Court is required to make an individualized inquiry as to what took place during the rest break, and for how long.  Rather, much like in *Leyva,* Plaintiff's damages model seeks to analyze readily available

computerized records by compiling all time-sheets that contain recorded breaks.   Indeed, in *Leyva*, the Ninth Circuit noted that the defendant's "computerized payroll and timekeeping databases would enable the court to accurately calculate damages and related penalties for each claim." *Id.*

Here, Defendant does not dispute that there are class-wide computerized time records to determine when class members recorded a break. While FedEx argues that there is no way to determine the exact length of each break, Defendant is free to address the question of complication with the precise damage calculation with the trial court during the damages phase. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014).  Whether Plaintiff adequately will carry his burden of proof of damages at trial, is not the same as whether there is a method of calculating damages classwide.  Here, Plaintiff has shown a plausible method of calculating damages on a classwide basis through a search of Defendant's readily available computerized time records. This Court's proper focus at the class certification stage is the connection between the class wide injury and the damages sought.  *Comcast*, 133 S.Ct. at 1432-1433.  So long as the class members here were harmed by the same conduct, disparities in how or by how much they were harmed does not defeat class certification. *Jimenez*, 765 F.3d at 1168.   Given the continuity between liability and damages, the Court is not persuaded that the small differences that could result from an exact calculation of each individual rest breaks dooms Plaintiff's trial plan.

**B.     Unpaid Wages Claim**

In challenging Plaintiff's unpaid wage claim, FedEx argues that there is no way to determine how each class member spent their day and as a result, Plaintiff's trial plan cannot demonstrate a violation for any particular hours worked.  By way of example, looking at Taylor's records for the primary non-driving activities of pre-trip, post-trip, and paperwork, FedEx argues that Plaintiff regularly arrived at work only a few minutes before he actually left the service center with his load of freight.  Thus, Taylor arrived, hooked his truck, conducted his pre-trip inspection, completed his paperwork, and departed within 15 minutes. (Declaration of Diana Woods, ("Woods Decl."), at ¶ 4, Doc. 24-2). According to Defendant, the question then

1  becomes what amount of time was dedicated to each non-driving activity.  FedEx explains that

2  answering that question would require an individualized inquiry into each driver's day.

3  *Forrand v. Federal Express Corp.*, 2013 U.S. Dist. LEXIS 55149 (C.D. Cal. Apr. 25, 2013).

4  Further, "analyzing just one driver's records for four months of time takes approximately 10-20

5  hours of work by an experienced in-house paralegal, and is not the kind of task that can be

6  expected to be conducted or reviewed by a trier of fact."  (Doc. 24 at 29).

7          Plaintiff responds that, similar to Plaintiff's rest period wage claim, time spent on non-

8  driving activities can also be determined through statistical sampling or surveys using

9  Defendant's computerized records.  (Doc. 27 at 7).  According to Plaintiff, federal law mandates

10  that line-haul drivers record certain non-driving activities, such as pre-trips, in the drivers' log.

11  Plaintiff's damages model uses these daily drivers' log coupled with (1) the deposition

12  testimony of Defendant's corporate representative; (2) Defendant's computerized records; and

13  (3) employee testimony to propose a viable method for damage calculation. (Doc. 17 at 28).

14  Plaintiff further explains that his unpaid wage claims can be calculated in a readily manageable

15  trial by using experts to prepare questionnaires to acquire survey data and/or to evaluate a

16  statistically relevant sampling of driver records, FedEx's written policies, and deposition

17  testimony from 30(b)(6) deponents.  *Delagarza v. Tesoro Ref. & Mktg. Co.*, 2011 WL 4017967,

18  * 17 (N. D. 2011) (difficulty in damages calculations does not overwhelm benefits of classwide

19  resolution).

