1
2
3
4
5
6
7

8            UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROY D. TAYLOR, on behalf of himself          No.  1:13-cv-01137-DAD-BAM
     and all others similarly situated,
12
              Plaintiff,
13                                                ORDER GRANTING PRELIMINARY
         v.                                       APPROVAL OF CLASS ACTION
14                                                SETTLEMENT
     FEDEX FREIGHT, INC., an Arkansas
15   corporation; and DOES 1 through 10,          (Doc. No. 57)
     inclusive,
16
              Defendants.
17

18

19         This matter came before the court on April 5, 2016, for hearing of plaintiff's motion for

20   preliminary approval of class action settlement.  Attorney R. Duane Westrup appeared for

21   plaintiff.  Attorney Keith A. Jacoby appeared for defendants and attorneys Mireya A.R. Llaurado

22   and Sophia Behnia appeared telephonically on behalf of defendants.  Oral argument was heard

23   and the motion was taken under submission.  For the reasons set forth below, the motion for

24   preliminary approval of class action settlement will be granted.

25                                **BACKGROUND**

26         This action was removed from Kings County Superior Court on July 19, 2013.  (Doc. No.

27   1.)  The complaint, filed as a class action against defendant FedEx Freight, Inc. ("FedEx"),

28   alleges violation of the California Labor Code § 201–03, 204, 210, 226, 226.7, 510, 512, 558,

                                    1

1174, 1194, 1197, 1197.1, 2698, and California Business and Professions Code § 17200 *et seq.*, for failing to pay truck drivers for all time worked when driving to and from designated hotels and dispatch centers, failing to pay for non-personal time spent at designated hotels, failing to pay for time spent off the clock while waiting to trade trailers with other drivers, failing to pay for all time worked inspecting trucks, failing to provide meal and rest periods, failing to timely pay compensation upon termination, and failing to provide accurate itemized wage statements.  (Doc. No. 1, at 21.)

Plaintiff Roy Taylor filed a motion to certify the class action on August 14, 2014.  (Doc. No. 17.)  The assigned magistrate judge issued findings and recommendations recommending that class certification be granted and on July 24, 2015 the previously presiding District Judge adopted those findings and recommendations.  (Doc. Nos. 36 and 48.)  In doing so, the court certified the classes as follows:

> All person who worked for Defendant as line-haul drivers from January 28, 2012 through the date of trial.
>
> All Class Members who have left their employment with Defendant from January 28, 2012, through the date of trial.  (Labor Code § 203: Waiting time penalties subclass).

(Doc. No. 48, at 5.)  The court further appointed Roy D. Taylor as class representative and the law firm of Westrup & Associates and the Labor Law Office, APC as class counsel.  (*Id.*)

On January 14, 2016, the parties attended mediation with Judge Stephen J. Sundvold (retired).  (Doc. No. 57, at 7.)  With the assistance of Judge Sundvold, the parties reached a settlement of this action.  (*Id.*)  Now pending before the court is plaintiff's motion for preliminary approval of class action settlement.  (Doc. No. 57.)  In the motion, plaintiff and the putative class seek an order:  (1) confirming certification of the class for settlement purposes; (2) granting preliminary approval of the class action settlement; (3) confirming Westrup & Associates, including Duane Westrup, Esq., and Labor Law Office APC, including Michael L. Carver, as class counsel; (4) approving Rust Consulting as the administrator; (5) directing that notice be given to the class; and (6) setting a hearing for final approval of the proposed settlement on July 19, 2016.  (*Id.* at 20–21.)  The motion is unopposed.

2

**CONDITIONAL CERTIFICATION OF A CLASS FOR SETTLEMENT**

Plaintiff requests conditional certification of the settlement class under Rule 23(c)(1).  The court has previously granted class certification.  (Doc. No. 48.)  The parties now ask the court to certify the settlement class members, specifically:

> [A]ll California-based employees who worked for Defendant as Road Drivers or other drivers paid by the hour to the extent they performed road runs paid on a piece rate basis, in California on or after January 28, 2012 through December 31, 2015.

