Marilyn M. Smith   SBN 72719
Ann C. Schneider, SBN 156893
LAW OFFICE OF MARILYN M. SMITH
301 E. Colorado Blvd., Suite 620
Pasadena, California 91101
Telephone: (626) 683-8102
Facsimile:   (626) 683-8702
Email:        marilyn@loomms.com

Attorney for Judgment Creditor NANCY A. UNDERWOOD

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY D. TAYLOR, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX FREIGHT, INC., an Arkansas corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 1:13-cv-01137-DAD-BAM<br><br>NOTICE OF FILING DOCUMENTS IN SUPPORT OF NOTICE OF LIEN |

ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS ACTION ARE NOTIFIED THAT:

The following documents are filed in support of the Notice of Lien filed on August 29, 2016 by Judgment Creditor Nancy A. Underwood (formerly Westrup), by and through her guardian ad litem Sarah M. Stuppi:

1.     Certified copy of "Amended Judgment" dated August 30, 2012 in the matter of *In re Marriage of Westrup*, Los Angeles Superior Court Case No. BD513445, attached as Exhibit 1 and incorporated by reference.

NOTICE OF FILING DOCUMENTS IN SUPPORT OF NOTICE OF LIEN
Page 1

2.    Copy of original reporter's transcript of the proceedings of June 22, 2016 (post-judgment order) in the matter of *In re Marriage of Westrup*, Los Angeles Superior Court Case No. BD513445, attached as Exhibit 2 and incorporated by reference.

The Superior Court has not yet signed a final written order with respect to its order announced in open court at the June 22, 2016 proceedings, at which Judgment Debtor Russell Duane Westrup (Respondent in Case. No. BD513445) was both personally present and represented by counsel. Judgement Creditor will file a certified copy of the written order upon her receipt of same.

Date: September 1, 2016                LAW OFFICE OF MARILYN M. SMITH

By: _____
    Marilyn M. Smith/Ann C. Schneider
    Attorney for Judgment Creditor

NOTICE OF FILING DOCUMENTS IN SUPPORT OF NOTICE OF LIEN

Page 2

**EXHIBIT 1**

Case 1:13-cv-01187-DAD-BAM   Document 76   Filed 09/01/16   Page 4 of 61

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Mary-Lynne Fisher 70839
Law Office of Mary-Lynne Fisher
301 E. Colorado Blvd., Suite 610
Pasadena, California 91101

TELEPHONE NO.: (626) 683-3905    FAX NO. *(Optional):* (626) 683-3982

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* Petitioner Nancy A. Westrup

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: same
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: CENTRAL DISTRICT

**FILED**
Superior Court of California
County of Los Angeles

AUG 3 0 2012

John A. Clarke, Executive Officer/Clerk
By: _____ Deputy
La Trina Woods

MARRIAGE OR PARTNERSHIP OF
PETITIONER: NANCY A. WESTRUP

RESPONDENT: RUSSELL DUANE WESTRUP

| AMENDED **JUDGMENT** | | |
|---|---|---|
| ☒ **DISSOLUTION** | ☐ **LEGAL SEPARATION** | ☐ **NULLITY** |

☐ **Status only**
☐ **Reserving jurisdiction over termination of marital or domestic partnership status**
☐ **Judgment on reserved issues**
**Date marital or domestic partnership status ends:** December 31, 2012

CASE NUMBER:
BD 513 445

1. ☐ This judgment ☐ contains personal conduct restraining orders ☐ modifies existing restraining orders.
   The restraining orders are contained on page(s) _____ of the attachment. They expire on *(date):*

2. This proceeding was heard as follows: ☐ Default or uncontested ☒ By declaration under Family Code section 2336
   ☐ Contested  ☒ Agreement in court  AUG 3 0 2012
   a. Date: ~~February 23, 2012~~ AUG 3 0 2012   Dept.: 2D   Room:
   b. Judicial officer *(name):* Elia Weinbach
   c. ☒ Petitioner present in court    ☒ Attorney present in court *(name):* Mary-Lynne Fisher    ☐ Temporary judge
   d. ☒ Respondent present in court    ☒ Attorney present in court *(name):* Allan A. Sigel
   e. ☐ Claimant present in court *(name):*    ☐ Attorney present in court *(name):*
   f. ☐ Other *(specify name):*

3. The court acquired jurisdiction of the respondent on *(date):* November 19, 2009
   a. ☒ The respondent was served with process.
   b. ☐ The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**

4. a. ☒ Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the status of single persons
      (1) ☒ on *(specify date):* December 31, 2012
      (2) ☐ on a date to be determined on noticed motion of either party or on stipulation.
   b. ☐ Judgment of legal separation is entered.
   c. ☐ Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify):*

   d. ☐ This judgment will be entered nunc pro tunc as of *(date):*
   e. ☐ Judgment on reserved issues.
   f. The ☒ petitioner's ☐ respondent's former name is restored to *(specify):* Nancy Ann Underwood
   g. ☐ Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. ☐ This judgment contains provisions for child support or family support. Each party must complete and file with the court a *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice of Rights and Responsibilities—Health-Care Costs and Reimbursement Procedures and Information Sheet on Changing a Child Support Order* (form FL-192) is attached.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. July 1, 2012]

**JUDGMENT**
**(Family Law)**

Family Code, §§ 2024, 2340, 2343, 2346
www.courts.ca.gov

Martin Dean's
ESSENTIAL FORMS™

| CASE NAME (Last name, first name of each party): WESTRUP, NANCY A. WESTRUP, RUSSELL DUANE WESTRUP | CASE NUMBER: |
|---|---|

4. i. ☐ The children of this marriage or domestic partnership are:
   (1) ☐ Name                                                      Birthdate

   (2) ☐ Parentage is established for children of this relationship born prior to the marriage or domestic partnership
   j. ☐ Child custody and visitation (parenting time) are ordered as set forth in the attached
      (1) ☐ Settlement agreement, stipulation for judgment, or other written agreement which contains the information required by Family Code section 3048(a).
      (2) ☐ Child Custody and Visitation Order Attachment (form FL-341).
      (3) ☐ Stipulation and Order for Custody and/or Visitation of Children (form FL-355).
      (4) ☐ Previously established in another case. Case number:                    Court:
   k. ☐ Child support is ordered as set forth in the attached
      (1) ☐ Settlement agreement, stipulation for judgment, or other written agreement which contains the declarations required by Family Code section 4065(a).
      (2) ☐ Child Support Information and Order Attachment (form FL-342).
      (3) ☐ Stipulation to Establish or Modify Child Support and Order (form FL-350).
      (4) ☐ Previously established in another case. Case number:                    Court:
   l. ☒ Spousal, domestic partner, or family support is ordered:
      (1) ☐ Reserved for future determination as relates to    ☐ petitioner    ☐ respondent
      (2) ☐ Jurisdiction terminated to order spousal or partner support to    ☐ petitioner    ☒ respondent
      (3) ☐ As set forth in the attached Spousal, Partner, or Family Support Order Attachment (form FL-343).
      (4) ☒ As set forth in the attached settlement agreement, stipulation for judgment, or other written agreement.
      (5) ☐ Other (specify):

   m. ☒ Property division is ordered as set forth in the attached
      (1) ☒ Settlement agreement, stipulation for judgment, or other written agreement.
      (2) ☐ Property Order Attachment to Judgment (form FL-345).
      (3) ☐ Other (specify):

   n. ☒ Attorney fees and costs are ordered as set forth in the attached
      (1) ☒ Settlement agreement, stipulation for judgment, or other written agreement.
      (2) ☐ Attorney Fees and Costs Order (form FL-346).
      (3) ☐ Other (specify):

   o. ☐ Other (specify):

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date:

                                                          _____
                                                                          JUDICIAL OFFICER
5. Number of pages attached: 14                           ☒ SIGNATURE FOLLOWS LAST ATTACHMENT

**NOTICE**
Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar property interest. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.
A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.
An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.
Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

Martin Dean's
ESSENTIAL FORMS™

6.    Full Settlement: The Court finds that Petitioner and Respondent stipulate that the intent and purpose of this Stipulated Judgment is to divide, settle, and adjust any and all claims arising from their marital relationship or any other basis including their respective property and other financial rights, interests, and obligations in and to property now owned by them, or which hereafter be acquired by either of them,  and a waiver of any reimbursement claims.

A.    The Court finds that Petitioner and Respondent recognize and intend that this Stipulated Judgment contains provisions which are a compromise of the respective claims of Petitioner and Respondent regarding the value of their community assets, reimbursement claims, spousal support and attorney's fees.

B.    This Stipulated Judgment contains the entire agreement of the parties and cannot be modified except by another writing signed by the parties and further order of court.

7.    Spousal Support:

A.    Respondent is ordered to pay to Petitioner as and for spousal support the sum of $14,750 per month payable one-half on the first day of each month and one-half on the 15th day of each month commencing March 1, 2012, and continuing until Petitioner's remarriage, the death of either party, sale of the La Habra Heights home awarded to Petitioner herein, or further order of court, whichever first occurs.

B.    Commencing on the first day of the month following the close of escrow on the sale of the La Habra Heights home, spousal support shall be reduced to $12,000 per month payable in full on the first day of each month commencing March 1, 2012, and continuing until Petitioner's remarriage, the death of either party, or further order of court, whichever first occurs.

C.    Respondent shall maintain Petitioner as a dependent on all health insurance coverage on which she is currently a dependent until the termination of marital status on December 31, 2012. The cost of maintaining Petitioner as a dependent on such policies is not deductible as spousal support by Respondent and is not taxable income to Petitioner.

JUDGMENT OF DISSOLUTION OF MARRIAGE

8.    Spousal Support Arrears:

A.    The Court finds that Respondent owes Petitioner spousal support arrears of $230,000 including principal and interest through February 15, 2012.

B.    Respondent shall make payments on the spousal support arrears and the equalization payment due Petitioner as set forth in paragraph 15 below.

9.    Property Awarded to Petitioner: The following property whether community, separate or mixed, is awarded and confirmed to Petitioner as her sole and separate property along with any and all encumbrances thereon, except as expressly set forth herein, which she is ordered to assume, pay, appear on behalf of, defend, and hold Respondent harmless therefrom and along with any insurance thereon regardless of the source of premium payments:

A.    Improved real property located within the County of Los Angeles commonly known as 357 Canada Sombre, La Habra Heights, California 90631, and more particularly described as:

**Assessors Parcel No. 8239-044-001**

PARCEL "A": That portion of the Rancho La Habra, in the county of Los Angeles, State of California, as shown on Map of the Northern portion of said Rancho, filed in book 1 page 53 of Record of Surveys, in the office of the county recorder of Los Angeles County, and that portion of Lot 5 of Tract No. 10351, in said county and state, as shown map recorded in book 187 pages 11 and 12 of Maps, in the office of said recorder, described as follows:

Beginning at the most westerly corner of the land conveyed to Joseph J. Pellkofer, by deed recorded May 31, 1957, in book 54660 page 184 of Official Records, in the office of said recorder; thence southeasterly along a curve concave northerly and having a radius of 130.00 feet and a central angle of 57°33'40", a distance of 130.60 feet; thence tangent to said curve North 72°09'25" East 73.85 feet; thence North 0° 43'50" East 42.20 feet to the true point of beginning; thence continuing along said last mentioned line North 0° 43' 50" East 127.44 feet; thence North 17°56'15" West 121.50 feet; thence North 7°32'45" West 226.29 feet; thence South 65° 18'54" East 174.98 feet; thence South 15° 24'25" West 109.36 feet; thence South 7°35'35" East 100.47 feet; thence South 64° 35'35" East 106.21 feet; thence South 39°35'35" East 49.78 feet; thence South 50°24'25" West 74.86 feet; thence South 63° 24'25" West 63.10 feet; thence South 72° 09'25" West 95.88 feet to the true point of beginning.

JUDGMENT OF DISSOLUTION OF MARRIAGE

EXCEPT therefrom all petroleum, coal, oil, naptha, natural gas, and other hydrocarbon substances including asphaltum and brea in, upon and under said land.

PARCEL "B": A non-exclusive easement for road and public utility purposes over a strip of land 60.00 feet wide and being the parcel of land described as Parcel "B" in the land conveyed to Joseph J. Pellkofer, by deed recorded in book 54660 page 184 of said Official Records.

EXCEPT that portion of said land included within the land described in deed to Union Oil Company of California, recorded January 10, 1950 as Instrument No. 879 in book 31923 page 89, Official Records.

PARCEL "C": A non-exclusive easement for road and public utility purposes over a strip of land 20.00 feet wide, being 10.00 feet on each side of the following described center line:

Beginning at the southwest corner of Parcel "A", above described; thence South 0°43'50" West along the southwesterly prolongation of the westerly line thereof 10.55 feet to the true point of beginning; thence North 72° 09'25" East 100.00 feet; thence North 63° 24'25" East 65.00 feet; thence North 50° 24'25" East 86.00 feet; thence North 39°35'35" West 62.00 feet; thence North 64° 35'35" West 103.00 feet; thence North 7° 35'35" West 93.00 feet; thence North 15° 24'25" East 105.69 feet.

PARCEL "D": A non-exclusive easement for private road purposes over those portions of the Rancho La Habra lying within the lines of the of the land conveyed to Union Oil Company of California by deed recorded in book 31923 page 89, Official Records of said county, and hereinafter described as follows:

Parcel 1: Beginning at the northwest corner of said land of Union Oil Company of California; thence North 85° 42'15" East along the north line of said land 59.68 feet to the beginning of a tangent curve concave southeasterly, having a radius of 85.00 feet; thence southwesterly along said curve 104.07 feet to its point of tangency with the west line of said land; thence North 15° 33'17" East along said west line 59.68 feet to the point of beginning.

