UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY D. TAYLOR, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX FREIGHT, INC., an Arkansas corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 1:13-cv-01137-DAD-BAM<br><br><br>ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEY'S FEES AND COSTS<br><br>(Doc. Nos. 68 and 69) |

On June 7, 2016, plaintiff's counsel filed a motion for attorney's fees and costs (Doc. No. 27) and, on August 1, 2016, a motion for final approval of class action settlement (Doc. No. 68.) These matters came before the court on August 29, 2016, 2016, for a final fairness hearing. Attorney R. Duane Westrup appeared telephonically for plaintiff. Attorneys Keith A. Jacoby and Mireya A.R. Llaurado appeared telephonically for defendants. Oral argument was heard and the motions were taken under submission. For the reasons set forth below, the motion for final approval of class action settlement and the motion for attorney's fees and costs will be granted.

**BACKGROUND**

This action was removed from Kings County Superior Court on July 19, 2013. (Doc. No. 1.) The complaint, filed as a class action against defendant FedEx Freight, Inc. ("FedEx"),

1

1   alleges violation of the California Labor Code § 201–03, 204, 210, 226, 226.7, 510, 512, 558,
2   1174, 1194, 1197, 1197.1, 2698, and California Business and Professions Code § 17200 *et seq.*,
3   for failing to pay truck drivers for all time worked when driving to and from designated hotels
4   and dispatch centers, failing to pay for non-personal time spent at designated hotels, failing to pay
5   for time spent off the clock while waiting to trade trailers with other drivers, failing to pay for all
6   time worked inspecting trucks, failing to provide meal and rest periods, failing to timely pay
7   compensation upon termination, and failing to provide accurate itemized wage statements.  (Doc.
8   No. 1, at 21.)

9   Plaintiff Roy Taylor filed a motion to certify the class action on August 14, 2014.  (Doc.
10  No. 17.)  The assigned magistrate judge issued findings and recommendations recommending that
11  class certification be granted and, on July 24, 2015, the previously assigned District Judge
12  adopted those findings and recommendations. (Doc. Nos. 36 and 48.)  In doing so, the court
13  certified the classes as follows:

> All person who worked for Defendant as line-haul drivers from January 28, 2012 through the date of trial.
>
> All Class Members who have left their employment with Defendant from January 28, 2012, through the date of trial.  (Labor Code § 203: Waiting time penalties subclass).

18  (Doc. No. 48, at 5.)  The court also appointed Roy D. Taylor as class representative and the law
19  firm of Westrup & Associates and the Labor Law Office, APC as class counsel.  (*Id.*)

20  On January 14, 2016, the parties attended mediation with Judge Stephen J. Sundvold
21  (retired).  (Doc. No. 57 at 7.)  As a result of that mediation, the parties reached a settlement of this
22  action.  (*Id.*)

23  On April 20, 2016, the court granted preliminary approval of the class action settlement.
24  (Doc. No. 63.)  In that order, the court: (1) granted preliminary approval of the class action
25  settlement; (2) confirmed Westrup & Associates, including Duane Westrup, Esq., and Labor Law
26  Office APC, including Michael L. Carver, as class counsel; (3) approved Rust Consulting as the
27  administrator; (4) directed that notice be given to the class; and (5) adopted the settlement
28  implementation schedule.  (*Id.* at 16.)

The court further conditionally certified the following class for purposes of the settlement:

> [A]ll California-based employees who worked for Defendant as Road Drivers or other drivers paid by the hour to the extent they performed road runs paid on a piece rate basis, in California on or after January 28, 2012 through December 31, 2015.

(*Id*. at 3−6.)

Claim forms with respect to the settlement were mailed on May 10, 2016. (Doc. No. 69-1, at 3.) The objection period closed on June 9, 2016, and the opt-out and claim submission period closed on June 24, 2016. Of the 1445 class members, 965 settlement class members submitted valid claim forms to recover their individual shares of the net settlement fund of $2,530,000, with one request for exclusion and no objections. Individual payouts will total up to $7,042, with the average award estimated to be $2,616. (*Id*.)