20          FedEx's argument is insufficient to defeat predominance where, as here, Taylor alleges

21  that FedEx has a uniform piece-rate compensation policy that fails to separately compensate

22  truck drivers for required activities. Defendant's argument that Plaintiff fails to suggest a

23  formula or sample that captures the daily differences between the numerous line-haul drivers is

24  unavailing. Plaintiff's evidence consists of Defendant's own policies, a uniform compensation

25  system, declarations and deposition testimony of FedEx former employees and representatives

26  demonstrating the time it takes to complete non-driving activities.[5]

27  _____

28  [5]      Plaintiff has presented a method for proving liability for Plaintiff's theory that FedEx was required to
separately pay for all NDA.  Plaintiff's burden of proof does not require Plaintiff to "back out" NDA activities from
those activities compensated by fixed rate pay.  Plaintiff may prove his case by showing that the NDA activities
were not separately compensated.  It is <u>FedEx's defense</u> that Taylor was already compensated at a fixed rate for the

As a transportation company providing consumers precise tracking information, FedEx does not dispute that drivers are required to record detailed time records.  Plaintiff points to evidence that drivers record daily activities taking longer than seven and a half (7 ½) minutes in length.  (Doc. 17 at 10).  Citing deposition testimony from FedEx representative Jon Barrett, Defendant estimates that it takes line haul drivers approximately 20 minutes to perform pre and post-trip inspections per trip, which is recorded on federal logs and Defendant's internal forms including the Driver Vehicle Inspection Report form.  (Barrett Depo. 16:4-17:13, 20:18-21:17, 23:22-24:7, 26:19-25, 45:22-46:18, 48:4-49:15, 63:12-22, 64:14-17).  Taken together, this evidence suggests that FedEx drivers complete detailed, mandatory records each workday identifying the specific activities performed.  These detailed records are capable of analysis through methods of statistical sampling and/or other expert review.  Thus, individualized time estimates do not threaten to overwhelm the class and do not warrant denial of certification.

Moreover, "where the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee." *Hernandez v. Mendoza* 199 Cal.App.3rd 721, 727 (1988).  FedEx's failure in record management, if any, or the difficulty in compiling precise records does not defeat class certification.  *Arredondo v. Delano Farms Co*., 301 F.R.D. 493, 545 (E.D. Cal. Feb. 21, 2014) ("Class action litigation grows out of systemic failures of administration, policy application, or records management…to allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies. We reject Defendants' attacks on administrative feasibility."); *Guifu Li v. A Perfect Day Franchise, Inc*. 2012 WL 2236752, at *13 (N.D. Cal. June 15, 2012) (A sampling can establish class liability where there was a failure to maintain accurate records and liability is established for unpaid wages).[6]

---

same NDA activities and the defense requires "backing out" those NDA activities.  FedEx's defense does not provide such individualized inquiries so as to defeat class certification.  The Ninth Circuit has specifically approved the reservation of individual questions regarding damages after class action resolution of the common questions of liability. *Jimenez*, 765 F.3d at 1168.

[6]    The California Supreme Court's recent decision in *Duran v. U.S. Bank Nat'l Association*, 59 Cal. 4th 1 (Cal. 2014) is not to the contrary. While it reversed the result of a trial that had used statistical sampling and representative testimony to find in favor of a class of employees alleging mis-classification under California labor laws, it did not place a wholesale bar on the use of such tactics. *Id.* at 40 ("We need not reach a sweeping conclusion as to whether or when sampling should be available as a tool for proving liability in a class action.") Rather, it noted serious problems with the size of the sample, the way it was selected, and the application of sample

Lastly, as seen above, to the extent that FedEx argues that individualized damages are not capable of calculation class wide, the Ninth Circuit has explained, "damages determinations are individual in nearly all wage-and-hour class actions,"  and "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva*, 716 F.3d at 513-14.  The Court finds that any potential manageability issues arising from the calculation of each individual's damages do not defeat class certification.

### ii.    Superiority

The superiority requirement tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996).  "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually a class action is not superior." *Zinser,* 253 F.3d at 1192.  Rule 23(b)(3) specifies four nonexclusive factors that are "pertinent" to a determination of whether class certification is the superior method: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

Where, as here, all class members' allegations are based on uniform policies and practices giving rise to predominantly common questions of fact and law, a class action is superior.  Further, there is no evidence that class members have any interest in controlling prosecution of their claims separately.  There is no other pending litigation by or against class members that relates to the issues raised in this action.  Thus, the first two factors weigh in favor of certification. Furthermore, there is nothing in the record to suggest that concentrating the litigation in this forum would be undesirable or that a class action would be unmanageable.  Accordingly, the Court finds that Plaintiffs have met their burden to show that a class action would be a superior method for resolving the litigation.