(Doc. No. 57, at 8:5–10.)

Rule 23(c)(1) permits a court to "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."  *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000).  Conditional certification requires satisfaction of the pre-requisites of Rule 23(a) and (b).  *Id.*

1. *Rule 23(a) Requirements*

Federal Rule of Civil Procedure 23(a) states in pertinent part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all."  As a threshold matter, in order to certify a class, a court must be satisfied that:

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement).

*In re Itel Secs. Litig.,* 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing Fed. R. Civ. P. 23(a)).

a. *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw., Inc. v. EEOC,* 446 U.S. 318, 330 (1980).

There are approximately 1600 class members in the proposed settlement class, including 800 non-regular road drivers paid by the hour to the extent they performed road runs paid on a

1   piece rate basis.  (Doc. No. 57–1, at 10:16–17.)  Courts have routinely found the numerosity

2   requirement satisfied when the class comprises 40 or more members.  *Ansari v. New York Univ.,*

3   179 F.R.D. 112, 114 (S.D. N.Y. 1998).  Numerosity is also satisfied where joining all class

4   members would serve only to impose financial burdens and clog the court's docket.  *In re Itel*

5   *Secs. Litig.,* 89 F.R.D. at 112.  Here, the joinder of approximately 1600 individual current and

6   former employees to hear their several claims would only further clog this court's already

7   overburdened docket.  Numerosity is therefore satisfied.

8          b.  *Common Questions of Fact and Law*

9          Rule 23(a) also demands "questions of law or fact common to the class."  Fed. R. Civ. P.

10  23(a)(2).  The rule does not require that all questions of law or fact be common to every single

11  member of the class.  The raising of any common question, however, does not suffice.  *See Wal-*

12  *Mart Stores, Inc. v. Dukes,* 564 U.S. 338, ___, 131 S. Ct. 2541, 2551-52 (2011) ("[a]ny

13  competently crafted class complaint literally raises common 'questions.'") (quoting Nagareda,

14  Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)); *Ellis*

15  *v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir. 2011) ("In other words, Plaintiffs must

16  have a common question that will connect many individual promotional decisions to their claim

17  for class relief.")  Rather, class representatives must demonstrate that common points of facts and

18  law will drive or resolve the litigation.  *Dukes,* 131 S. Ct at 2552 ("What matters to class

19  certification . . . is not the raising of common 'questions'—even in droves—but, rather the

20  capacity of a classwide proceeding to generate common answers apt to drive the resolution of the

21  litigation.") (internal citations omitted).  To satisfy Rule 23(a)'s commonality requirement, a class

22  claim "must depend upon a common contention . . . of such a nature that it is capable of classwide

23  resolution—which means that determination of its truth or falsity will resolve an issue that is

24  central to the validity of each one of the claims in one stroke."  *Dukes,* 131 S. Ct. at 2551.

25         Here, FedEx had a uniform policy of paying line-haul drivers and non-regular line drivers

26  for non-driving activities using mileage based compensation, and that policy was applied

27  uniformly.  (Doc. Nos. 36, at 10; 57–3, at 26.)  Whether FedEx's mileage pay plan fails to

28  separately compensate for all time worked including non-driving activities, and whether such

4

failure is unlawful under the Labor Code and IWC Wage Order 9‒2001 are common questions of law and facts to the proposed settlement class.  These common questions of law or fact shared by all the proposed settlement class members are sufficient to satisfy the commonality requirement.

    c.  *Typicality*

Rule 23(a)(3) demands "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory.  *See, e.g., Kayes v. Pac. Lumber Co.,* 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Because every class member here was paid under the same pay practices as every other class member, the class representative's claims are typical of those of the other class members. The typicality requirement is satisfied.