Parcel 2: Beginning at the northeast corner of said land of Union Oil Company of California; thence South 4°17'45" East along the east line of said land 52.38 feet; thence North 50° 16'55" West, 41.03 feet to the beginning of a tangent curve concave southwesterly having a radius of 85.00 feet; thence northwesterly along said curve 65.29 feet to its point of tangency with the north line of said land of Union Oil Company; thence North 85°42'15" East along said north line of 88.57 feet to the point of beginning.

**Assessors Parcel No. 8239-045-019**

JUDGMENT OF DISSOLUTION OF MARRIAGE

THAT PORTION OF THE RANCHO LA HABRA, AS SHOWN ON MAP OF THE NORTHERN PORTION OF SAID RANCHO IN THE CITY OF LA HABRA HEIGHTS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA RECORDED IN BOOK 1, PAGE 53 OF LICENSED SURVEYS IN THE OFFICE OF THE RECORDER OF LOS ANGELES COUNTY, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE NORTHERLY LINE OF THE LAND CONVEYED TO UNION OIL COMPANY OF CALIFORNIA BY DEED RECORDED JANUARY 10, 1950 AS INSTRUMENT NO. 879 IN BOOK 31923, PAGE 89 OF OFFICIAL RECORDS OF SAID COUNTY.   DISTANT THEREON NORTH 85 DEGREES 42 MINUTES 15 SECONDS EAST 284.55 FEET FROM THE NORTHWEST CORNER THEREOF; SAID POINT BEING HEREINAFTER REFERRED TO AS POINT "A"; THENCE NORTH 31° 59' 03" EAST 234.93 FEET; THENCE NORTH 1° 34' 38" EAST 93.50 FEET; THENCE SOUTH 85° 08' 42" EAST 420.67 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 14° 14' 08" WEST 287.96 FEET; THENCE NORTH 24° 15' 31" EAST 195.34 FEET; THENCE SOUTH 65° 44' 29" EAST 233.00 FEET; THENCE SOUTH 24° 15' 31" WEST 139.81 FEET; THENCE SOUTH 38° 23' 15" WEST 172.85 FEET; THENCE SOUTH 07° 32' 45" EAST 226.29 FEET; THENCE SOUTH 17° 56' 15" EAST 121.50 FEET; THENCE SOUTH 86° 12' 32" WEST 62.08 FEET; THENCE NORTH 14° 14' 08" WEST 253.28 FEET; TO THE TRUE POINT OF BEGINNING.

B.      Household furniture and furnishings and artwork in her possession;

C.      Personal property including all jewelry in her possession;

D.      2005 Mercedes SLK automobile, California license number FABNAU;

E.      Bank of America savings and checking accounts as disclosed on her Final Declaration of Disclosure;

F.      All right, title and interest in Respondent's interest in the Westrup, Klick LLP 401k plan including any separate property interest of Respondent to be awarded to her pursuant to a Qualified Domestic Relations Order;

G.      Proceeds of sale of the real property located at 421 Opal Cove Way, Seal Beach, California, previously distributed to her;

H.      Proceeds of sale of the real property located at 8215 White Oak Ridge, No. 2,

---

JUDGMENT OF DISSOLUTION OF MARRIAGE

Marriage of Westrup - Case No. BD 513 445                                    Page 6

Orange, California, previously distributed to her;

   I.     Proceeds from the liquidation of the River Source annuity previously distributed to Petitioner;

   J.     All right, title and interest in Sun Life of America policy number XXXXX0959 insuring the life of Petitioner;

   K.     Any and all assets acquired since the date of separation, October 8, 2009.

10.    Property Awarded to Respondent: The following property, whether community, separate or mixed, is awarded and confirmed to Respondent as his sole and separate property along with any and all encumbrances thereon, which he is ordered to assume, pay, appear on behalf of, defend, and hold Petitioner harmless therefrom and along with any insurance thereon regardless of the source of premium payments:

   A.     Respondent's interest in the law firm known as Westrup, Klick LLP;

   B.     Household furniture and furnishings and artwork in his possession;

   C.     2005 Mercedes E55 automobile, California license number ChumRun;

   D.     Interest in improved real property located within the County of Los Angeles, commonly known as 6548 E. El Roble Street, Long Beach, California 90815 (Assessor's Parcel No: 7239-010-031) and more particularly described as

> THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LONG BEACH, COUNTY OF Los Angeles, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:
> Lot 147 of Tract No. 20697, in the City of Long Beach, County of Los Angeles, State of California, as per map recorded in Book 549 Page(s) 4 to 8 inclusive of maps, in the office of the County Recorder of said county.
>
> Except therefrom all minerals, gas, oil, petroleum, naphtha, and other hydrocarbon substances in and upon said land, together with all necessary and convenient rights to explore for, develop, produce, extract and take the same subject to the express limitation that any and all operations for the exploration, development, production, extraction and taking of any of said substances shall be carried on at a level below the depth of 500 feet from the surface of said land by means of mines, wells, derricks and/or

---

JUDGMENT OF DISSOLUTION OF MARRIAGE

Marriage of Westrup - Case No. BD 513 445                                        Page 7

other equipment from surface locations on adjoining or neighboring land lying outside of the land herein described and subject further to the express limitation that the foregoing reservation shall in no way be interpreted to include any right of entry in and upon the surface of said land, as reserved by Fred H. Bixby Ranch Company, a corporation, in deed recorded December 7, 1953 in Book 43319 Page 259 of Official Records.

E.      Interest in improved real property located with the County of Orange, commonly known as 9859 Peacock Circle, Fountain Valley, California 92708 (Assessor's Parcel No. 157-042-29) and more particularly described as

The land referred to herein is situated in the State of California, County of Orange, City of Fountain Valley, and described as follows:

Lot 72 of Tract No. 4895, in the City of Fountain Valley, County of Orange, State of California, as per map recorded in Book 184, Page(s) 5 to 7 inclusive of Miscellaneous Maps, in the office of the County Recorder of said County.

F.      Bank of America checking account as disclosed on his Final Declaration of Disclosure;

G.      Interest in H. Salt Lakewood Blvd. Partnership;

H.      Any remaining assets of the defunct Jaqu's restaurant (which Respondent has represented have no value); and

I.      Any and all assets and accumulations acquired since the date of separation, October 8, 2009, except as expressly set forth herein.

11.      Both parties warrant to each other that to the best of his or her knowledge there are no community assets or mixed assets or assets held in his or her name or in the name of another for his or her benefit other than those set forth in this Stipulated Judgment; no outstanding community obligations or any obligation of either party for which the other party could be held personally liable; that there are no undisclosed encumbrances on any asset or assets awarded to either party; and that all joint credit card

JUDGMENT OF DISSOLUTION OF MARRIAGE

Marriage of Westrup - Case No. BD 513 445                                      Page 8

accounts have been closed or transferred to the sole name of one party. In the event that any community assets or obligations or any obligation of one party for which the other is held liable are later discovered, the court retains jurisdiction to divide those assets, to assign those obligations, to order reimbursement, and to assess attorneys fees and costs as provided by law.

12. The following debts, whether community or separate, are awarded and confirmed to Petitioner as Petitioner's separate debts and she is ordered to assume, pay and hold Respondent harmless therefrom:

A. Any and all obligations incurred after the date of separation, and not otherwise assigned herein;

B. Credit card obligations to Nordstrom and on American Express account number xxxxxxxxx72007; and

C. All debts encumbering all assets awarded to Petitioner as set forth in this Stipulated Judgment.

13. The following debts, whether community or separate, are awarded and confirmed to Respondent as Respondent's separate debts and he is ordered to assume, pay and hold Petitioner harmless therefrom:

A. Any and all obligations incurred after the date of separation, and not otherwise assigned herein;

B. Any credit card debts in his name incurred at any time and any credit card debts in the name of Petitioner or of the parties jointly including but not limited to Chase and Bank of America accounts in the name of Petitioner;

C. All debts encumbering all assets awarded to Respondent as set forth in this Stipulated Judgment;

D. Ford GT automobile loan;

E. California Bank & Trust loan;

JUDGMENT OF DISSOLUTION OF MARRIAGE

Marriage of Westrup - Case No. BD 513 445                                             Page 9

F.    Beach Business Bank loan;

G.    Any and all sums due on the parties' joint federal and state income tax returns for the calendar year 2009.

14.    Orders re Respondent's 2010 federal and state income tax returns: The court finds that the parties filed separate income tax returns for 2010.  Respondent is ordered forthwith to file amended federal and state income tax returns which report all of the income that his original returns attempted to split with Petitioner and to claim the exclusion for spousal support paid in 2010.

15.    Equalization and Spousal Support Arrears Payments:  To equalize the division of the community property assets and obligations set forth herein, the Respondent shall pay to the Petitioner the sum of $275,000.  This equalization payment shall not be dischargeable in any bankruptcy proceeding.  The equalization payment and the spousal support arrears established in paragraph 8.A. above shall be paid as follows:

A.    Commencing on the first of the month following close of escrow on the sale of the Canada Sombre home, Respondent shall pay to Petitioner the sum of $3,000 per month payable one-half on the first day of each month and one-half on the 15th day of each month and continuing thereafter until the full amount of spousal support arrears and the equalization payment ordered herein are satisfied.

B.    Commencing February 1, 2013, Respondent shall pay to Petitioner a portion of his share of the profits of his law firm Westrup, Klick LLP calculated as follows:

(1) Of Respondent's 53% share of the profits, 20% may be retained in the firm as a reserve for future expenses.  Of the remaining 80%, Respondent shall pay two-thirds to Petitioner less the sum of the $3,000 per month payments that he has made in that accounting period.

(2) The payment due February 1st of each year shall be based upon the law firm's internal profit calculations and shall be subject to adjustment later in the year when the law firm's outside accountants prepare reviewed financial statements.  Such internal profit calculations and reviewed financial statements shall be delivered upon completion. If the amount of Respondent's profits

JUDGMENT OF DISSOLUTION OF MARRIAGE

is adjusted upward, he shall pay the additional amount to Petitioner according to the formula immediately above forthwith. If the amount of Respondent's profits is adjusted downward, he shall receive a credit for the excess amount paid against the payment due the following February 1st.

(3)    The annual payments under this section shall continue until the entire amount of the equalization payment and the spousal support arrears plus applicable interest are paid in full.

C.    Said payments of $3,000 per month and annual payments from law firm profits shall be credited first to the equalization payment. Respondent shall not deduct any part of the $3,000 per month payment or any part of the payments from law firm profits as spousal support until the full $275,000 equalization payment plus interest according to law has been paid.

16.    Security for Payment of Spousal Support Arrears and Equalization Payment: Until the spousal support arrears and the equalization payment plus all applicable interest are paid in full, Petitioner shall have a recordable lien on all of Respondent's share of the profits of Westrup Klick LLP and on Respondent's interest in the real properties awarded to Respondent herein. Until the spousal support arrears and the equalization payment plus all applicable interest are paid in full, Respondent shall have a fiduciary duty to Petitioner to enforce the terms of the written agreements with the co-owners of the real properties awarded to him herein so that Petitioner's security interest in Respondent's interest in those properties is preserved.

17.    Additional Security for Payment of Spousal Support Arrears and Equalization Payment: Until the spousal support arrears and the equalization payment plus all applicable interest are paid in full and for as long as Respondent owes Petitioner a duty of spousal support, Respondent has a fiduciary duty to ensure that the policy of insurance on his life with Jackson Life Insurance Company, which is owned by him, but carried on the books of Westrup Klick LLP, and which names the law firm as the beneficiary, is maintained in full force and effect. Petitioner is awarded a lien on the proceeds of any such policy and Respondent shall provide to Petitioner all relevant information regarding said policy

upon request.

18.  Waiver of Claims: In arriving at the equalization payment set forth immediately above, the parties have considered disputes regarding the characterization and valuation of their assets, as well as claims for reimbursement. By this agreement, they waive any and all such claims. Except as otherwise set forth in this Stipulated Judgment, the Court finds that Petitioner and Respondent have each waived any and all rights he or she may otherwise have against the other or the community for reimbursements, offsets and credits with respect to the following:

A.    Rights under Family Code sections 915, 916 and 920;

B.    Pursuant to Epstein (credits) (In Re Marriage of Epstein (1979) 20 Cal.3d 76; 154 Cal. Rptr. 413), and its progeny, all rights to reimbursement for which a party or the community may be entitled as a result of the payment of community obligations since the date of separation;

C.    Pursuant to Watts (charges) (In re Marriage of Watts (1985) 171 Cal. App.3d 366; 217 Cal. Rptr. 301), and its progeny, all rights to reimbursement for which a party or the community may be entitled as a result of one party's use of community or co-owned assets since separation;

D.    All other rights to reimbursement under Family Code section 2640, or otherwise, for separate property contributed to the acquisition or maintenance of community or co-owned property;

E.    All rights to reimbursement under Family Code section 2641, or otherwise, due the community or a party for contributions made by the community or either of the parties to the education or training of a party;

F.    Claims for fair rental value of exclusive use and possession of community property post separation; and

G.    Voluntary payment of expenses incurred for and on behalf of the other party post-separation.

19.    Attorney's Fees:    Respondent is ordered to pay the $25,000 in attorney's fees and accountant's fees  previously ordered in 2009 directly to Petitioner's counsel on or before April 20,

JUDGMENT OF DISSOLUTION OF MARRIAGE

2012. If Respondent pays the $25,000 in full on or before April 20, 2012, such sum shall be in full satisfaction of his obligation to contribute to Petitioner's fees and costs through the entry of this Judgment of Dissolution.