After conducting the final fairness hearing and carefully considering the terms of the settlement, the court now addresses whether the proposed settlement is fair, reasonable, and adequate; and whether class counsel's request for attorneys' fees and costs should be granted.

## CERTIFICATION OF SETTLEMENT CLASS

The court previously conditionally certified the proposed settlement class and determined that the requirements of Federal Rule of Civil Rule 23(a) and (b) had been met. (Doc. No. 63 at 3−6.) Accordingly, there is no need for the court to repeat the analysis here. *See, e.g., Harris v. Vector Marketing*, No. C–08–5198, 2012 WL 381202 at *3, at *7 (N.D. Cal. Feb.6, 2012) ("As a preliminary matter, the Court notes that it previously certified ... a Rule 23(b)(3) class ... [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable"); *In re Apollo Group Inc. Securities Litigation*, Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr.20, 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class"). The court therefore certifies the proposed settlement class.

/////

/////

**FINAL APPROVAL OF THE SETTLEMENT**

A class action may be settled only with the court's approval. Fed. R. Civ. P. 23(e). "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Lane*, 696 F.3d at 818-19. Having already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits. *See, e.g., In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026.

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)); *see also Lane*, 696 F.3d at 819. "To survive appellate review, the district court must show it has explored comprehensively all factors[.]" *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th

Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)); *Hanlon*, 150 F.3d at 1026.

1. *Strength of Plaintiff's Case*

When assessing the strength of plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Arizona 1989). The court cannot reach such a conclusion, because evidence has not been fully presented. *Id*. Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id*.

Here, the court has already granted plaintiff's motion for class certification. (Doc. No. 48.) The court found that the claims should be certified based on FedEx's concededly uniform pay plan as well as documentary evidence, including FedEx's time keeping and wage records, which would show that class members were paid on a load or line basis and whether they were separately compensated for non-piece-rate work and rest breaks. (*Id.*) Accordingly, plaintiff's claims are not without merit.

2. *The Risk, Expense, Complexity, and Likely Duration of Further Litigation and the Risk of Maintaining Class Action Status Through Trial*

If this litigation were to proceed, however, both sides would face significant risks. For instance, defendant has suggested its exposure is limited by the recent enactment of Labor Code § 226.2 concerning piece rate compensation, which went into effect on January 1, 2016. That new Labor Code provision (i) clarifies pay requirements for mandated breaks and other nonproductive time going forward; and (ii) provides a short time period for employers to make back wage payments for the time between July 1, 2012, through December 31, 2015, in exchange for relief from statutory penalties and other damages. The parties would likely dispute, however, whether cases filed prior to March 1, 2014 are excluded from the penalty relief provisions of § 226.2. (Doc. No. 69-1, at 4–5.)

/////

Plaintiff also faces risks associated with decertification, liability and damages, as well as satisfying the burden of proof necessary to overcome defendant's defenses and any motion for summary adjudication and/or judgment. There is also a risk that the trier of fact could determine that drivers were compensated for all of their non-driving activity time. (*Id*.) Defendant, on the other hand, would face the risk that the certified class could recover on its claims if the case goes to trial. The damage on those claims could be substantial and, of course, both parties risk losing costs and attorney's fees if the other party prevails. In light of all of these risks, the strength of plaintiff's case, and all known facts and circumstances, the court finds that the proposed settlement is fair, reasonable, and adequate and is in the best interest of the class members.