---

evidence to the larger class. *Id.* at 41.  These errors required reversal because the sample itself was so flawed as to violate the defendant's due process rights and California class certification principles. *Id.* at 945. That is not the question the Court faces with Plaintiff's putative class.

**B.      Preemption**

Finally, Defendant contends that the Court should decline to certify a class based on Plaintiff's interpretation of the Labor Code, because this interpretation would be preempted by the Federal Aviation Administration Authorization Act (the "FAAAA").[7] Relying heavily on *Ortega v. J. B. Hunt Transp., Inc*., 2013 U.S. Dist. LEXIS 160582, 2013 WL 5933889, at *7 (C.D. Cal. Oct. 2, 2013), FedEx argues that the cost of paying an additional 15 to 45 minutes per day per driver for rest breaks, would amount to a "tax," therefore posing a "significant burden on interstate commerce" and would necessarily be preempted by the FAAAA. (Doc. 23 at 22). FedEx argues further that if it is required to pay separately for each hour worked, this would affect the flow and cost of freight in more than a "tenuous, remote, or peripheral" manner. *Ortega*, 2013 U.S. Dist. LEXIS 160582 at, *13 (C.D. Cal. Oct. 2, 2013).

The Court does not reach Defendant's preemption argument.  Since *Ortega* was decided, the Ninth Circuit settled this outstanding issue of preemption, clarifying that the FAAAA did not preempt California state laws on rest periods and meal periods. *Dilts v. Penske Logistics, LLC,* 769 F.3d 637 (9th Cir. Cal. 2014) (repealing *Ortega v. JB Hunt* and eight other California district court decisions holding that the FAAAA preempts California's meal and rest break laws.)   In *Dilts*, truck drivers alleged their employer denied them meal and rest periods in violation of California Labor Code section 226.7.  *Id.* at 641.  The Ninth Circuit noted the split of authority in the lower courts and unequivocally held that the FAAAA does not preempt the application of California's meal and rest break laws to truck drivers. *Id.* at 647. The Court reasoned that, like state minimum wage laws, "[a] state law governing hours is . . . not 'related to' prices, routes, or services and therefore does not contribute to 'a patchwork of state service-determining laws, rules, and regulations.'" *Id.* at 647 (citing Rowe, 552 U.S. at 373). *Dilts* thus

---

[7]      The preemptive effect of the FAAAA is broad: (1) [s]tate enforcement actions having a connection with, or reference to, carrier prices, routes, or services are preempted; (2) such preemption may occur even if a state law's effect on prices, routes, or services is only indirect; (3) with respect to preemption, it does not matter whether a state law is consistent or inconsistent with federal regulation; and (4) preemption occurs at least where state laws have a significant impact related to Congress' deregulatory and preemption related objectives." *Morales v. TransWorld Airlines, Inc.*, 504 U.S. 374, 386-87, 390 (1992).

expressly rejects Defendant's argument that Plaintiff's claims related to California's meal and rest-period laws are preempted by the FAAAA.

## CONCLUSION AND RECOMMENDATIONS

Having carefully considered the parties' submissions, arguments, and the entire record in this case, the Court RECOMMENDS Plaintiff's Motion for Class Certification be GRANTED. The Court FURTHER RECOMMENDS that the classes should be defined as follows:

    1)    All persons who worked for Defendant as line-haul drivers from January 28, 2012 through the date of trial.

    2)    All Class Members who have left their employment with Defendant from January 28, 2012, through the date of trial. (Labor Code §203: Waiting-time penalties subclass)

The Court FURTHER RECOMMENDS that Roy D. Taylor be appointed as Class representative.

The Court FURTHER RECOMMENDS the law firm of Westrup & Associates and the Labor Law Office, APC be appointed as Class Counsel.

The Court will set a scheduling conference upon the conclusion of this motion.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

Dated:  **May 15, 2015**            /s/ Barbara A. McAuliffe

                                     UNITED STATES MAGISTRATE JUDGE