    d.  *Fair & Adequate Representation*

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires that two questions be addressed:  (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

Plaintiff maintains that there is no conflict between him and the class members and that class counsel have no conflicts with the class members.  (Doc. Nos. 57–1, at 10:18; 57–3, at 27:7–9.)  Plaintiff's counsels are qualified law firms with extensive experience in class actions and labor law litigation.  (Doc. Nos. 57–1, at 8–9; 57–3, at 22.)  In the prior order granting class certification, the court found that the same plaintiff and class counsel were adequate to represent the class.  (Doc. No. 48.)  The adequacy requirement is satisfied.

/////

/////

1       2.   *Certification of a Class under Rule 23(b)(3)*

2              Once the threshold requirements of Rule 23(a) are satisfied, a class may be certified if the

3       class action satisfies the predominance and superiority requirements of Rule 23(b)(3).  First, the

4       common questions must "predominate" over any individual questions.  While this requirement is

5       similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of

6       the analysis.  *Dukes*, 131 S. Ct. at 2556-57; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591,

7       624–25 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  While Rule

8       23(a)(2) can be satisfied by even a single common question, Rule 23(b)(3) requires convincing

9       proof that the common questions "predominate."  *Amchem*, 521 U.S. at 623-24; *Hanlon*, 150 F.3d

10      at 1022.  "When common questions present a significant aspect of the case and they can be

11      resolved for all members of the class in a single adjudication, there is clear justification for

12      handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at

13      1022.

14             As noted by the assigned Magistrate Judge in recommending that class certification be

15      granted, courts have often held that proof of a defendant's uniform pay policy, similar to the

16      mileage pay formula at issue here, is not plagued by individual inquiry, but rather is sufficient to

17      satisfy the predominance requirement.  (Doc. No. 36 at 17) (citing *Ridgeway v. Wal-Mart Stores,*

18      *Inc.*, 2014 WL 2600326, *6 (N.D. Cal. 2014); *Mendez v. R+L Carriers, Inc.*, 2012 WL 5868973

19      (N.D. Cal. Nov. 19, 2012)).  Likewise, the previously assigned District Judge held in this case

20      that defendant's uniform pay policy at issue here predominated over individual questions of

21      whether some drivers completed individual tasks.  (Doc. No. 48; *see also* Doc. No. 36, at 18-19.)

22      The undersigned now finds that the requirements of Rule 23(b)(3) are satisfied.  The court

23      confirms conditional certification of the settlement class for settlement purposes.

24                              **PRELIMINARY APPROVAL OF THE SETTLEMENT**

25             In reviewing the parties' settlement, although it is not a court's province to "reach any

26      ultimate conclusions on the contested issues of fact and law which underlie the merits of the

27      dispute," a court should weigh the strength of plaintiff's case; the risk, expense, complexity, and

28      likely duration of further litigation; the stage of the proceedings, and the value of the settlement

1    offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).  The court should also

2    watch for collusion between class counsel and defendants.  *Id.*

3        Preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f

4    [1] the proposed settlement appears to be the product of serious, informed, noncollusive

5    negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment

6    to class representatives or segments of the class, and [4] falls with the range of possible

7    approval. . . . " *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)

8    (adding numbers).  The settlement proposed by the parties in this case satisfies this test.

9        1.  *The Settlement Was the Product of Informed, Arm's Length Negotiations*

10       The settlement was reached after informed, arm's length negotiations between the parties.

11   Both parties conducted extensive investigation and discovery allowing them to assess the

12   strengths and weaknesses of the case.  (Doc. No. 57–1, at 7:13–16.)  Plaintiff's counsel took

13   depositions of defendant's corporate designees, reviewed documents and data, consulted with

14   experts, prepared a damage analysis, and prepared briefings.  (*Id.*)  Parties participated in

15   mediation with an impartial mediator, retired Judge Sundvold.  (Doc. No. 57, at 7.)  The

16   settlement is the product of non-collusive negotiations.