20.    Tax Consequences/Basis: The court finds that the parties intend/acknowledge that

A.    The transfer of assets pursuant to the Stipulated Judgment qualify for non-recognition of capital gains pursuant to Internal Revenue Code section 1041;

B.    Neither Petitioner nor Respondent shall incur any income tax liability as a result of the transfer of assets pursuant to this agreement;

C.    Each party is ordered to take the property awarded or confirmed to him or to her herein at its existing tax basis as of the date of entry of judgment and is restrained from asserting an increased tax basis based on the distribution of assets herein and is ordered to indemnify the other party and hold him or her harmless from any loss in the event such an increased tax basis is asserted.

21.    Responsibility for Any Additional Income Taxes Due on Joint Returns Prior to 2009:

A.    The parties filed joint federal and state income tax returns during their marriage. The parties acknowledge and represent that taxes shown on said returns have heretofore been paid and that neither of them is aware of any claim by any tax authority that any additional tax is due upon any joint return filed for tax years prior to 2009.

B.    Should any deficiency be assessed or proposed to be assessed with respect to any joint income tax returns filed by the parties for any tax year prior to 2009, or if any other tax notices are received by either party, the parties are ordered to notify one another within five (5) days of receipt of each notice and are ordered to cooperate with each other in contesting, opposing, negotiating, or settling such assessment or proposed assessment.

22.    Waiver of Further Discovery Rights:    The parties, with each of their desires being an early and amicable settlement of all matters covered in this stipulated judgment, do not desire to exercise any further discovery rights, including but not limited to depositions, interrogatories, requests for

JUDGMENT OF DISSOLUTION OF MARRIAGE

Marriage of Westrup - Case No. BD 513 445                                                    Page 13

admissions, rights to subpoena records, rights to appraisers, rights to actuaries, rights to have the other party examined by a vocational rehabilitation expert, the rights to have a court of competent jurisdiction determine the division of assets, the award of support, the responsibility for attorney's fees and costs and all other issues. The parties waive all of the aforesaid rights and specifically instruct their counsel not to exercise such rights on their behalf. This waiver, however, does not limit either party's right to conduct discovery related to enforcement of this judgment nor does it constitute a waiver of either party's statutory disclosure obligations.

23.    Waiver of Marital Rights The court finds that both parties have waived any and all right to inherit the estate of the other at his or her death, or to claim any right or interest in the property of the other, including but not limited to any right of dower or curtsey, and the right to take as a beneficiary of a policy of life insurance on the life of the other, except as set forth herein, unless under a Will or designation of beneficiary executed subsequent to the effective date hereof, or to claim any allowance as Husband or Wife or probate homestead for Husband or Wife or to act as administrator of the estate of the other, or to act as executor under a Will of the other unless under a Will executed subsequent to the effective date hereof. Nothing in this paragraph shall be construed as a waiver of Petitioner's right to take as a successor beneficiary of the trust to be established pursuant to paragraph 15 whether said trust is executed before, concurrently with or after the execution of this Stipulated Judgment.

24.    Further Waivers: The court finds that the parties have waived the right to a trial and to notice of trial for the purpose of having the court grant a Judgment of Dissolution pursuant to the terms of this agreement, which may be heard by a court commissioner sitting as a judge pro tem. The parties waive the right to appeal, the right to request a statement of decision, and the right to move for a new trial or reconsideration, provided that the court shall retain jurisdiction to enforce and implement the terms of this Stipulated Judgment.

25.    Voluntary Execution: Petitioner and Respondent each represent that this Stipulated Judgment has been entered into voluntarily, free from any duress, fraud, undue influence, mistake,

JUDGMENT OF DISSOLUTION OF MARRIAGE

Marriage of Westrup - Case No. BD 513 445                                                     Page 14

coercion, or misrepresentation of any kind. Each party has acknowledged for herself/himself upon entering into this Stipulated Judgment (i) that she/he did not obtain any unfair advantage as a result of this Stipulated Judgment; (ii) that there was sufficient mutual consideration for her/him to agree to the terms and provisions of this Stipulated Judgment; (iii) that she/he was not under any undue influence or pressure in agreeing to the terms and provisions of this Stipulated Judgment; and (iv) that each entered into this Stipulated Judgment knowingly and voluntarily.

26.   Specific Releases:   Effective as of the date this Stipulated Judgment is executed by Petitioner, Respondent, and his/her respective counsel, and except as otherwise provided in this Stipulated Judgment, each party shall release the other from any and all liabilities, debts, or obligations on all property awarded to each party in this Stipulated Judgment that have been or will be incurred, and from any and all claims and demands. The Court finds that Petitioner and Respondent agree that by this Stipulated Judgment, he/she intends to settle all aspects of his/her marital rights. Each of the parties shall also release the other and the other's heirs, representatives of and from any and all other claims, demands, costs, expenses, liabilities, actions and causes of action based on, arising out of, or in connection with any matter, fact, or theory occurring prior to the execution of this Stipulated Judgment, except that nothing herein contained shall relieve or discharge either Party from any of his or her obligations under this Stipulated Judgment.

//

//

//

JUDGMENT OF DISSOLUTION OF MARRIAGE

Marriage of Westrup - Case No. BD 513 445

Page 15

27.   Execution of Further Documents:   Each party shall, upon demand, execute and deliver all documents necessary to carry out the terms of this stipulated judgment and upon failure to do so, the court may, upon appropriate application, appoint the Clerk of the Superior Court as its commissioner to execute documents specified by court order.

Dated: Aug 27, 2012

NANCY A. WESTRUP
Petitioner

Dated:

RUSSELL DUANE WESTRUP
Respondent

APPROVED AS TO FORM AND CONTENT:

Dated: 8/29/12

LAW OFFICE OF MARY-LYNNE FISHER

By Mary-Lynne Fisher
Mary-Lynne Fisher
Attorneys for Petitioner

Dated:

LAW OFFICES OF ALLAN A. SIGEL

By
Allan A. Sigel
Attorney for Respondent

Dated:

ELIA WEINBACH
Judge of the Superior Court

JUDGMENT OF DISSOLUTION OF MARRIAGE

Marriage of Westrup - Case No. BD 513 445                                    Page 16

27. <u>Execution of Further Documents</u>: Each party shall, upon demand, execute and deliver all documents necessary to carry out the terms of this stipulated judgment and upon failure to do so, the court may, upon appropriate application, appoint the Clerk of the Superior Court as its commissioner to execute documents specified by court order.

Dated: _____

NANCY A. WESTRUP
Petitioner

Dated: 8/29/12

RUSSELL DUANE WESTRUP
Respondent

APPROVED AS TO FORM AND CONTENT:

Dated: _____

LAW OFFICE OF MARY-LYNNE FISHER

By_____
    Mary-Lynne Fisher
    Attorneys for Petitioner

Dated: 8/29/2012

LAW OFFICES OF ALLAN A. SIGEL

By Allan A. Sigel
    Allan A. Sigel
    Attorney for Respondent

Dated: 8/30/2012

ELIA WEINBACH
Judge of the Superior Court

JUDGMENT OF DISSOLUTION OF MARRIAGE

Marriage of Westrup - Case No. BD 513 445

Page 16

I certify that this is a true and correct copy
of the original __Judgment__ on
file in this office

AUG 3 1 2016

SHERRI R. CARTER, Executive Officer/Clerk of
the Superior Court of California County of Los Angeles

By: _____ , Deputy

B.CLARK

**EXHIBIT 2**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT NO. 2D                    HON. MARC D. GROSS, JUDGE

IN RE THE MARRIAGE OF:            )
                                  )
NANCY A WESTRUP                   )
                    PETITIONER,   )
                                  )
            AND                   )        NO. BD513445
                                  )
                                  )
RUSSELL DUANE WESTRUP             )
                                  )
                    RESPONDENT.   )
                                  )
_____ )

--OOO--


REPORTER'S TRANSCRIPT OF PROCEEDINGS

WEDNESDAY, JUNE 22, 2016




APPEARANCES:

        FOR THE PETITIONER:      MARILYN M. SMITH
                                 301 E. COLORADO #620
                                 PASADENA, CA  91101


        FOR THE RESPONDENT:      WAIL SARIEH
                                 2107 N. BROADWAY #308
                                 SANTA ANA, CA  92706




**ORIGINAL**

                                 LORI-ANN GERTLER, CSR NO. 3775
                                 OFFICIAL REPORTER

Case 1:13-cv-01137-DAD-BAM   Document 76   Filed 09/01/16   Page 24 of 61

LOS ANGELES, CALIFORNIA; WEDNESDAY, JUNE 22, 2016

P.M. SESSION

DEPARTMENT NO. 2D                    HON. MARC D. GROSS, JUDGE

(APPEARANCES AS HERETOFORE NOTED.)

(LORI-ANN GERTLER, CSR #3775, OFFICIAL REPORTER)

THE COURT:  NUMBER 10, WESTRUP.

MS. SMITH:  MARILYN SMITH APPEARING ON BEHALF OF PETITIONER, NANCY UNDERWOOD, WHO IS PRESENT AND IS REPRESENTED BY HER GUARDIAN AD LITEM, SARAH STUPPI, WHO IS APPEARING BY COURT CALL.

MR. SARIEH:  GOOD AFTERNOON.  WAIL SARIEH ON BEHALF OF RESPONDENT, WHO'S NOT PRESENT.

THE COURT:  GOOD AFTERNOON TO YOU BOTH.  HAVE A SEAT, IF YOU'D LIKE.

MS. SMITH:  THANK YOU, YOUR HONOR.

THE COURT:  THIS IS BD513445.

THE CLERK:  WE HAVE AN APPEARANCE BY MS. STUPPI ON COURT CALL.

THE COURT:  OKAY.

THE CLERK:  MS. STUPPI, ARE YOU -- THIS IS THE CLERK.

MS. STUPPI:  YES, I AM.

THE COURT:  THE COURT HAS JUST CALLED YOUR CASE. THANK YOU.

MS. STUPPI:  THANK YOU.

MR. SARIEH:  SO YOUR HONOR, MAY I PRESENT AN INITIAL REQUEST FOR A BRIEF CONTINUANCE?

THE COURT:  ANOTHER CONTINUANCE?

MR. SARIEH:  YOU'VE NEVER GRANTED ANY.

THE COURT:  THIS THING HAS BEEN CONTINUED, I DON'T KNOW HOW MANY TIMES.  LET ME SEE WHAT WE'RE HERE ON.

MR. SARIEH:  IT WAS CONTINUED?

THE COURT:  HANG ON ONE SECOND.  LET ME BRING MYSELF UP TO SPEED ON THE HISTORY OF THIS BEFORE I FIGURE OUT WHAT YOU'RE ASKING FOR NOW.  PETITIONER'S REQUEST FOR ORDER FILED DECEMBER 18TH?

MS. SMITH:  YES, YOUR HONOR.

THE COURT:  IS THAT WHAT WE'RE ON FOR?

MS. SMITH:  YES, YOUR HONOR, INITIALLY SET FOR HEARING FEBRUARY 5TH.

THE COURT:  LET ME FIND THAT PLEADING IN HERE. IT'S NOT EVEN IN THIS VOLUME.  I FOUND IT.  YES, I RECOGNIZE THE ATTACHMENT 8.  YOU ASKED FOR ALL SORTS OF DIFFERENT THINGS INCLUDING MODIFICATION OF THE JUDGEMENT, APPOINTMENT OF A RECEIVER, INJUNCTIVE ORDERS, AN ORDER DETERMINING SETTING OF ARREARAGES.  OKAY.  I KNOW WE APPOINTED A 730 EXPERT.

MS. SMITH:  YES.

THE COURT:  WE FINALLY GOT THE REPORT IN.

MS. SMITH:  YES.

THE COURT:  AND YOU WISH TO CONTINUE THE HEARING NOW BECAUSE --

MR. SARIEH:  WELL, FOR GOOD REASON.  TODAY AROUND 11:00 O'CLOCK IN THE MORNING, MY CLIENT CALLED ME AND INFORMED ME THAT THE PETITIONER IN THIS MATTER HAS BEEN

ADMITTED TO THE HOSPITAL AND SHE HAS TO GO TO THE URGENT CARE OR TO THE INTENSIVE CARE UNIT. AND THAT HE WAS ASKED BY HIS DAUGHTER COURTNEY TO COME AND BE OF EMOTIONAL SUPPORT. AND SO I ASKED MY CLIENT TO GIVE ME SOMETHING FROM THE HOSPITAL SO I CAN CONVINCE YOU, YOUR HONOR, OF THE REQUEST OR HAVE COURTNEY TEXT ME SOMETHING TO THAT AFFECT.

APPARENTLY, MY CLIENT ASKED COURTNEY WHO GOT REALLY UPSET. HE ATTEMPTED TO GO TO THE HOSPITAL. HE WAS -- FROM WHAT I'M TOLD, WAS EXCLUDED BY THE GUARDIAN AD LITEM. I WAS ABLE TO FINALLY GET AHOLD OF HIM.

THE COURT: WHO'S THE GUARDIAN AD LITEM?

MR. SARIEH: MS. STUPPI ON THE PHONE. THAT IS PETITIONER'S SISTER.

THE COURT: SHE'S A CONSERVATOR?

MR. SARIEH: NO. SHE'S GUARDIAN AD LITEM.

THE COURT: OKAY.

MR. SARIEH: AND I WAS ABLE TO GET AHOLD OF MY CLIENT ABOUT 1:27. AND HE TOLD ME THAT HE'S NOT WITH COURTNEY ANYMORE. AND I SAID YOU BETTER DRIVE HERE. AND HE INFORMED ME THAT COMING FROM LONG BEACH TO HERE, IT WOULD TAKE ABOUT 45 MINUTES TO DRIVE. SO IF WE CAN HAVE A BRIEF CONTINUANCE, THAT WOULDN'T PREJUDICE ANYBODY. A WEEK?