3.  *The Amount Offered in Settlement*

To fairly allocate settlement funds based on the class member's length of service, whether the class member drove road runs on a regular basis as opposed to only occasionally, and whether the class member may be entitled to waiting time penalties, the distribution amounts will be calculated using a point system: (i) each class member will be credited one point for each shift employed during the class period unless the class member was on leave of absence for that workweek; and (ii) each class member who separated from employment during the class period will be credited five additional points to compensate the class member for his or her potential waiting time penalty claim. The payouts will be divided among class members who have timely submitted claims as follows: (i) five percent will be paid to settlement class members who did not regularly work as road drivers, and who instead perform road services only on an occasional basis and were paid pursuant to the road pay plan for such work; and (ii) ninety-five percent will be paid to class members who regularly worked as road drivers for some or all of the class period.

The total proposed settlement amount is $3,750,000 with $25,000 allocated for the cost of administration of the settlement, $25,000 for the class representative, $1,125,000 for attorney's fees, $25,000 for attorney costs, $20,000 for a penalty payment under California's Private Attorney General Act of 2004, Cal. Labor Code § 2698 et seq. ("PAGA"), and $2,530,000 for the net settlement fund. Individual payouts will total up to $7,042, with the average award estimated to be $2,616. (Doc. No. 69-1, at 3.) The court concludes that the settlement pays a reasonable

1    amount of what each settlement class member may be owed.

2        4.  *The Extent of Discovery Completed and the Stage of the Proceedings*

3        Here, the settlement was reached after informed, arm's length negotiations between the
4    parties. Both parties conducted extensive investigation and discovery allowing them to assess the
5    strengths and weaknesses of the case. (Doc. No. 59–1, at 6–8.) Plaintiff's counsel took
6    depositions of defendant's corporate designees, reviewed documents and data, consulted with
7    experts, prepared a damage analysis, and prepared briefings. (*Id.*) The settlement resulted from
8    mediation presided over by an impartial mediator. (*Id.*) The settlement is the product of non-
9    collusive negotiations after substantial discovery had been conducted, giving plaintiff and
10   plaintiff's counsel a good grasp of the merits of the case before settlement talks began. The
11   settlement is "not the product of fraud or overreaching by, or collusion among, the negotiating
12   parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992) (quoting *Ficalora
13   v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)); *see also Rodriguez v. West Publishing
14   Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

15       5.  *The Experience and Views of Counsel*

16       Plaintiff's counsel are qualified law firms with extensive experience handling class actions
17   and labor law litigation. (Doc. No. 69-1, at 7.) Class counsels collectively have been appointed
18   as class counsel in over one hundred class action cases during the fifteen years. (*Id.*) In the prior
19   orders granting class certification and preliminary approval of the class action settlement, the
20   court found that the same plaintiff and class counsel were adequate to represent the class. (Doc.
21   Nos. 48 and 63.) Plaintiff's counsel, as well as the class representative, "strongly believe" that
22   the settlement is fair, adequate, and preferable to continued litigation. (Doc. No. 69, at 15.)

23       6.  *The Presence of a Governmental Participant*

24       Plaintiff sought to enforce claims under PAGA on behalf of the state and affected
25   employees. The settlement will result in a $20,000 PAGA penalty payment. This weighs in favor
26   of approval. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012);
27   *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13cv2679-CAB (BGS), 2014 WL 9872803, at
28   *10 (S.D. Cal. Dec. 23, 2014) (factoring civil PAGA penalties in favor of settlement approval).

7. *The Reaction of the Class Members to the Proposed Settlement*

In this case, the administrator undertook measures to ensure the class members' receipt of the claim packages, including performing address traces and re-mailing notices. (Doc. No. 69-2, at 4.) On May 10, 2016, notices were mailed to 1,445 class members. (*Id*.) The notice advised class members that they could submit a claim form, request exclusion, or object. (*Id*.) The notice further contained comprehensive information regarding the terms of the proposed settlement. (Doc. No. 57-3.) The administrator received only one complete and timely request for exclusion. (Doc. No. 69-2, at 4.) The administrator also received 966 valid claimants[1] and zero objections. (*Id*.) The absence of objections to a proposed class action settlement supports that the settlement is fair, reasonable, and adequate. *See* National Rural Telecommunications Cooperative v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (and cases cited therein); *Barcia v. Contain-A-Way, Inc.*, 3:07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. 2009).