17       2.  *The Proposed Settlement Has No "Obvious Deficiencies"*

18       The court has reviewed the unredacted, sealed version of the settlement agreement.  The

19   settlement provides for a substantial payment, given the size of the class and nature of the alleged

20   violations at issue.  The settlement amount will fund settlement payments to class members,

21   administration of the settlement, a class representative service fee, PAGA penalty payments, and

22   attorneys' fees and costs.  Slightly over two-thirds of the settlement payment is allocated for class

23   members who submit a timely claim form and do not opt-out.

24       To fairly allocate settlement funds based on the class member's length of service, whether

25   the class member drove road runs on a regular basis as opposed to only occasionally, and whether

26   the class member may be entitled to waiting time penalties, the distribution amounts will be

27   calculated using a point system: (i) each class member will be credited one point for each shift

28   employed during the class period unless the class member was on leave of absence for that

7

1   workweek; and (ii) each class member who separated from employment during the class period

2   will be credited five additional points to compensate the class member for his or her potential

3   waiting time penalty claim.  The payouts will be divided among class members who have timely

4   submitted claims as follows:  (i) five percent will be paid to settlement class members who did

5   not regularly work as road drivers, and who instead perform road services only on an occasional

6   basis and were paid pursuant to the road pay plan for such work; and (ii) ninety-five percent will

7   be paid to class members who regularly worked as road drivers for some or all of the class period.

8        *a.  Class Counsel Attorney's Fees and Costs*

9        When a negotiated class action settlement includes an award of attorneys' fees, the fee

10   award must be evaluated in the overall context of the settlement.  *Knisley v. Network Assocs.*, 312

11   F.3d 1123, 1126 (9th Cir. 2002).  At the same time, the court "ha[s] an independent obligation to

12   ensure that the award, like the settlement itself, is reasonable, even if the parties have already

13   agreed to an amount."  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.

14   2011).  *See also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999).

15   Where, as here, fees are to be paid from a common fund, the relationship between the class

16   members and class counsel "turns adversarial."  *In re Washington Pub. Power Supply Sys. Sec.*

17   *Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As a result the district court must assume a fiduciary

18   role for the class members in evaluating a request for an award of attorney fees from the common

19   fund.  *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

20        The Ninth Circuit has approved two methods for determining attorneys' fees in such cases

21   where the attorneys' fee award is taken from the common fund set aside for the entire settlement:

22   the "percentage of the fund" method and the "lodestar" method.  *Vizcaino v. Microsoft Corp.*, 290

23   F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in

24   common fund cases to choose either method.  *Id.*  Under either approach, "[r]easonableness is the

25   goal, and mechanical or formulaic application of either method, where it yields an unreasonable

26   result, can be an abuse of discretion.*"  Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307

27   F.3d 997, 1007 (9th Cir. 2002).

28   */////*

8

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "'special circumstances' justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at 1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Nonetheless, an explanation is necessary when the district court departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942.

Here, however, plaintiff brings various state law claims and under California law "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th

1    Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  The Ninth

2    Circuit recommends that district courts apply one method but cross-check the appropriateness of

3    the amount by employing the other, as well.  *See Bluetooth*, 654 F.3d at 944.

4           The settlement agreement here includes an award of thirty percent of the gross settlement.

5    Class counsel contends that they collectively have incurred nearly $500,000 in lodestar attorneys' fees

6    and $9,000 in costs.  (Doc. No. 57–1, at 4:6–14.)  Clearly, class counsel has significant experience in

7    the field and the results of the settlement, if approved, would bring a significant recovery to the class

8    members.  Consideration of these factors would fully support a benchmark twenty-five percent

9    award of attorneys' fees.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the

10   "most critical factor" to the reasonableness of an attorney fee award is "the degree of success

11   obtained").