THE COURT: HERE IS THE PROBLEM. I WOULD LOVE TO BE ABLE TO ACCOMMODATE EVERYBODY WHO ASKS FOR BRIEF CONTINUANCES, WHICH HAPPENS FREQUENTLY. BUT WE HAVE A CALENDAR CRUNCH SUCH THAT I CAN'T ACCOMMODATE EVERYBODY

WHEN THEY ASK FOR A BRIEF CONTINUANCE, BECAUSE I DO IT ON TOP OF THE ALREADY FULL CALENDAR THAT DAY.

MR. SARIEH:  WELL, YOUR HONOR --

THE COURT:  AND I NEED TO MAKE SURE THAT I'M PREPARED FOR THE FULL CALENDAR THAT'S ALREADY ON FOR THAT DAY.

MR. SARIEH:  I APOLOGIZE.

THE COURT:  AND I HAVE VERY LITTLE TIME TO PREPARE FOR THE CALENDARS THAT ARE ON EACH DAY.  I'M USUALLY IN TRIAL ON MONDAY AND TUESDAY, AND I HAVE FULL CALENDARS WEDNESDAY, THURSDAY AND FRIDAY.

MR. SARIEH:  I CAN IMAGINE THAT.  AND IT WON'T BE THE FIRST TIME I HAVE TRIED A CASE WITHOUT MY CLIENT'S PRESENCE.  HOWEVER, THIS IS --

THE COURT:  IS THERE ANYTHING ELSE THAT'S IN DISPUTE AFTER WE GOT THIS REPORT?

MR. SARIEH:  NO.  THE REPORT IS NOT IN DISPUTE.

THE COURT:  SO WHAT ELSE DO WE NEED TO RESOLVE?

MR. SARIEH:  WELL, TWO THINGS.  THE WORST REMEDY THAT WAS ASKED BY THE PETITIONER IS APPOINTMENT OF THE RECEIVER, WHICH I NEED -- ASIDE FROM THE POINTS AND AUTHORITIES AND THE ARGUMENT AGAINST OF COURSE GRANTING IT, I WANT MY CLIENT TO TESTIFY THAT IF A RECEIVER IS APPOINTED UNDER THE FEDERAL RULES, AND BECAUSE HE'S A CLASS ACTION ATTORNEY IF YOU RECALL, HE CANNOT DO ANY CLASS ACTIONS ANYMORE.  SO BASICALLY, YOU'RE CUTTING OFF HIS LIVELIHOOD.  THAT'S NUMBER ONE.

THE COURT:  WHAT IF WE DON'T ADDRESS THE RECEIVER

TODAY?

MR. SARIEH:  IF YOU DON'T ADDRESS THE RECEIVER, I HAVE NO PROBLEM.  THE ONLY OTHER ISSUE IS THE FORENSIC ACCOUNTANT GAVE US TWO FIGURES IN THE REPORT REGARDING THE -- I BELIEVE THE EQUALIZATION PAYMENT.  AND THOSE TWO FIGURES, THEY ARE VASTLY DIFFERENT.  IT DEPENDS ON WHETHER THE COURT WILL SAY A GUARANTEED -- THERE'S A GUARANTEED PAYMENT.  BECAUSE THE JUDGEMENT DID NOT SPECIFY WHETHER THERE IS A GUARANTEED PAYMENT FROM THE OLD FIRM.

THE COURT:  I DON'T EVEN REMEMBER THAT ISSUE BEING RAISED IN THE RFO.

MS. SMITH:  IT WAS NOT, YOUR HONOR.

MR. SARIEH:  IT WAS NOT, YOUR HONOR.

MS. SMITH:  IT WAS NOT.

MR. SARIEH:  THIS ISSUE WAS RAISED ACTUALLY BY OUR FORENSIC ACCOUNTANT.

THE COURT:  I THOUGHT IT WAS JUST A $275,000 EQUALIZATION PAYMENT.

MR. SARIEH:  CORRECT.  BUT THE WAY SHE CALCULATED -- AND I'M TALKING -- SHE IS MS. CARLISLE, C-A-R-L-I-S-L-E.  SHE SAID IT DEPENDS BECAUSE THE JUDGEMENT IS SO AMBIGUOUS.

THE CLERK:  THIS IS THE CLERK, DEPARTMENT 2D. WE'D LIKE TO REQUEST MS. STUPPI TO STOP MOVING AROUND. WE'RE HEARING A LOT OF ENVIRONMENTAL NOISES COMING FROM THE SYSTEM; IS THAT ALL RIGHT?

MS. STUPPI:  I'M SORRY.  I DIDN'T REALIZE I WAS MOVING AROUND MUCH.  I APOLOGIZE TO THE COURT.

THE CLERK: THANK YOU.

THE COURT: WHAT'S THE PARAGRAPH OF THE JUDGEMENT THAT'S AMBIGUOUS? I HAVE A COPY OF IT HERE.

MR. SARIEH: DID YOU RECEIVE A COPY OF THE REPORT? I THINK THAT'S A GOOD SHORTCUT.

THE COURT: YES, I DID. IT DOESN'T SAY WHAT PARAGRAPH. IT'S JUST PARAGRAPH 7 OF THE REPORT SAYS PURSUANT TO THE JUDGEMENT, MR. WESTRUP WAS ORDERED TO PAY, ET CETERA, ET CETERA.

MR. SARIEH: RIGHT. SO GO TO THE LAST PAGE OF THE REPORT, PARAGRAPH 10.

THE COURT: BUT THEY DON'T TELL ME WHAT PART OF THE JUDGEMENT IS AMBIGUOUS.

MS. SMITH: YOUR HONOR, IF I MAY, ON THE JUDGEMENT, I BELIEVE IT'S PARAGRAPH 15, WHICH IS ON PAGE 10 OF THE JUDGEMENT.

THE COURT: THANK YOU.

MS. SMITH: AND THAT'S EXHIBIT 1 TO OUR RFO.

THE COURT: I GOT IT. IT SAYS 275,000. WHY IS THAT AMBIGUOUS?

MR. SARIEH: BECAUSE IT'S CALCULATED, AS YOU SAY, AND IT HAS TO BE UNDER THIS PARAGRAPH. IT HAS TO BE PAID AT $3,000 AFTER THE SALE OF THE HACIENDA HEIGHTS RESIDENCE. AND THEN --

MS. SMITH: CANADA SOMBRE, C-A-N-A-D-A; S-O-M-B-R-E.

THE COURT: SUBPARAGRAPH A OF PARAGRAPH 15 TALKS ABOUT PAYMENT OF SPOUSAL SUPPORT ARREARS. SUBPARAGRAPH B

SAYS RESPONDENT WILL PAY A PORTION OF ITS SHARE OF THE PROFIT. I DON'T KNOW WHAT THAT'S GOT TO DO WITH THE 275,000, IF ANYTHING.

MR. SARIEH: I AM NOT A FORENSIC ACCOUNTANT. AND THAT'S THE ONLY THING. IF YOU LOOK AT THE REPORT, IT STATES UNDER PARAGRAPH 11 OF THE REPORT, I HAVE DETERMINED BASED ON PROFITS ONLY, THE PAST DUE AMOUNT WAS APPLICABLE INTEREST AT THE RATE OF 10 PERCENT WHICH TOTALS $291,000.

THE COURT: SO THIS 15B FIGURE IS IN ADDITION TO THE 275?

MS. SMITH: NO, YOUR HONOR. IT'S A PAYMENT SCHEDULE.

MR. SARIEH: IT'S A PAYMENT SCHEDULE. HOW YOU GOING TO PAY THE 275? THAT'S WHAT IT SAYS.

THE COURT: THAT'S WHAT IT SAYS.

MS. SMITH: WELL, YOUR HONOR, IF I MAY.

THE COURT: I DON'T THINK IT SAYS THAT.

MS. SMITH: IF I MAY, THE 275,000 WAS A STAND ALONE NUMBER FOR THE EQUALIZATION PAYMENT SPECIFICALLY STATING IS NOT DISCHARGEABLE IN THIS BANKRUPTCY. IN ADDITION, THERE WERE SPOUSAL SUPPORT ARREARS PLUS ONGOING SPOUSAL SUPPORT. AND SO WHAT THE PARTIES DID WAS THEY CAME UP WITH A PAYMENT SCHEDULE, BECAUSE MR. WESTRUP CLAIMED BACK IN 2012 THAT HE COULDN'T PAY IT ALL UPFRONT. AND SO PART OF IT WAS PEGGED TO WHEN MS. UNDERWOOD SOLD HER HOME, WHICH HAPPENED LAST SEPTEMBER. AND THE OTHER PART WAS PEGGED TO A CALCULATION OF THE PROFITS OF THE LAW FIRM HE WAS WITH AT THE TIME.

THE COURT:  BUT IT'S STILL -- IT'S CAPPED AT 275 THE WAY I READ THIS.

MS. SMITH:  FOR THE EQUALIZATION PAYMENT, THAT'S CORRECT.

THE COURT:  SO WHAT'S THIS REPORT GIVING ME TWO DIFFERENT CALCULATIONS FOR?

MR. SARIEH:  THAT'S WHY I NEED MY CLIENT.  I WAS NOT THERE AT THE TIME OF DRAFTING THIS JUDGEMENT.

MS. SMITH:  WELL, THE --

THE COURT:  WELL, COUNSEL JUST CONCEDED IT'S CAPPED AT 275.  SO I DON'T CARE WHAT THE PAYMENT SCHEDULE IS.  I CARE ABOUT WHAT'S DUE AND OWING.  THAT'S WHAT SHE WAS SUPPOSED TO FIGURE OUT.

MR. SARIEH:  HOW ABOUT IF WE CAN SAY THAT HE OWES THE 291,000?

THE COURT:  THAT'S WHAT IT SOUNDS LIKE TO ME.

MR. SARIEH:  OKAY.  I'M GOOD WITH THAT.  IF THEY CONCEDE TO THAT, I'M OKAY.

THE COURT:  WELL, THERE WAS NO ISSUE RAISED IN THE REQUEST FOR ORDER THAT THERE WAS MORE THAN THAT DUE.

MS. SMITH:  RIGHT.  THAT WAS -- THE AMOUNT IN THE JUDGEMENT WAS 275,000 FOR THE EQUALIZATION PAYMENT.  THEN, THERE'S THE SUPPORT ARREARS WHICH IS ANOTHER AMOUNT.

THE COURT:  SO IT'S 291 -- PARAGRAPH 11 OF THIS ACCOUNTANT'S REPORT --

MR. SARIEH:  RIGHT.

THE COURT:  -- IS THE BALANCE DUE?

MS. SMITH:  THAT'S HOW I READ IT, YOUR HONOR.

MR. SARIEH: THAT'S HOW I READ IT TOO, BUT UNDER PARAGRAPH 12.

THE COURT: FORGET PARAGRAPH 12. WE'RE NOT GOING THERE. THAT WASN'T REQUESTED.

MR. SARIEH: OKAY.

THE COURT: THE ACCOUNTANT IS GOING ABOVE AND BEYOND, I THINK, BECAUSE THAT'S WHAT CPA'S DO WHEN THEY START ANALYZING THINGS.

MR. SARIEH: I'M FINE, YOUR HONOR, IF WE'RE DETERMINING IT'S $291,000 AND THE COURT --

THE COURT: THAT'S WITH INTEREST.

MR. SARIEH: YES. IT SAYS AS OF, I THINK, MAY.

THE COURT: ALL RIGHT.

MR. SARIEH: AND IF THE COURT WILL NOT ADDRESS THE RECEIVERSHIP, I'M OKAY WITH THAT.

THE COURT: HERE IS THE PROBLEM. THE REQUEST FOR RECEIVERSHIP GOES TO A DIFFERENT DEPARTMENT, WHICH IS JUDGE HENNINGS' DEPARTMENT, POST-JUDGEMENT COLLECTIONS, SO I'M GOING TO DEFER THAT TO HIM. I DON'T KNOW WHAT DEPARTMENT HE'S IN NOW. HE'S MOVED.

THE CLERK: 2C, SECOND FLOOR.

MS. SMITH: YOUR HONOR, IS THE COURT MAKING A FINDING THAT MR. WESTRUP AS OF MAY 31ST HAS PAID $22,125 TOWARDS THE EQUALIZATION PAYMENT?

THE COURT: WELL, I'M GOING TO ADOPT THIS REPORT OF THE EXPERT UNLESS THERE'S SOME REASON NOT TO. AND I DON'T HEAR ANY REASON OFFERED BY EITHER OF YOU; RIGHT?

MS. SMITH: RIGHT.

MR. SARIEH: NO.

THE COURT: ALL RIGHT. SO WE'RE GOING TO ADOPT HER RECOMMENDATIONS.

MS. SMITH: YOU DID EXCLUDE PARAGRAPH 12?

THE COURT: I'M EXCLUDING THAT ONE BECAUSE I THINK THAT'S BEYOND WHAT WAS EVEN REQUESTED.

MS. SMITH: SO THE FINDINGS WOULD BE IN PARAGRAPH 6?

THE COURT: HERE IS THE WAY WE'LL PHRASE IT. I'M GOING TO GO OFF OF YOUR REQUESTED RELIEF AND I'M GOING TO RULE ON THE ONES WE HAVEN'T RULED ON ALREADY WHICH IS YOUR ATTACHMENT 8; RIGHT?

MS. SMITH: YES.

MR. SARIEH: YOU RULED ON SOME.