Accordingly, all factors weigh in favor of granting final approval of the settlement.

**ATTORNEY'S FEES AND COSTS**

1. *Attorney's Fees and Costs*

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result the district court must assume a fiduciary

---

[1] Fourteen untimely submitted but otherwise complete claims forms are being counted as valid and will receive a settlement payout.

8

role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining the appropriate attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.* Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upward or downward if the record shows "'special circumstances' justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *see also Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016). Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at 1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Nonetheless, an explanation of how the court arrived at the award figure is necessary when the district court departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while

> litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted) (quoting *Vizcaino*, 290 F.3d at 1047-50). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942.

In this case, plaintiff brings various state law claims. Previously, under California law, "[t]he primary method for establishing the amount of reasonable attorney fees [was] the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003). The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). However, the California Supreme Court recently also endorsed the percentage of the fund method for calculating reasonable attorneys' fees. *See Laffitte v. Robert Half Int'l Inc.*, No. S222996, 2016 WL 4238619, at *1 (Cal. Aug. 11, 2016). Nonetheless, the Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other, as well. *See Bluetooth*, 654 F.3d at 944.

The settlement agreement here includes an award of $1,125,000 in attorney's fees. (Doc. No. 68-1, at 2.) This represents thirty percent of the $3,750,000 gross settlement. (*Id.*) Class counsel has significant experience in the field and the results of the settlement, if approved, would pay a reasonable amount of what each settlement class member may be owed. The class members have not filed a single objection to the settlement and only one class member filed a complete and timely exclusion to the settlement. As discussed above, both parties would face risks if the case proceeded to trial. Moreover, class counsel has litigated this factually and legally complex case on a contingency fee basis for nearly three years. Finally, thirty percent is consistent with attorney fee awards made in many other wage-and-hour class actions in this court. (*See* Doc. 68 at 12.) Consideration of these

factors supports an attorneys' fees award of thirty percent of the gross settlement. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor" to the reasonableness of an attorney fee award is "the degree of success obtained").

The *Lodestar* cross-check confirms that the requested attorney fees are reasonable. Class counsel contends that they collectively have incurred nearly $500,000 in lodestar attorneys' fees and $8,712 in costs, excluding the time drafting the motion for final approval, and traveling to and appearing at the hearing on the final approval of the class action settlement.[2] (Doc. No. 68-1 at 2.) Westrup & Associates has expended a total of 874 hours representing $446,178 in fees and Labor Law Offices APC has expended attorney time of $51,643 in lodestar fees. Class counsel calculates its attorneys' fees with a rate of $525/hour for senior associates and $700/hour for the senior partner R. Duane Westrup. (*Id*. at 6–8.) These rates have been approved in other class actions litigated in this district by class counsel. *See Owens v. Kraft Foods Global, Inc.*, No 1:10-cv-02062-AWI-SMS, Doc. No. 56 (E.D. Cal. Nov. 22, 2013) (approving $700/hour for R. Duane Westrup); *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-cv-01321-TLN-CKD, 2015 WL 4730176 (E.D. Cal. Aug. 10, 2015) (approving $525/hour for associates and $700/hour for R. Duane Westrup).

Class counsel further requests a *Lodestar* multiplier of 2.26 to arrive at the requested $1,125,000 attorney's fees award. (Doc. No. 68, at 14.) "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 NEWBERG ON CLASS ACTIONS § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting Newberg). Here, the multiplier of 2.26 therefore falls within the range of multipliers

---

[2] Class counsel notes that costs to date of $8,712.00 does not include the costs to attend the final approval hearing, but that the difference between the actual costs and the preliminary approved costs of $25,000 will be add to the net settlement sum for distribution to the class. (Doc. No. 68 at 19.)

generally awarded to counsel in successful class action litigation. The court therefore approves class counsel's motion for attorneys' fees.