12          However, Federal Rule of Civil Procedure 23(h)(1) requires a claim for attorneys' fees to

13   be made by motion under Rule 54(d)(2) and for "[n]otice of the motion [to] be served on all

14   parties and, for motions by class counsel, directed to class members in a reasonable manner."

15   Indeed, class counsel here has indicated that they will file such a motion with detailed lodestar

16   calculations at the time of final approval.  (Doc. No. 57–1, at 4:6–14.)  The court will therefore

17   defer the determination of whether the attorney fee award of thirty percent of the gross settlement is

18   reasonable until the time of final approval, after class counsels' motion has been filed.  Upon

19   reviewing the motion, the court will ensure that the fee award is reasonable, and if upon

20   determining that it is an unjustifiably disproportionate award, the court will adjust the lodestar or

21   percentage accordingly.  *Bluetooth*, 654 F.3d at 945.[1]

22          *b. Class Representative Payment*

23          The settlement agreement provides for a class representative payment.  "Incentive awards

24   are fairly typical in class action cases."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59

25   _____

26   [1]  The court notes that the settlement agreement provides that "[i]n the event that the Court
     awards lesser attorneys' fees, costs or Class Representative Service Fees than requested, then any

27   portion of the requested amounts not awarded to Class Counsel shall be a part of the Net
     Settlement Fund and distributed by the Claims Administrator from the QSR to Eligible

28   Claimants."  (Doc. No. 57–2, at 13:17–22.)

                                                    10

1    (9th Cir. 2009).  However, the decision to approve such an award is a matter within the court's

2    discretion.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).  Generally

3    speaking, incentive awards are meant to "compensate class representatives for work done on

4    behalf of the class, to make up for financial or reputational risk undertaking in bringing the

5    action, and, sometimes, to recognize their willingness to act as a private attorney general."

6    *Rodriguez*, 563 F.3d at 958–59.  The Ninth Circuit has emphasized that "district courts must be

7    vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the

8    class representatives . . . .  [C]oncerns over potential conflicts may be especially pressing where,

9    as here, the proposed service fees greatly exceed the payments to absent class members."

10   *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation

11   marks and citation omitted).  A class representative must justify an incentive award through

12   "evidence demonstrating the quality of plaintiff's representative service," such as "substantial

13   efforts taken as class representative to justify the discrepancy between [his] award and those of

14   the unnamed plaintiffs."  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008).  Incentive

15   awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a

16   significant "reputational risk" by bringing suit against their former employers.  *Rodriguez*, 563

17   F.3d at 958–59.

18          In this case, the class representative estimates that he spent well over eighty hours

19   working on this lawsuit.  (Doc. No. 57–3, at 28.)  He faced personal risks associated with the

20   stigma of bringing the lawsuit and if he failed to prevail could have been ordered to pay

21   attorneys' fees and costs.  (*Id*.)  He is the only class representative in the matter and the incentive

22   payment makes up only a small fraction of the overall settlement funds.  Accordingly, the court

23   finds that the class representative payment is appropriate, but is subject to court approval at the

24   final approval hearing.

25          *c.   Cost of Administration and PAGA Penalty Payment.*

26          Likewise, the court finds that the expected cost of administration of the settlement and that

27   the PAGA penalty payment are reasonable.

28   /////

11

3. *The Settlement Falls Well Within the Range of Possible Approval*

To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080.

If this litigation were to proceed, both sides would face significant risks. For instance, defendant has suggested its exposure is limited by the recent enactment of Labor Code § 226.2 concerning piece rate compensation, which went into effect on January 1, 2016. The new section (i) clarifies pay requirements for mandated breaks and other nonproductive time going forward; and (ii) provides a short time period for employers to make back wage payments for the time between July 1, 2012, through December 31, 2015, in exchange for relief from statutory penalties and other damages. The parties would likely dispute, however, whether cases filed prior to March 1, 2014 are excluded from the penalty relief provisions of § 226.2. (Doc. No. 57, at 14:3–12.)