THE COURT: I RULED ON SOME, BUT I DON'T THINK I RULED ON ALL.

MR. SARIEH: CORRECT.

MS. SMITH: CORRECT.

THE COURT: LIKE, FOR EXAMPLE, THE FIRST TWO, YOU ASKED FOR ORDERS MODIFYING THE JUDGEMENT. AND I DON'T KNOW WHAT AUTHORITY I HAVE TO MODIFY THE JUDGEMENT.

MS. SMITH: WELL, AS THIS HAS TRANSFORMED THROUGH THE VARIOUS APPEARANCES, I THINK WE HAVE ACCOMPLISHED WHAT WE WERE TRYING TO GET ACCOMPLISHED BY THE CPA'S REPORT AMOUNT.

THE COURT: SO 1 AND 2, YOU'RE WITHDRAWING THOSE?

MS. SMITH: YES.

THE COURT: SO 1 AND 2 IS WITHDRAWN. NUMBER 3 IS

THE RECEIVER, WHICH WE'RE DEFERRING.

MS. SMITH:  CORRECT.  NUMBER 4, YOU ALREADY GRANTED.

THE COURT:  4 HAS ALREADY BEEN RULED ON.  5, WE HAVEN'T DEALT WITH; HAVE WE?

MS. SMITH:  NO.

MR. SARIEH:  NO.

THE COURT:  SO IN 5, YOU'RE ASKING FOR AN ORDER THAT RESPONDENT DELIVER POST-DATED SPOUSAL SUPPORT CHECKS TO COVER PAYMENTS THROUGH DECEMBER 31, 2015.  ARE THEY STILL DUE?

MS. SMITH:  HE HAS NOT PAID ANYTHING SINCE DECEMBER, YOUR HONOR, SO THE ARREARS CONTINUE.  WHAT WE NEED IS SOME ASSURANCE THAT HE'S GOING TO PAY THE SPOUSAL SUPPORT AS DUE.  HE'S BEEN COMPLETELY INCONSISTENT.  SO I WOULD REQUEST THAT BE MODIFIED TO DECEMBER 31ST, 2016 GIVEN HOW MUCH TIME HAS GONE BY SINCE WE FILED THIS.

MR. SARIEH:  YOUR HONOR, IF I MAY.

THE COURT:  YES.

MR. SARIEH:  THE REQUEST FOR POST-DATED CHECKS WAS BASED ON FAMILY CODE SECTION 290.  THIS IS THE PROBLEM. THE FAMILY CODE SECTION 290 DOES NOT STATE THAT POST-DATED CHECKS IS ONE OF --

THE COURT:  NO.  IT'S A GENERAL EMPOWERMENT CLAUSE; CORRECT?

MR. SARIEH:  CORRECT.

THE COURT:  SO ARE YOU SUGGESTING THAT THE COURT DOES NOT HAVE THE AUTHORITY TO ORDER THIS OR SHOULDN'T

EXERCISE THAT AUTHORITY OR WHAT?

MR. SARIEH:  YOU HAVE THE AUTHORITY.  BUT IF YOU GRANT IT, YOU WOULD BE -- IF MY CLIENT WRITES CHECKS -- AND I WILL TRY AGAIN TO EXPLAIN MY CLIENT'S STREAM OF INCOME.  CLASS ACTION LAWSUITS, HE TAKES TWO TO THREE A YEAR.  IT TAKES -- I DON'T KNOW -- TWO TO FIVE YEARS TO SETTLE.  AND WHENEVER THE SETTLEMENT COMES, HE WILL HAVE THE MONEY.  SO LET'S ASSUME --

THE COURT:  IS HE A SOLE PRACTITIONER NOW?

MR. SARIEH:  HE IS SOLE PRACTITIONER.  I THINK HE HAS A COUPLE OF ASSOCIATES AND HE HAS NEW OFFICES.  THE OLD FIRM, WESTRUP AND CLICK, THAT DOES NOT EXIST ANYMORE. SO NOW, I THINK HE HAS A COUPLE OF ASSOCIATES AT AN HOURLY RATE.

THE COURT:  SO YOU'RE TELLING ME ALL OF HIS INCOME IS DERIVED FROM FEES ON CLASS ACTION SUITS?

MR. SARIEH:  YES.  SO THE PROBLEM IF YOU ORDER HIM TO POST-DATE CHECKS -- TWO PROBLEMS.  FIRST, AS THE COURT MAY KNOW, THAT UNIFORM COMMERCIAL CODES ALLOW THE PETITIONER TO CASH POST-DATED CHECKS.  SO IF HE DOESN'T HAVE THE MONEY IN THE ACCOUNT AND HE DOESN'T HAVE THE CONTROL OVER CASHING POST-DATED CHECKS, HE IS IN CONTEMPT. AND LET'S ASSUME HE WRITES A CHECK FOR $12,000 AND THERE'S NO MONEY IN THE BANK, HE IS SUBJECT TO CRIMINAL LIABILITY, IF HE WRITES A CHECK AT ONE POINT KNOWING THAT IT MAY OR MAY NOT EXIST.

THE COURT:  YOU KNOW WHAT, I'M GOING TO DEFER THIS ONE TO JUDGE HENNING ALONG WITH THE OTHER ONE BECAUSE I

THINK IT GOES TO A POST-JUDGEMENT COLLECTION.

MS. SMITH: YOUR HONOR, IF I MAY. WE'VE ASKED FOR THE CHECKS FOR CURRENT SPOUSAL SUPPORT PAYMENTS, SO THAT'S NOT A POST-JUDGEMENT COLLECTION. AND MR. SARIEH'S --

THE COURT: LET ME SEE WHAT YOU'VE ASKED FOR. YOU'VE ASKED FOR CHECKS TO COVER THE SUPPORT PAYMENTS THROUGH -- DUE THROUGH DECEMBER 31, 2015 AS SET FORTH IN PARAGRAPH 7 OF THE JUDGEMENT. PLUS AT THE 1ST OF EACH YEAR THEREAFTER, DELIVER TO THE PETITIONER POST-DATED SUPPORT CHECKS SUFFICIENT TO COVER SPOUSAL SUPPORT PAYMENTS FOR THE NEXT 12 MONTHS.

MS. SMITH: AND PARAGRAPH 7 OF THE JUDGEMENT IS FOR CURRENT SPOUSAL SUPPORT, NOT ARREARS.

THE COURT: SO WHAT WAS DUE AS OF DECEMBER 31, 2015? THERE'S NOTHING IN HERE THAT TELLS ME THAT.

MS. SMITH: ON PARAGRAPH 7 OF THE JUDGEMENT, YOUR HONOR --

THE COURT: THAT TELLS ME WHAT WAS ORDERED TO BE PAID. THAT DOESN'T TELL ME WHAT WAS DUE.

MS. SMITH: WELL, IT'S 12,000 A MONTH AFTER THE HOUSE WAS SOLD, SO EACH MONTH THAT'S WHAT HE OWES.

THE COURT: 12,000 A MONTH.

MS. SMITH: SO BEGINNING ON JANUARY 1, 2016 -- ACTUALLY, IT WAS BEGINNING OCTOBER 1, 2015. BUT THEN WITH OUR REQUEST FOR THE 1ST OF EACH YEAR FOR THE CHECKS TO BE GIVEN JANUARY 1, 2016 IS 12,000 A MONTH.

THE COURT: SO YOU'RE REQUESTING SOMETHING THAT STARTS NEXT JANUARY? JANUARY OF EACH YEAR, YOU WANT

CHECKS FOR THAT YEAR, IT SOUNDS LIKE.

MS. SMITH:  YES, YOUR HONOR.  BECAUSE THAT COVERS THE CURRENT SPOUSAL SUPPORT, SO HE DOES NOT -- HE DOES NOT FURTHER ACCUMULATE ARREARAGES, WHICH IS WHAT'S HAPPENED. AS YOU CAN SEE FROM THE ORDER, HE OWES 146,000 IN SPOUSAL SUPPORT ARREARAGES PLUS INTEREST.

THE COURT:  SO YOU'RE ASKING AS OF JANUARY 1ST, 2017, HE GET CHECKS EACH FOR 12,000.

MS. SMITH:  2016.

THE COURT:  THIS IS 2016.

MS. SMITH:  RIGHT.  AND I FILED THIS IN DECEMBER 2015.  SO THE REQUEST WOULD HAVE THEN GONE TO JANUARY 1 OF 2016.  SO WE WERE LOOKING FOR THE 12 CHECKS TO COVER THE SPOUSAL SUPPORT PAYMENTS, THE CURRENT SPOUSAL SUPPORT PAYMENTS DUE IN 2016.

MR. SARIEH:  THAT'S NOT THE REQUEST, YOUR HONOR. THE WAY I READ IT, SUPPORT PAYMENTS THROUGH DECEMBER 31ST, 2015.

MS. SMITH:  AND AT THE 1ST OF EACH YEAR THEREAFTER.  THE 1ST OF EACH YEAR THEREAFTER WOULD BE JANUARY 2016.  AND TO SATISFY MR. SARIEH'S CONCERN ABOUT MR. WESTRUP BEING SUBJECT TO SOME FELONY BY HAVING A CHECK THAT DOES NOT HAVE SUFFICIENT FUNDS, SOMEBODY CAN CERTAINLY SEND ME OR MS. STUPPI AN EMAIL, DON'T CASH THE CHECK, THERE'S NOT ENOUGH MONEY.  THEN, WE HAVE OTHER ISSUES.

THE COURT:  THERE'S NO ASSURANCE THAT YOU WON'T TRY TO NEGOTIATE IT.  IF YOU HAVE THAT CHECK, YOU ARE

ENTITLED TO PROCESS IT, I WOULD THINK.

MS. SMITH:  UNLESS THE ORDER SAYS THAT THEY HAVE SOME PERIOD OF TIME, SOME SHORT PERIOD OF TIME BEFORE THE DATE THAT WE'RE ALLOWED TO NEGOTIATE IT.  AND IF THEY DELIVER US NOTICE --

THE COURT:  THEN WHAT?

MS. SMITH:  THEN, WE HAVE ISSUES IF WE NEGOTIATE THAT CHECK DESPITE THE WRITTEN NOTICE THAT THE MONEY IS NOT THERE.  I MEAN, YOUR HONOR, THE REALITY IS MR. WESTRUP HAS NEVER BEEN CONSISTENT.

THE COURT:  I HEAR YOU.  LET ME HEAR FROM HIM ON YOUR SUGGESTION, PLEASE.

MR. SARIEH:  OKAY.  HE HAS NEVER BEEN CONSISTENT.

THE COURT:  WHAT IF YOU HAVE THE RIGHT TO NOTIFY THEM ON THE 1ST OF EACH MONTH OR WHENEVER THE SUPPORT IS DUE THAT THERE'S INSUFFICIENT FUNDS, NOT TO NEGOTIATE THE CHECK.

MR. SARIEH:  I'M HOPING TO GET OUT OF THE CASE, SO --

THE COURT:  WHEN I SAY YOU, I MEAN YOU AND YOUR CLIENT.

MR. SARIEH:  I UNDERSTAND.  YOUR HONOR, IF YOU LOOK AT THE REPORT, I MEAN, IT'S THE COMMON THEME FOR THIS REQUEST IS MY CLIENT WAS NOT CONSISTENT.

THE COURT:  RIGHT.

MR. SARIEH:  LOOK AT THE REPORT, PARAGRAPH 6.  MY CLIENT PAID $583,564 OUT OF THE $730,000 AND CHANGE DUE.

HE WAS NOT CONSISTENT.  I THINK WE ADMITTED THAT.  WE ESTABLISHED THAT.  BUT WHEN THE MONEY COMES IN -- AND AS EVEN MS. SMITH ADMITTED, IT COMES -- HE COMES TO HER OFFICE AND HE DROPS A CHECK FOR $69,000, $39,000.  HE IS NOT A W-2 WAGE EARNER.  HE DOESN'T KNOW THAT THIS SUM IS COMING TOMORROW.  HE MAY SETTLE THIS BIG CASE AND HAVE $2,000,000 IN HIS BANK ACCOUNT.  THE DAY AFTER, LIKE IN 2014, HE'S IN THE NEGATIVE.  SO IT'S A PROBLEM FOR HIM TO WRITE A CHECK AND SAY, YOU KNOW WHAT, I KNOW AS OF JANUARY 2017, I KNOW I WILL HAVE $12,000.  HE MAY OR MAY NOT.  AND JUST THE MERE FACT THAT HIS HE'S WRITING A POST-DATED CHECK THAT MIGHT NOT BE COVERED, IT'S A FELONY OR A MISDEMEANOR.  I'M NOT A CRIMINAL ATTORNEY.  AND THE ABILITY ALSO TO CASH IMMEDIATELY, WHAT IF SHE TAKES THE 12 CHECKS AND SHE DEPOSITS THEM.  I MEAN, IT'S JUST UNREASONABLE.  AND I GET IT, LIKE I UNDERSTAND THEIR CONCERN.  I'M NOT SAYING -- BUT WHEN THE MONEY COMES, HE WILL PAY.  AND HE HAS BEEN PAYING AND HE PAID OVER $580,000.  HE'S NOT TRYING TO ABSCOND WITH THE MONEY OR RELINQUISH SUPPORT OR LIKE TRYING TO DECEIVE ANYBODY. IT'S THE NATURE OF THE BUSINESS.  IF YOU LOOK AT THE REPORT IN 2012, HE MADE ABOUT $600,000.  AND IT WENT DOWN THEREAFTER.  IN 2013, HE MADE LESS.  IN 2014, I DON'T KNOW HOW MUCH HE MADE, LIKE 100 PLUS.  THERE'S NO CONSISTENCY IN HIS INCOME.  IT COULD COME BACK, IT COULD COME FLAT, HE COULD BE BROKE, HE COULD BE RICH.  NO ONE KNOWS.