### 2. *Class Representative Payment*

The settlement agreement provides for a class representative payment of $25,000. "Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). However, the decision to approve such an award is a matter within the court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . . [C]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant "reputational risk" by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958–59. The district court must evaluate their awards individually, using "'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

/////

In this case, the class representative estimates that he spent well over eighty hours working on this lawsuit. (Doc. No. 69-2, at 10.) Plaintiff faced personal risks associated with the stigma of bringing the lawsuit and, if he failed to prevail, could have been ordered to pay attorneys' fees and costs. (*Id.*) He is the only class representative in the matter and the incentive payment makes up a small portion of the overall settlement funds. However, at the hearing on the motion for final approval, defense counsel objected to the amount of the class representative payment, arguing that an incentive award of $25,000 is high for a case, such as this, that did not go to trial and where there is no general release of liability because the class representative has another pending case against defendant.

Plaintiffs' requested class representative payment of $25,000 is indeed more than the typical enhancement award in this circuit, where $5,000 is presumptively reasonable. *See Harris v. Vector Marketing Corp.*, No. C-08-5198-EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.) (citations omitted). The decision in *Dyer v. Wells Fargo Bank, N.A*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) is illustrative. There, one class representative spent more than 200 hours assisting the case and a second devoted many hours as well and attended a four-day mediation. *Id*. Both class representatives faced professional risks as well as the possibility of retaliation because they continued to work in the same industry. *Id*. Nonetheless, the court in *Dyer* found that a $15,000 enhancement award for each class representative was too great because the representatives did not sign a broader general release than their fellow class members, the litigation had a relatively short duration and ended prior to class certification, and the award was disproportionate to the average class member's recovery, which was estimated to be $1,271. Instead, the court awarded $10,000 to each class representative for the time and effort they spent in connection with the litigation and the risks they took on behalf of their fellow class members. *Id*. at 336.

This court finds that a class representative payment of less than $25,000 is appropriate in this case. While there is no general release of liability by the class representative, his release of
/////

13

liability is broader than the class members.[3] The duration of this litigation has been slightly longer than that in *Dyer* because a class has been certified in this case. However, this case is otherwise remarkably similar to *Dyer*. Accordingly, the court finds that a class representative payment of $15,000 is appropriate in this case.[4]

   3. *Cost of Administration and PAGA Penalty Payment.*

The court finds the expected cost of administration of the settlement of $25,000 and the PAGA penalty payment of $20,000 are reasonable.

   4. *The Lien*

On August 26, 2016, a notice of lien under Cal. Code of Civ. Pro. § 708.410 was filed by Nancy Ann Underwood (formerly Westrup), regarding attorneys' fees awarded in this case to plaintiffs' attorney, R. Duane Westrup, and related entities. (Doc. No. 71). The basis of that lien was an unsatisfied judgment in the case of *In re Marriage of Westrup*, Case No: BD513445, in the Los Angeles County Superior Court. (*Id*. at 2.) After the filing of the lien, on August 27, 2016, Nancy Underwood passed away. (Doc. No. 81-1 at 9.) Courtney Finney (the daughter of Nancy Underwood and R. Duane Westrup) was appointed successor in interest for Underwood in the marital proceeding. (Doc. No. 81-1 at 4, 16-17). She is also the sole beneficiary to the Nancy Ann Westrup Family Trust, dated October 15, 2015 ("the trust"), which became irrevocable at the

---

[3] Specifically, the settlement agreement provides the following release of liability for the class representative:

> As of the Effective Date, Plaintiff hereby releases and waives any and all claims of any kind whatsoever, known or unknown, against the Released Parties through the Effective Date of the Agreement, except for (i) the claims in the pending *Hall, et al. v. FedEx Freight, Inc.* (D.C. Case No. 1:13-CV-1711-AWI-SKO) (9th Cir. Ct. of Appeals Case No. 15-15441), and (ii) any claims of any kind directly relating to the termination of Plaintiff's employment with Defendant.