Plaintiff also faces risks associated with decertification, liability and damages, as well as the burden of proof necessary to overcome defendant's defenses and any motion for summary adjudication and/or judgment. There is also a risk that the trier of fact could determine that drivers were compensated for all non-driving activity time. Defendant, on the other hand, would face the risk that the certified class could recover on its claims if the case goes to trial. The damage on those claims could be substantial and, of course, both parties risk losing costs and attorney's fees if the other party prevails. (*Id*. at 14:13–20.) In light of all of these risks, the proposed settlement is fair, reasonable, and adequate and is in the best interest of the class members in light of all known facts and circumstances.

4. *The Claim Form's Release Is Proper and Not Overly Broad*

As part of the settlement, "[e]ach and every Class Member who has not submitted a timely and valid Request for Exclusion, shall be permanently enjoined and forever barred from prosecuting any and all Released Claims against the Released Parties." (Doc. No. 57–2, 25:3–5.) The settlement defines "Released Claims" as "any and all claims, administrative or otherwise,

1   actions, causes of action, rights or liabilities, based on and arising out of the allegations in this

2   case during the Class Period, including claims under Labor Code sections 201, 202, 203, 226,

3   226.7, 1194, and 2698 *et seq.* related to the facts set forth in the complaint, interest, attorney's

4   fees, and claims for unfair competition pursuant to the California Business & Professions Code

5   section 17200, *et seq.*" (*Id.* at 9:5–10.)

6       These released claims appropriately track the breadth of plaintiff's allegations in this

7   action and the settlement does not release unrelated claims that class members may have against

8   defendants. *Cf. Bond v. Ferguson Enter., Inc.,* No. 1:09–CV–01662–OWW–MJS, 2011 WL

9   284962, at *7 (E.D. Cal. Jan. 25, 2011) ("This form of release is overbroad by arguably releasing

10  all unrelated claims up to the date of the Agreement.").

11      5.  *Collusion*

12      There is no evidence of collusion in this case.  The settlement is preliminarily approved as

13  fair and reasonable, subject to final approval by the court.

14                        **PROPOSED CLASS NOTICE & ADMINISTRATION**

15      "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

16  *Hanlon,* 150 F.3d at 1025.  A class action settlement notice "is satisfactory if it generally

17  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

18  investigate and to come forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566,

19  575 (9th Cir. 2004) (internal quotations and citations omitted).

20      The proposed notice and the manner of notice agreed upon by the parties in this case is

21  "the best notice practicable," as required under Rule 23(c)(2)(B).  Defendant will provide to the

22  claims administrator a list of all class members that will identify each class member's name, last

23  known mailing address, telephone number, social security number, start and end dates of the

24  period(s) in the class period during which the class member worked in a position as a road driver

25  in California, the status of each class member as either a current or former employee, and the time

26  period the class member was considered a regular driver or a driver not considered a regular road

27  driver.  (Doc. No. 57–2, at 18:5–11.)  The claims administrator will mail the notice and claim

28  form directly to each class member.  Prior to mailing the notice and claim form, the administrator

1   will conduct a search, via the United States Postal Service Change of Address List, to locate the

2   most current addresses of the class members.  For any notice and claim form that comes back

3   with a new address, the administrator will re-mail the notice and claim form to that class member.

4   For any notice and claim form that comes back as "undeliverable," the administrator will conduct

5   a "skip trace" and re-mail the notice to the newly obtained address.  Class members will have

6   thirty days from the date of mailing to postmark objections, and forty-five days to postmark a

7   notice of opting out or to submit a claim form.  (Doc. No. 57–1, at 10:7–15.)

8       The class notice adequately informs class members of the nature of the litigation, the

9   essential terms of the settlement, and how to make a claim under the settlement, object to the

10  settlement, or elect not to participate in the settlement.  Additionally, the class notice identifies

11  class counsel, provides their contact information, and specifies the amounts of the class

12  representative and PAGA payments, class counsel attorneys' fees and cost, and the expense of the

13  claims administrator.  (Doc. No. 57-3.)