MS. SMITH:  IF I MAY RESPOND, YOUR HONOR.

THE COURT:  YES.

MS. SMITH: THANK YOU. MR. WESTRUP TESTIFIED IN HIS JUDGEMENT DEBTOR EXAM THAT HE HAS AN APARTMENT, A NICE APARTMENT IN LONG BEACH AND WALKING DISTANCE FROM HIS OFFICE. HE HAS A REGULAR OFFICE, HE HAS STAFF. HE SOMEHOW MANAGES TO MAKE ALL THOSE PAYMENTS. HE SOMEHOW MANAGES TO MEET ALL OF HIS LIVING EXPENSES. HE TESTIFIED THAT WESTRUP/CLICK DID NOT EXIST, HAD NO MONEY. YOU ORDERED HIM TO PRODUCE THE TAX RETURNS. WE FINALLY GET THE TAX RETURNS. AND LOW AND BEHOLD, THERE'S SIX FIGURES OF MONEY GOING IN AND OUT OF THAT ACCOUNT. HE HAS WESTRUP AND ASSOCIATES.

THE COURT: WHAT DO YOU MEAN GOING IN AND OUT OF THE ACCOUNT?

MS. SMITH: THERE'S INCOME COMING IN AND THERE'S EXPENSES BEING PAID.

THE COURT: A BUSINESS ACCOUNT?

MS. SMITH: YES. AT LEAST, PURSUANT TO THE INCOME TAX RETURNS THAT YOUR HONOR ORDERED HIM TO PRODUCE THAT HE FINALLY PRODUCED. SO THERE'S FINANCIAL ACTIVITY GOING ON THERE.

THE COURT: WHAT WAS THE GROSS INCOME FOR THE LAST YEAR?

MS. SMITH: I DON'T HAVE THOSE TAX RETURNS. I'M TRYING TO SEE IF MS. CARLISLE -- FOR EXAMPLE IN 2014, WHEN IT WAS SUPPOSEDLY NOT A VIABLE BUSINESS, HE GOT $120,000 OUT OF WESTRUP/CLICK. AND THAT $120,000, IF YOU LOOK AT THE SCHEDULE OF THE SPOUSAL SUPPORT PAYMENTS, YOU CAN SEE HE DID NOT MAKE ONE PAYMENT ON TIME IN 2014.

AND MR. SARIEH TALKS ABOUT THE $66,000 THAT HE BROUGHT TO MY OFFICE.  THAT WAS AFTER TWO SESSIONS OF A JUDGEMENT DEBTOR EXAM AND AFTER I FILED A NOTICE OF LIEN IN ONE OF HIS CLASS ACTION SUITS.  THEN, HE BRINGS ME THE CASHIER'S CHECK.

SO THIS IS A GENTLEMAN WHO HAS NO INCENTIVE TO PAY HIS COURT-ORDERED SPOUSAL SUPPORT.  AND WE'RE LOOKING FOR SOME SECURITY TO STOP THIS CONSTANT I'LL PAY YOU WHEN I GET AROUND TO PAYING YOU, BUT I'M GOING TO PAY MY OTHER EXPENSES FIRST.  SO THE POST-DATED CHECKS SEEMED LIKE A WAY THAT WOULD KEEP HIM FOCUSED ON HIS OBLIGATION. AND I THINK MR. WESTRUP IS PERFECTLY CAPABLE OF SENDING EITHER MYSELF OR MS. STUPPI DIRECTLY SOME KIND OF A NOTICE THAT THERE'S NOT --

THE COURT:  HERE WE ARE IN JUNE.  WHAT IS IT EXACTLY YOU'RE ASKING FOR?

MS. SMITH:  THAT AT THIS POINT, HE SHOULD PROVIDE US POST-DATED CHECKS FOR THE REMAINDER OF THIS YEAR, JULY, AUGUST, SEPTEMBER, OCTOBER, NOVEMBER, DECEMBER.  THAT'S SIX POST-DATED CHECKS.

THE COURT:  SUBJECT TO THE PROVISION ABOUT HIM GIVING YOU NOTICE OF INSUFFICIENT FUNDS?

MS. SMITH:  IF THAT'S THEIR CONCERN, THAT IS SOMEHOW HE GIVES US THESE POST-DATED CHECKS, AND WE'RE AUTHORIZED -- PURSUANT TO THE COURT ORDER, WE'RE TO DEPOSIT THEM, LET'S SAY ON THE 1ST OF THE MONTH AND THERE'S NOT SUFFICIENT FUNDS AND HE'S SUBJECT TO A FELONY, I DON'T KNOW ANYTHING ABOUT.  I DON'T THINK FELONIES GO

WITH THE UNIFORM COMMERCIAL CODE.

THE COURT: IT MAY BE A CRIME TO WRITE A CHECK AGAINST INSUFFICIENT FUNDS.

MS. SMITH: THAT'S A PENAL CODE VIOLATION.

THE COURT: BUT IT MIGHT ALSO BE A PENALTY.

MS. SMITH: IF SOMEONE WANTED TO PURSUE IT.

THE COURT: YOU'RE NOT LOOKING FOR THAT?

MS. SMITH: WE'RE NOT LOOKING FOR THAT. WE'RE LOOKING FOR MR. WESTRUP TO FINALLY ACKNOWLEDGE HIS OBLIGATION.

THE COURT: WHAT'S THE SAFE HARBOR TIME TO NOTIFY YOU THAT THERE'S INSUFFICIENT FUNDS?

MS. SMITH: PERHAPS MS. STUPPI CAN SPEAK TO THAT. I WOULD THINK 48 HOURS.

THE COURT: BEFORE THE 1ST OF EACH MONTH?

MS. SMITH: RIGHT, RIGHT.

MS. STUPPI: THAT'S FINE, YOUR HONOR. THAT'S ACCEPTABLE.

MS. SMITH: BECAUSE HE WOULD CERTAINLY NOT --

THE COURT: AND THEN, I'M JUST TRYING TO THINK THIS THROUGH. IF HE GIVES YOU THAT NOTICE, THEN, WHAT DO YOU DO WITH THE CHECK?

MS. SMITH: THEN, THE CHECK --

THE COURT: YOU HAVE TO HOLD IT FOR HOW LONG?

MS. SMITH: WELL, THE CHECK WOULD NOT BE GOOD AT THAT POINT. WELL, ACTUALLY, WE SHOULD THINK THAT THROUGH.

THE COURT: THAT'S THE PROBLEM.

MS. SMITH: THE WORSE CASE SCENARIO -- AGAIN, I'M

JUST SHORT OF THINKING OFF THE TOP OF MY HEAD BECAUSE MR. SARIEH DID NOT DISCUSS THIS WITH ME BEFORE.  THE WORSE CASE SCENARIO, IT JUST ROLES OVER TO THE NEXT MONTH.  SO HE MISSES THAT MONTH, AND THEN THE NEXT MONTH WE HAVE THE CHECK.  AND IF HE THEN TELLS US EVERY SINGLE MONTH THERE'S NOT ENOUGH MONEY, THEN, WE HAVE TO ENFORCE THE PROCEDURES. BUT EVERY MONTH AT THE SAME TIME, HE HAS TO PAY ATTENTION TO HIS SPOUSAL SUPPORT OBLIGATION.  HE HAS TO MAKE AN AFFIRMATIVE SHOWING THAT HE DOESN'T HAVE THE MONEY.

AND THEN, THAT LEADS INTO THE ISSUE IF IN THAT MONTH HE'S PAYING HIS OFFICE RENT AND PAYROLL AND HE'S PAYING EVERYTHING ELSE BUT THE SPOUSAL SUPPORT, THAT MIGHT BE SOMETHING THAT THE COURT WOULD BE INTERESTED IN. BUT THIS WAY, WE HAVE EACH MONTH A STATEMENT FROM HIM THAT HE EITHER CAN OR CAN'T MAKE THE PAYMENT.

THE COURT:  I DON'T KNOW WHAT OTHER REMEDIES YOU'RE GOING TO GET.  YOU ALWAYS CAN BRING HIM IN FOR CONTEMPT, I GUESS.  THAT'S UP TO YOU.

MS. SMITH:  RIGHT.  WE'RE TRYING TO AVOID THAT. WHAT WE WANT IS FOR MS. UNDERWOOD'S SPOUSAL SUPPORT TO BE PAID ON A MORE REGULAR BASIS.

THE COURT:  OKAY.

MS. SMITH:  AND FOR MR. WESTRUP TO FINALLY TAKE THIS SERIOUSLY, BECAUSE I DON'T BELIEVE HE HAS UP TO THIS POINT.

MR. SARIEH:  YOUR HONOR, IF I MAY.  CAN YOU JUST -- IF THE COURT WOULD INDULGE ME AND OPEN PAGE 4 OF THE REPORT AND JUST LOOK AT MR. WESTRUP'S ORDINARY INCOME

AND GUARANTEED PAYMENT, HOW THEY GO FROM 2012, 2013 AND 2014.  AND YOU CAN SEE IN 2012 AND 2013, THERE WAS A GUARANTEED PAYMENT OF $348,000.  AND IN 2013 OF $438,000.  THOSE GUARANTEED PAYMENTS CAME FROM THE FORMER FIRM KNOWN AS WESTRUP AND CLICK WHICH DOES NOT EXIST ANYMORE IN 2014.  IF YOU LOOK AT THE ORDINARY INCOME IN 2012, HE MADE ONLY $35,000.  IN 2013, HE MADE $256,000.  AND IN 2014, HE MADE $120,000.  THE FLUCTUATION -- AND I THINK THAT SHOULD BE KNOWN TO ANY MEMBER OF THE BAR FOR A CLASS ACTION ATTORNEY -- UNLESS YOU TAKE THE SETTLEMENT MONEY IN AN ANNUITY, YOU'RE NOT GOING TO HAVE A STABLE INCOME.  AND FOR MS. SMITH TO SAY, OH, HE PAYS HIS OFFICE RENT AND HIS STAFF, WELL, HE NEEDS TO GENERATE MONEY.  IF HE DOESN'T PAY HIS OFFICE RENT, HE'S OUT.

THE COURT:  HE'S OUT OF BUSINESS.

MR. SARIEH:  IF HE'S NOT IN BUSINESS ANYMORE, HE CANNOT GENERATE ANY MONEY.  HE'S NOT GOING TO BE ABLE TO COME AND PAY THE $69,000 OR THE $39,000.

THE COURT:  I UNDERSTAND THAT.

MS. SMITH:  THERE'S TWO OTHER THINGS I'D LIKE TO POINT OUT TO THE COURT AND IT'S FOUND IN EXHIBIT 3 ON THE INITIAL RFO.

NUMBER ONE, MR. WESTRUP ALSO OWNS TWO PIECES OF REAL ESTATE INVESTMENT PROPERTIES.  THEY WERE CONFIRMED TO HIM IN THE DISSOLUTION ACTION.  IN ADDITION, BY HIS OWN TESTIMONY, ONLY 75 PERCENT OF HIS PRACTICE IS IS CLASS ACTION.  CLASS ACTION, HE SAYS HE CHARGES 700 AN HOUR.  IN BUSINESS LITIGATION, HE CHARGES 350 TO 500 AN

HOUR. HE HAS A REGULAR INCOME. IT'S NOT IN AND OUT. AND HE HAS INVESTMENT PROPERTIES. HE CAN LIQUIDATE ONE OF THOSE.

THE FACT IS HE IS CHOOSING TO DEVOTE MONEY TO THINGS OTHER THAN HIS SPOUSAL SUPPORT. AND IT'S SHOWN BY THE FACT THAT EVEN JUST FROM WESTRUP/CLICK, NOTHING ELSE, HE GETS $120,000. AND YET IN 2014, HE DID NOT MAKE ONE PAYMENT ON TIME. AND IN 2015, THE ONLY REASON HE PAID IS BECAUSE I BROUGHT HIM IN HERE THREE TIMES ON A JUDGEMENT DEBTOR EXAM, THEN FILED THE NOTICE OF LIEN, THEN HE FINALLY PAYS SOME. AND I FORESEE THAT THAT WILL CONTINUE UNTIL THIS COURT SAYS YOU NEED TO TAKE THIS OBLIGATION SERIOUSLY, MR. WESTRUP.

THE COURT: I THINK IT'S GOING TO BE A SOLO VICTORY IF I GRANT YOU THE ORDER BECAUSE I THINK HE'S GOING TO SEND YOU A NOTICE THAT HE HAS INSUFFICIENT FUNDS EVERY MONTH.

MS. SMITH: YOU KNOW WHAT, YOUR HONOR, I UNDERSTAND THAT. I APPRECIATE THE COURT'S COMMENTS. I THINK -- I'M SPEAKING ON BEHALF OF MS. STUPPI. I THINK THAT WOULD BE BETTER THAN WHAT WE GET NOW, WHICH IS DEAFENING SILENCE EACH MONTH. AGAIN, I REPEAT, IF HE HAS TO DEAL WITH US BY COURT ORDER ON TOP OF THE CURRENT COURT ORDER AND HE HAS TO DO SOMETHING AFFIRMATIVE, I THINK THAT WILL HELP HIM UNDERSTAND THE GRAVITY OF THE SITUATION. THIS IS A COURT ORDER THAT NEEDS TO ADHERED TO. AND IF WE TRY THIS FOR SIX MONTHS WITHOUT PREJUDICE TO PERHAPS COMING BACK NEXT YEAR, SEE HOW IT GOES, I JUST THINK IT'S

SOMETHING THAT WILL KEEP IT UPPER MOST IN HIS MIND.