(Doc. No. 57-2 at 25.)

[4] The settlement agreement provides that "Defendant reserves the right to oppose the amount of the Class Representative Service Fee. In the event that the Court awards a lesser amount than requested, then any portion of the requested amount not awarded to Named Plaintiff shall be a part of the Net Settlement Fund." (Doc. No. 57-2 at 14.)

14

time of Nancy Underwood's (formerly Westrup) death.  (Doc. 81-1 at 3).  Ms. Finney has filed a notification with this court representing that she has consulted an attorney and wishes to withdraw the previously filed lien.  (Doc. No. 81-1 at 2–9).  Accordingly, the court orders that the lien (Doc. No. 71) be released.  Cal. Code of Civ. Proc. ("CCP") § 708.440(a) (unless the creditor's money judgment is first satisfied or the lien is released, no settlement or dismissal in the underlying pending action may be entered into without the written consent of the judgment creditor); *see also* CCP § 377.31 (successor in interest has a right to be substituted in for the decedent); CCP § 377.32 (listing requirements for acting as successor in interest).

## CONCLUSION

There is no evidence of collusion in this case and all factors weigh in favor of granting final approval of the settlement.  Accordingly, the settlement is approved as fair and reasonable and class counsel's motion for attorney's fees is granted.

For all of the reasons set forth above, the court:

1) Confirms the certification of the settlement class for settlement purposes;
2) Confirms Westrup & Associates, including Duane Westrup, Esq., and Labor Law Office APC, including Michael L. Carver, as class counsel;
3) Confirms Rust Consulting as the claim administrator;
4) Finds the terms of the proposed settlement agreement to be fair, adequate, and reasonable and comply with Rule 23(e) of the Federal Rules of Civil Procedure;
5) Grants the motion for final approval of the class action settlement (Doc. No. 68);
6) Grants the motion for attorneys' fees (Doc. No. 68);
7) Orders that the notice of lien filed on August 26, 2016 (Doc. No. 71) against Duane Westrup and all entities named therein be released;
8) Orders that the settlement awards be made and administered in accordance with the terms of the settlement agreement to the 966 valid claimants;
9) Orders payment of the class representative service fees to plaintiff Roy D. Taylor in the amount of $15,000 from the settlement fund;

/////

10) Orders payment for the costs of administration to the claims administrator Rust Consulting in the amount of $25,000 from the settlement fund;

11) Orders that under the California Labor Codes' Private Attorneys General Act ("PAGA"), California Labor Code § 2699, et seq., a PAGA payment of $20,000 is reasonable and apportions that payment as follows: $15,000 to the Labor and Workforce Development Agency and $5,000 to the claimants, to be distributed pursuant to the claims process defined the settlement agreement;

12) Orders payment for class counsel fees of $1,250,000 (40% to be paid to Michael L. Carver, Labor Law Offices, and 60% to be paid to the Law Offices of Westrup & Associates, A.P.C.) and costs up to $25,000 to be paid from the settlement as final payment for and complete satisfaction of any and all attorneys' fees and costs incurred by and/or owed to class counsel as set forth in the settlement agreement;

13) Proceeds from any uncashed checks shall be donated *cy pres* to Central California Legal Services within 140 days after the effective date of this settlement, and within 10 days thereafter, the claims administrator shall provide a declaration of compliance to the parties;

14) Enters this final judgment and orders that parties act in accordance with the terms in the settlement agreement;

15) The court will retain jurisdiction over the matter for the purposes of the interpretation, implementation, and enforcement of the settlement and agreement and all orders entered in connection therewith.

IT IS SO ORDERED.

Dated:  **October 12, 2016**

UNITED STATES DISTRICT JUDGE