14      The claim form includes each individual class member's shifts worked and address, with a

15  section for any name or address changes.  (Doc. No. 57–3, at 8.)  The claim form specifically

16  states that "[y]ou must complete this Claim Form to be eligible for monetary recovery in

17  settlement of the above titled lawsuit."  (*Id*.)  Defendant's employment records will be presumed

18  determinative, if the parties dispute the number of shifts a class member worked.  (Doc. No. 57–2,

19  at 18:12–21.)  However, if a class member disagrees with the determination of class membership

20  or calculation of his or her number of shifts, the class member will be provided the opportunity to

21  raise such disagreement with the claims administrator and to present any supporting

22  documentation.  (*Id*.)  The claims administrator will have final non-appealable authority to issue a

23  decision with regard to the number of compensable work weeks worked by the class member.

24  (*Id.*)

25      The parties have also submitted the following settlement implementation schedule, with

26  the addition of deadlines from the settlement agreement for the defendant to fund the settlement

27  fund and the claims administrator to provide a declaration of mailing checks to eligible class

28  members, and if uncashed, the donation of *cy pres* amounts.

14

| Event | Timing |
|---|---|
| Deadline for Defendants to Submit Class Member Information to the Claims Administrator. | Within 15 calendar days after Order granting Preliminary Approval |
| Deadline for Claims Administrator to Mail the Notice and the Claim Form to Class Members. | Within 21 calendar days after Order granting Preliminary Approval |
| Deadline for Receipt by Court and Counsel of any Objections to Settlement | Within 30 calendar days after mailing the Notice and Claim Form to Class Members |
| Deadline for Class Members to Postmark Opt-Out Requests | Within 45 calendar days after mailing the Notice and Claim Form to Class Members |
| Deadline for Class Members to Postmark Claim Forms | Within 45 calendar days after mailing the Notice and Claim Form to Class Members |
| Deadline for Class Counsel to file Motion for Final Approval of Settlement | 28 calendar days before Final Approval Hearing |
| Deadline for Class Counsel to file Motion for Attorneys' Fees, Costs and Enhancement Award | 28 calendar days before Final Approval Hearing |
| Deadline for Parties to File Declaration from Claims Administrator of Due Diligence and Proof of Mailing | 28 calendar days before Final Approval Hearing |
| Final Approval Hearing | August 29, 2016 at 3:30 P.M. |
| Defendant funds the settlement fund (QSF) | Within 10 calendar days after Effective Date |
| Deadline for Claims Administrator to mail the Settlement Awards and the Service Fee, and to wire transfer the Attorney's Fees and Costs (if Settlement is Effective) | Within 15 calendar days after Effective Date |

| Claims Administrator provides declaration of mailing checks to Eligible Class Members, and if uncashed, the donation of *cy pres* amounts. | Within 150 calendar days after Effective Date |
|---|---|

## CONCLUSION

For all the reasons set forth above, the court:

1) Confirms the conditional certification of the settlement class for settlement purposes;

2) Grants preliminary approval of the class action settlement set forth in the stipulation of class action settlement and release between plaintiff and defendant;

3) Confirms Westrup & Associates, including Duane Westrup, Esq., and Labor Law Office APC, including Michael L. Carver, as class counsel;

4) Approves Rust Consulting as the claim administrator;

5) Approves the notice of pendency of class action (Doc. No. 57–3, at 2–6) and the claim form (*id.* at 8);

6) Directs that notice be given to the class; and

7) Sets a hearing for final approval of the proposed settlement for August 29, 2016 at 3:30 P.M.; and

8) Adopts the proposed settlement implementation schedule.

IT IS SO ORDERED.

Dated:   **April 19, 2016**

UNITED STATES DISTRICT JUDGE