THE COURT:  ARE WE DONE ARGUING NUMBER 5?

MS. SMITH:  YES, YOUR HONOR.

MR. SARIEH:  YES, YOUR HONOR.

THE COURT:  AT THIS POINT, I'M GOING TO DENY THE REQUEST FOR NUMBER 5.  I THINK IT OPENS UP A CAN OF WORMS. IF HE'S TO THE POINT WHERE HE HAS ONLY A CERTAIN AMOUNT IN HIS ACCOUNT AND HE HAS TO PAY THE OFFICE RENT OR THE SPOUSAL SUPPORT, I DON'T WANT TO MAKE AN ORDER AHEAD OF TIME THAT SAYS YOU CAN NEGOTIATE THAT SPOUSAL SUPPORT CHECK INSTEAD OF HIM PAYING THE OFFICE RENT.  I DON'T KNOW IF YOU BRING HIM IN FOR A CONTEMPT YOU'D BE ABLE TO PREVAIL IF THAT'S THE SITUATION.  SO I THINK THAT COULD CAUSE PROBLEMS IF I HAVE HIM DELIVER THOSE POST-DATED CHECKS.

MS. SMITH:  WELL, I DON'T KNOW WHAT ELSE WILL HELP MR. WESTRUP UNDERSTAND THAT THIS IS A PRIORITY OBLIGATION FOR HIM.

THE COURT:  I SYMPATHIZE WITH YOUR POSITION TRYING TO COLLECT.  BUT THERE ARE OTHER METHODS OF COLLECTION OTHER THAN THIS.  THIS IS A NOVEL REQUEST.  I TIP MY HAT TO YOU TO COME UP WITH IT, BUT IT'S VERY UNUSUAL.

MS. SMITH:  WE TRY TO THINK OUTSIDE THE BOX EVERY SO OFTEN, YOUR HONOR.

THE COURT:  ALL RIGHT.  ON TO NUMBER 6.

MS. SMITH:  THAT WAS GRANTED, YOUR HONOR.

THE COURT:  THAT'S ALREADY DONE.  7, AN ORDER APPOINTING SOMEBODY TO PREPARE AN ANALYSIS OF THE PROFITS.

ARE YOU STILL ASKING FOR THAT?

MS. SMITH:  AT THIS POINT, I WILL DEFER THAT, YOUR HONOR.  WE FINALLY GOT THE TAX RETURNS.  ALL SUSAN CARLISLE DID WAS PRETTY MUCH A CALCULATION OF PAYMENTS AND SO FORTH, BUT THERE REALLY HAS NOT BEEN AN ANALYSIS OF THE PROFITS.  SO AT THIS POINT, I'LL CONFER WITH MS. STUPPI ABOUT THAT.

THE COURT:  WITHDRAW?

MS. SMITH:  I'LL WITHDRAW THAT.

THE COURT:  WITHDRAW 7.

MS. SMITH:  AGAIN, ALL OF THE WITHDRAWALS WOULD BE WITHOUT PREJUDICE, I ASSUME, TO REVISITING THE ISSUE AT SOME POINT.

THE COURT:  YES.  NUMBER 8, WE JUST TOOK CARE OF THAT; DIDN'T WE?

MS. SMITH:  YES.  IF YOU'RE ADOPTING THE REPORT WITH THE SPECIFIC FINDING OF THE ARREARAGE, YES, THAT COVERS NUMBER 8.

THE COURT:  SO NUMBER 8, THE COURT IS GOING TO MAKE A FINDING THAT THERE'S A SPOUSAL SUPPORT ARREARAGE IN ACCORDANCE WITH THIS -- WITH THE COURT'S 730 EXPERT'S DECLARATION, SUSAN CARLISLE.  SHE FINDS THAT THERE WAS A PRINCIPAL BALANCE ON THE ARREARAGE OF 146,686 WITH ACCRUED INTEREST OF 14,607 THROUGH MAY 31ST.  AND THE PRINCIPAL BALANCE IS STILL ACCRUING INTEREST AT 10 PERCENT AS LONG AS IT'S UNPAID.  THAT'S PARAGRAPH 6 OF THE CARLISLE DECLARATION.

MS. SMITH:  IN ADDITION, YOUR HONOR, THERE WAS NO

FINDING OF ANY PAYMENTS TOWARDS THE SPOUSAL SUPPORT ARREARS THAT WERE FIXED AS OF THE 2012 JUDGEMENT, AND THAT'S AN ADDITIONAL $230,000.

MR. SARIEH:  I THOUGHT THAT WAS ABANDONED BY MS. SMITH --

MS. SMITH:  NO.

MR. SARIEH:  -- IN THE TRANSCRIPT.

MS. SMITH:  NO.

THE COURT:  HANG ON A SECOND.

MR. SARIEH:  I HAVE THE TRANSCRIPT HERE.

MS. SMITH:  I DID NOT ABANDON THE $230,000. THAT'S A PROVISION OF THE JUDGEMENT OF PARAGRAPH 8.

MR. SARIEH:  I'M SORRY.  LET ME REPHRASE.  YOU DID NOT ABANDON, BUT YOU ABANDONED THE REQUEST TO SET THAT AMOUNT OF ARREARS.

MS. SMITH:  NO.

MR. SARIEH:  WOULD YOU LIKE TO READ THE TRANSCRIPT?

MS. SMITH: I KNOW WHAT THAT SAYS.  THAT HAS NOTHING TO DO WITH THIS.  THAT THE 730 REPORT SUPERSEDED A REQUEST FOR --

THE COURT:  WHAT ARE YOU REFERRING TO?  WHERE IN THE REPORT DOES IT MENTION THAT?

MS. SMITH:  IT DOESN'T.  THAT'S THE PROBLEM. BECAUSE THERE HAVE BEEN --

THE COURT:  WHERE DID YOU ASK FOR SOMETHING ON THAT?

MS. SMITH:  I DID NOT.  NO, NO.  ALL I'M SAYING IS

THAT IN THE JUDGEMENT AT PARAGRAPH 8, IT IS NOT AFFECTED BY ANY OF THIS. I WANT THE COURT TO BE CLEAR ON THAT. THE ONLY THING MR. SARIEH RAISED IS THERE WERE PAYMENTS ON THE EQUALIZATION PAYMENTS AND PAYMENTS ON THE SPOUSAL SUPPORT ON OBLIGATION. THERE'S THREE SEPARATE OBLIGATIONS.

MR. SARIEH: YOUR HONOR, MY CLIENT IS HERE, FINALLY.

THE COURT: COME ON UP AND SIT NEXT TO YOUR ATTORNEY, SIR. PARAGRAPH 8 OF THE JUDGEMENT, I DON'T KNOW HOW THAT INTERPLAYS WITH ANYTHING WE'RE DOING BECAUSE I DON'T SEE IT MENTIONED IN YOUR RFO OR THE ACCOUNTANT'S REPORT.

MS. SMITH: NO, NO. THAT'S TRUE. BUT WE'RE NOW TALKING ABOUT TWO DIFFERENT TYPES OF SPOUSAL SUPPORT ARREARS. AND SO WHEN THE COURT ADOPTED MS. CARLISLE'S FINDINGS THAT IS AS TO SPOUSAL SUPPORT ARREARS, THAT ACCRUED BEGINNING MARCH 2012. THE AMOUNT IN THE JUDGEMENT --

THE COURT: THAT'S WHAT IT SAYS IN HER REPORT.

MS. SMITH: YES. AND THE AMOUNT IN THE JUDGEMENT IS A SEPARATE SPOUSAL SUPPORT ARREARS. I JUST --

THE COURT: THAT EXISTED AS OF THE DATE OF THE JUDGEMENT?

MS. SMITH: CORRECT, YOUR HONOR.

THE COURT: OKAY.

MS. SMITH: SO IN OTHER WORDS, MS. CARLISLE'S REPORT DID NOT AFFECT THAT $230,000.

THE COURT: THAT'S NOT BEFORE ME. BUT I HEAR WHAT YOU'RE SAYING. THAT'S NOT PART OF WHAT WE'RE DOING RIGHT NOW.

MS. SMITH: ALL I'M CONCERNED ABOUT IS THAT I UNDERSTAND MR. SARIEH MAY COME BACK IN HERE AND SAY THAT $230,000 WAS IN FACT CALCULATED ON THE 146. AND IT'S NOT. THEY'RE TWO SEPARATE NUMBERS. SO TO THE EXTENT THAT ALL THE ORDER THAT'S GOING TO BE ENTERED SAYS THAT, THIS HAS NOTHING DO WITH PARAGRAPH 8A OF THE JUDGEMENT. THAT WOULD BE SUFFICIENT. IT'S CLARIFIED.

THE COURT: THE ORDER IS GOING TO SAY THAT PURSUANT TO ITEM 8 OF YOUR REQUEST, THE COURT IS MAKING AN ORDER DETERMINING THE CURRENT ARREARAGES ON SPOUSAL SUPPORT IN ACCORDANCE WITH THIS 730 REPORT --

MS. SMITH: THANK YOU, YOUR HONOR.

THE COURT: -- IN THE AMOUNTS THAT I PREVIOUSLY STATED.

MS. SMITH: THANK YOU, YOUR HONOR.

THE COURT: NUMBER 9, SOMETHING ABOUT LIFE INSURANCE.

MS. SMITH: AND THAT --

MR. SARIEH: YOUR HONOR RULED ON THAT.

THE COURT: THAT'S DONE?

MS. SMITH: YES, THAT'S DONE.

THE COURT: NUMBER 10 IS A REQUEST FOR ATTORNEY'S -- BLANK DOLLARS OF ATTORNEY'S FEES. I DON'T KNOW WHAT I CAN DO WITH THAT.

MS. SMITH: WELL, I THINK THAT WAS MENTIONED THE

LAST TIME.  IN MY DECLARATION WHICH IS ATTACHED AT PAGE 6, AFTER GOING THROUGH THE VARIOUS KEECH FACTORS, I REQUESTED TOTAL FEES AND COSTS OF $24,354.14

THE COURT:  WAS THAT BASED ON NEED OR 271 SANCTIONS?

MS. SMITH:  I BELIEVE --

THE COURT:  IT LOOKS LIKE YOU SAY 2030 AND 2032 IN PARAGRAPH 10.  THAT'S NEED-BASED.

MS. SMITH:  YES.

THE COURT:  THAT MEANS YOUR CLIENT NEEDS TO FILE A CURRENT I AND E WITH THIS RFO.

MS. SMITH:  WE FILED ONE AS OF APRIL 11TH, 2016, YOUR HONOR.

THE COURT:  AND DOES THE RESPONDENT HAVE A CURRENT ONE ON FILE?

MR. SARIEH:  WE HAVE THE APRIL 1ST, 2016.

THE COURT:  APRIL 1ST, I SEE ONE FROM RESPONDENT.

MR. SARIEH:  YES.

THE COURT:  IT'S AS OF -- IT HAS 2014, A 1040 ATTACHED SHOWING A LOSS OF 100,000.

MR. SARIEH:  YES.

MS. SMITH:  THAT'S WHAT IT SHOWS, YOUR HONOR.

THE COURT:  AND ZERO CASH, ZERO STOCKS.

MS. SMITH:  AND ZERO RENTAL PROPERTY INCOME.

THE COURT:  ALL RIGHT.  AND WHAT EVIDENCE DO I HAVE OF HIS ABILITY TO PAY YOUR ATTORNEY'S FEES?

MS. SMITH:  IN WHAT I ATTACHED ON HIS JUDGEMENT

DEBTOR EXAM WHICH I PREVIOUSLY REFERRED TO ON HIS BUSINESS LITIGATION HOURLY RATE, AND ALSO IT IS NOT CONCEIVABLE THAT HE HAS ZERO FOR ALL OF THIS.

THE COURT:  WHAT EVIDENCE DID YOU PRESENT THAT IT'S NOT TRUE?

MS. SMITH:  I PRESENTED HIS TESTIMONY FROM LAST YEAR'S --

THE COURT:  AND WHAT EVIDENCE IS THERE OF WHAT HE HAS?  IF HE DOESN'T HAVE ZERO CASH, WHAT DOES HE HAVE?

MS. SMITH:  HE HAS TWO PIECES OF RESIDENTIAL REAL ESTATE INVESTMENT PROPERTIES.

THE COURT:  WHAT'S THE EQUITY?  HE LISTS 400,000 IN PROPERTY THERE.

MR. SARIEH:  THAT IS THE EQUITY, YOUR HONOR.

THE COURT:  LET ME LOOK AT HERS.  I DON'T SEE ONE FROM HER.

MR. SARIEH:  IF I MAY, YOUR HONOR.  I HAVE ONE FROM DECEMBER 18TH, 2015.

THE COURT:  THAT'S NOT TIMELY.

MS. SMITH:  YOUR HONOR, I HAVE THE CONFORMED COPY OF APRIL 11TH.

MR. SARIEH:  AND I HAVE ONE SIGNED FROM THE PETITIONER ON APRIL 7TH.

MS. SMITH:  THAT'S THE ONE THAT WAS FILED APRIL 11TH.

THE COURT:  GIVE IT TO THE BAILIFF, PLEASE.  THESE ARE SUPPOSED TO BE FILED WITH THE RFO.

MS. SMITH:  WELL, WE DID FILE ONE WITH THE RFO.

Case 1:13-cv-01137-DAD-BAM   Document 76   Filed 09/01/16   Page 53 of 61

BUT OF COURSE, WITH THE VARIOUS CONTINUANCES --

THE COURT:  IT'S STALE.  I DID NOT SEE THE ONE WITH THE RFO.  ALL RIGHT.  SO THE PETITIONER'S SHOWS CASH OF 455,000.  11B, 162,000 PLUS.  EXPENSES OF OVER 18,000 A MONTH.

MS. SMITH:  YES.  SHE'S IN -- MS. STUPPI CAN EXPLAIN WHAT FACILITY IT IS.

THE COURT:  I SEE IT SAYS ASSISTED LIVING --

MS. SMITH:  YES.

THE COURT:  -- 15,000.

MS. SMITH:  CORRECT.  AND THEN, THE ADDITIONAL MEDICAL TREATMENT NOT COVERED BY ANY KIND OF INSURANCE.

THE COURT:  ON THE I AND E, ITEM 15C ASKS FOR HOW MUCH IS OWED FOR FEES, AND IT DOESN'T SAY.  W-I-P.

BASED UPON THE INFORMATION THAT'S PRESENTED IN THE I AND E'S, I'M NOT ABLE TO MAKE THE FEE AWARD.  I KNOW YOU'RE TELLING ME IT'S NOT TRUE, BUT I DON'T KNOW WHAT IS TRUE.

MS. SMITH:  WELL, YOUR HONOR, ALL I CAN RELAY TO THE COURT IS THAT THE ONLY INCOME OR THE ONLY SOURCE OF SUPPORT AT THIS POINT IS --

THE COURT:  THE ONLY INCOME SHE HAS IS HIS SPOUSAL SUPPORT AND THE MODEST SOCIAL SECURITY OF 915.  I SEE THAT.

MS. SMITH:  RIGHT.

THE COURT:  BUT HIS I AND E SHOWS A NEGATIVE.  I DON'T KNOW WHAT HIS TRUE INCOME IS.  I DON'T KNOW IF YOU KNOW AT THIS POINT.

MS. SMITH: WELL, I KNOW WHAT HE WAS DISTRIBUTED IN 2014. I KNOW WHAT HE TESTIFIED TO IN 2015, WHICH IS BEFORE THE COURT, THAT HE HAS TWO PIECES OF THE RESIDENTIAL RENTAL PROPERTY. HE SHOWS NO INCOME FOR THAT. THE COURT CAN IMPUTE --

THE COURT: MAYBE THERE'S SOME -- MAYBE HE'S OPERATING ON THE LOTS. I DON'T KNOW WHAT'S THE NET RENTAL INCOME.

MS. SMITH: WELL, AND THE OTHER ISSUE IS IF THERE ARE RENTAL PROPERTIES AND HE'S NOT PROPERLY GENERATING INCOME FROM THEM, HE SHOULD BE.

THE COURT: MAYBE HE'S GETTING RENT, BUT THE EXPENSES ARE EXCEEDING THE RENT. I SEE THAT FROM TIME TO TIME.

MS. SMITH: OF COURSE. BUT HE DIDN'T ATTACH --

THE COURT: LET ME ASK HIM. HE'S HERE NOW. HE'S SUBJECT TO THE COURT'S QUESTIONS. JOAN, WOULD YOU SWEAR THE RESPONDENT, PLEASE?

THE CLERK: PLEASE RAISE YOUR RIGHT HAND.

DO YOU SOLEMNLY STATE THAT THE TESTIMONY YOU ARE ABOUT TO GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, SO HELP YOU GOD?

THE RESPONDENT: I DO.

THE CLERK: PLEASE STATE YOUR NAME FOR THE RECORD.

THE RESPONDENT: DUANE WESTRUP.

THE COURT: GOOD AFTERNOON, SIR.

THE RESPONDENT:  GOOD AFTERNOON.

THE COURT:  I'M TOLD THAT YOU OWN SOME RENTAL PROPERTIES; IS THAT TRUE?

THE RESPONDENT:  NO.  THE COUNSEL IS MISTAKEN. WHAT I DID SEVERAL YEARS AGO, I INVESTED IN TWO PROPERTIES.  IN THE DIVORCE AGREEMENT, BOTH OF THOSE WERE PRODUCED AND COUNSEL HAS THEM IN HER FILE SOMEWHERE.  SHE KNOWS WHAT I DID WAS PUT AN INVESTMENT IN.  AND THE UNDERSTANDING IS WHEN THOSE PROPERTIES ARE SOLD, I GET MY MONEY BACK OFF THE TOP AND I GET 50 PERCENT OF ALL THE PROFIT.

THE COURT:  SO YOU HAVE SOME PARTNERSHIP INTEREST?

THE RESPONDENT:  IT'S A PARTNERSHIP INTEREST.  AND I HAVE NO -- I DON'T PAY ANYTHING ON THEM AND I DON'T GET ANYTHING OUT OF THEM.  THEY'RE JUST NEUTRAL INVESTMENTS WHERE I PUT CASH IN.

THE COURT:  ARE THEY INCLUDED IN YOUR I AND E?

MR. SARIEH:  YES, YOUR HONOR.  THIS IS THE REAL PROPERTY, THE EQUITY.

THE COURT:  ON THE 400,000, YOU LIST YOUR PROPERTY?

THE RESPONDENT:  CORRECT.  THOSE ARE THE DOWN PAYMENTS I PUT IN.  I OWN NO OTHER PROPERTY.

THE COURT:  THOSE ARE YOUR PARTNERSHIP INTERESTS, THE 400,000?

THE RESPONDENT:  YES.

THE COURT:  AND YOU RECEIVE NO INCOME FROM THOSE PARTNERSHIPS?

THE RESPONDENT:  THAT'S CORRECT.

THE COURT:  UNTIL THE PROPERTIES ARE SOLD?

THE RESPONDENT:  THAT'S CORRECT.

THE COURT:  AND YOU'RE JUST A LIMITED PARTNER?

THE RESPONDENT:  I AM INDEED.

THE COURT:  AND YOUR INCOME AND EXPENSE ATTACHED TO YOUR 2014 TAX RETURN -- HAVE YOU DONE THE 2015?

THE RESPONDENT:  2015 HAS NOT BEEN FILED.

THE COURT:  ALL RIGHT.  BASED UPON THE SHOWING THAT'S MADE, I CANNOT FIND THAT HE HAS THE ABILITY TO PAY HIS AND PETITIONER'S ATTORNEY'S FEES SO FAR.  SO I'M GOING TO DENY THE REQUEST FOR THE ATTORNEY'S FEES AWARD BASED ON 2030 AND FAMILY CODE 4320 FACTORS.  THAT'S NUMBER 10.

THAT'S ALL THAT'S BEFORE ME, I THINK.

MR. SARIEH:  YES, YOUR HONOR.

MS. SMITH:  I THINK THAT'S CORRECT, YOUR HONOR. WOULD THE COURT CONSIDER DENYING THE REQUEST WITHOUT PREJUDICE SO -- BECAUSE WE JUST GOT THE TAX RETURNS AFTER ALL OF THIS WAS FILED AND I INTEND TO DO SOME MORE INVESTIGATION.

THE COURT:  WELL, IF YOU'RE BRINGING ANOTHER PROCEEDING AND YOU WANT TO SEEK FEES, OF COURSE, YOU'RE ENTITLED TO DO THAT.  BUT FOR THIS PROCEEDING FOR THIS PURPOSE, IT'S DENIED.  THIS IS POST-JUDGEMENT, SO IT'S NOT LIKE -- IT'S NOT PREJUDGMENT WHERE YOU CAN COME IN AND SEEK FEES TO PURSUE THE CASE AND GET IT READY FOR A TRIAL. THESE HAVE TO BE GRANTED IN CONNECTION WITH WHATEVER PROCEEDING YOU'RE BRINGING.

MS. SMITH:  I UNDERSTAND THAT, YOUR HONOR.  IT'S JUST THAT BECAUSE YOUR HONOR DID ORDER MR. WESTRUP TO PRODUCE DOCUMENTS THAT WE'VE BEEN TRYING TO GET AND THEY WERE PRODUCED LONG AFTER WE FILED THE RFO, THERE ARE AVENUES I'M GOING TO PURSUE IN TERMS OF DEMONSTRATING WHY THAT I AND E WITH THE ZERO DOLLARS ON IT MAKES NO SENSE. AND WOULD THE COURT ENTERTAIN A RECONSIDERATION OF SOME SORT IF THAT WERE TO BE DEVELOPED?

THE COURT:  LET'S JUST SAY THIS.  RECONSIDERATIONS ARE GOVERNED BY THE CODE OF CIVIL PROCEDURE.

MS. SMITH:  I USED THE WRONG TERM.  IT'S NOT A CCP 1008.

THE COURT:  OTHER THAN THAT, I DO NOT KNOW WHAT ELSE I CAN TELL YOU.  THIS RULING WAS MADE ON THE EVIDENCE THAT WAS PRESENTED FOR THIS PROCEEDING AND THE CONTINUANCES AND SO FORTH.  NEXT TIME YOU COME IN ON SOMETHING, IF YOU WANT TO SEEK FEES, IT WILL BE A NEW SHOWING.

MS. SMITH:  I UNDERSTAND.

THE COURT:  WHATEVER YOU'VE BEEN ABLE TO MUSTER; ALL RIGHT.  I THINK WE NEED AN ORDER AFTER HEARING FROM THE PETITIONER ON THIS.

MR. SARIEH:  SURE.

MS. SMITH:  ALL RIGHT.

MR. SARIEH:  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU BOTH.

MS. SMITH:  THANK YOU, YOUR HONOR.

THE RESPONDENT:  MY APOLOGIES FOR BEING LATE, YOUR

HONOR.  I WAS OUT IN ORANGE COUNTY.

MR. SARIEH:  I EXPLAINED IT.

THE COURT:  I UNDERSTAND.  WE STARTED THE HEARING WITHOUT YOU.

THE RESPONDENT:  I UNDERSTAND.

MS. STUPPI:  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU.


                (THE PROCEEDINGS WERE CONCLUDED.)

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT NO. 2D                HON. MARC D. GROSS, JUDGE

IN RE THE MARRIAGE OF:                )
                                      )
NANCY A WESTRUP                       )
                        PETITIONER,   )   NO. BD513445
                                      )
            AND                       )   REPORTER'S
                                      )   CERTIFICATE
                                      )
RUSSELL DUANE WESTRUP                 )
                                      )
                        RESPONDENT.   )
                                      )
_____)

STATE OF CALIFORNIA    )
                       )   SS.
COUNTY OF LOS ANGELES  )

            I, LORI-ANN GERTLER, OFFICIAL REPORTER OF

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE

COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

FOREGOING PAGES, 1 THROUGH 35, COMPRISE A TRUE AND CORRECT

TRANSCRIPT OF THE PROCEEDINGS HELD IN THE ABOVE-ENTITLED

MATTER AND REPORTED BY ME ON WEDNESDAY, JUNE 22, 2016.


            DATED THIS 30TH DAY OF JUNE 2016.



                              _____
                              OFFICIAL REPORTER
                              C.S.R. NO. 3775

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 301 East Colorado Boulevard, Suite 620, Pasadena, California 91101.

On September 1, 2016, I served the foregoing document described as NOTICE OF FILING DOCUMENTS IN SUPPORT OF NOTICE OF LIEN on the interested parties in this action by placing a true copy of the original in a sealed envelope as follows:

SEE ATTACHED SERVICE LIST

☐  BY HAND DELIVERY/PERSONAL SERVICE  (C.C.P. §1011 et seq.):  I caused said document to be personally delivered [by a courier] to each addressee.

☒  BY FIRST CLASS MAIL (C.C.P. §1013(a) et seq.): I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at the Law Office of Marilyn M. Smith following ordinary business practices. I am readily familiar with the practice of the Law Office of Marilyn M. Smith for collection and processing of mail, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service on the same day as it is placed for collection.

☒  BY OVERNIGHT CARRIER (C.C.P. §§1013(c) and (d):  I enclosed the documents in an envelope or package provided by Federal Express and addressed to the person(s) on the attached service list.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier, with fees prepaid.

☐  BY FACSIMILE (C.C.P. §§1013(e) and (f)):  Based on a court order or rule or an agreement of the parties to accept service by fax transmission, I faxed the documents to the person(s) at the fax number(s) listed on the attached service list.  The facsimile machine that I utilized, (626) 683-8702, complied with California Rules of Court, Rule 2.302, and no error was reported by the machine.  Pursuant to Rule 2.306, I caused the machine to print a record of the transmission, a copy of which is attached to the original of this declaration.

☐  BY ELECTRONIC TRANSMISSION (C.C.P. §1010.6):  Based on a court order or rule or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person(s) at the e-mail address(es) listed on the attached service list.

I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on September 1, 2016, at Pasadena, California.

_____
Belinda Mondagarian

**SERVICE LIST**

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA

*Taylor v. FedEx Freight, Inc.*
Case No. 1:13-cv-01137-DAD-BAM

| | |
|---|---|
| Russell Duane Westrup<br>Russell Duane Westrup, Esq.<br>Westrup & Associates<br>Westrup Klick LLP<br>Law Offices of Westrup & Associates, A.P.C.<br>444 West Ocean Boulevard Suite 1614<br>Long Beach, CA 90802 | Judgment Debtor<br>Via Overnight Carrier<br><br>Courtesy Copy by Electronic Mail:<br>jveloff@westrupassociates.com |
| Wail Sarieh, Esq.<br>SARIEH LAW OFFICES<br>2107 N. Broadway, Suite 308<br>Santa Ana, CA 92706<br>Tele: 714-542-6200<br>Fax: 714-542-6210<br>Email: sariehlaw@yahoo.com | COURTESY COPY<br>Via U.S. Mail |
| and All Counsel of Record via CM/ECF system | |